IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LYNDA CARTWRIGHT,
LLOYD CARTWRIGHT, et al.

       Plaintiffs,              No. CIV S-07-2159 FCD EFB

    vs.

VIKING INDUSTRIES, INC.,
et al.,                        ORDER

       Defendants.

_____/

      Plaintiffs' motion to compel discovery and for sanctions, filed November 12, 2008, was heard by this court on January 21, 2009.  The court issued an order granting plaintiffs' motion to compel, and ordered defendant to produce its electronic proprietary database files in the format in which they are maintained, together with defendant's software application required to search and manipulate the files.

      The court submitted for later decision plaintiffs' motion for sanctions reflecting their fees and expenses in bringing the motion to compel defendant's electronic database, and their tandem motion to compel defendant's production of expert documents, which defendant produced after plaintiffs filed this motion.

////

1

Plaintiffs' motion for sanctions is made pursuant to Fed. R. Civ. P. 37(a)(5)[1] and (b)(2).[2] These rules authorize imposition of monetary sanctions for failure to provide discovery unless, *inter alia*, such failure was "substantially justified" or an award of expenses would be "unjust." The court addresses in turn each request for sanctions.

1. Electronic Discovery

For the following reasons, the court concludes that defendant's failure previously to provide its electronic files in their original (Sybase) format was substantially justified by

_____

[1] Fed. R. Civ. P. 37(a)(5) (Motion for an Order Compelling Disclosure or Discovery) provides:

(5)  Payment of Expenses; Protective Orders.

(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

        (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

        (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

        (iii) other circumstances make an award of expenses unjust.

[2] Fed. R. Civ. P. 37(b)(2)(C) (Failure to Comply with a Court Order) provides:

(2) Sanctions in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent – or a witness designated under Rule 30(b)(6) or 31(a)(4) – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following [nonmonetary sanctions] . . .

(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

1  plaintiffs' continuing offer to accept the data in a "reasonably acceptable" format.

2          Plaintiffs' production requests, served May 8, 2008, sought generally all documents,

3  including electronically stored information ("ESI"), responsive to their requests.  The requests

4  expressly sought ESI in its native format and any software necessary to access the information.

5  *See* Jt. Stmt. filed Sept. 4, 2008, at p.15; *see also*, Fed. R. Civ. P. 34(b)(1)(C) (authorizing the

6  requesting party to "specify the form or forms in which electronically stored information is to be

7  produced"); Fed. R. Civ. P. 34(a)(1)(A) (authorizing the request of ESI "in any medium from

8  which information can be obtained either directly or, if necessary, after translation by the

9  responding party into a reasonably usable form"); and Fed. R. Civ. P. (b)(2)(E) (ii) ("If a request

10  does not specify a form for producing electronically stored information, a party must produce it

11  in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms").

12          Defendant's initial responses to plaintiffs' production requests failed to include any ESI,

13  but its responses to interrogatories identified two electronic databases, an "Access" database

14  containing records between April 1995 and January 2000, and a "proprietary" database

15  containing subsequent records.  Jt. Stmt. filed Sept. 4, 2008, at p. 25.  Subsequent to the August

16  13, 2008 filing of plaintiffs' initial motion to compel production of defendant's electronic

17  databases, defendant informed plaintiffs that it would provide the data.  Plaintiffs nonetheless

18  sought from this court an order compelling such production, not in its native format but in a

19  "reasonably acceptable format," that would not "remove or significantly degrade" the

20  searchability of the data.  *Id.* at pp. 26, 36.  Pursuant to the parties' agreement, the court ordered

21  only that, "Defendant shall, on or before September 19, 2008, complete production of its

22  'Access' and 'proprietary' electronic databases."  Order filed September 11, 2008, at p. 6.  The

23  compliance deadline was extended by the district judge to January 26, 2009.  *See* Dckt. No. 86.

24          Plaintiffs filed the instant motion on November 12, 2008, seeking production of

25  defendant's proprietary database in its native format.  Dckt. No. 71.  However, the parties agreed

26  three times to move the hearing on the motion, until it was finally heard on January 21, 2009.

1    *See* Dckt. Nos. 72, 74, 82, 83, 87 and 88.  In his declaration filed in support of the motion,

2    plaintiffs' counsel stated that in September 2008, defense counsel had provided an "Excel

3    spreadsheet" and "Access table" purporting to reflect the proprietary database.  Plaintiffs'

4    counsel sought, through correspondence with defense counsel and telephone conferences with

5    defendant's data professionals, to confirm that there was no loss of functionality of the database

6    in these formats.  However, after identifying deficiencies in the produced data, plaintiffs' counsel

7    made clear in correspondence to defense counsel, on October 13, 2008, that plaintiffs sought

8    "the 'proprietary' database consisting of both the files representing the Sybase database and any

9    programs necessary to access the data in the same manner as it is accessed by Viking employees.

10   . . . [W]e are entitled to both the proprietary database and any files required to use it as Viking

11   users do."  Oroza Decl., Dckt. No. 96, at p. 13.  However, plaintiffs again offered to consider a

12   fully functional alternative "to facilitate resolution of this issue."[3]  *Id.*

13         On October 17, 2008, defense counsel provided a "second Access table" and, on October

14   27 and 31, 2008, informed plaintiffs' counsel that he was still working with his client to provide

15   a meaningful "proposal" or "offer" that "might provide you with what you need with respect to

16   the database."  *Id.* at pp. 16, 17.  However, in a letter dated November 5, 2008, defense counsel

17   stated that "all data regarding the Series 3000 products" had been produced pursuant to the

18   Access and Excel files, and offered "to provide a declaration confirming this."  *Id.* at p. 19.

19   Defense counsel further stated, "if you nevertheless believe this production remains insufficient,

20   please explain.  Moreover, if you believe that we must also produce either the Sybase or

21   proprietary programming, please provide any legal authority you have to support your position."

22   *Id.*  Plaintiffs provided such authority on November 19, 2008.  Exh. 6 to Oroza Decl.

23

24         [3]  Plaintiffs' counsel stated:  "If there is some other set of data files which Viking can
     provide which assure us that we have ready access to all of the records maintained in the Sybase
     database, we would consider accepting such files.  We do not know enough about the Sybase
25   database or the 'front end' [application] to know what would provide us with all of the
     functionality available on the proprietary system."  Oct. 13, 2008 letter from plaintiffs' counsel
26   to defense counsel, Oroza Decl. at p. 13.

1    In the joint statement filed January 14, 2009, plaintiffs' counsel explicitly sought

2  defendant's proprietary database in its original format, based primarily on the argument that the

3  court had ordered defendant to do so.  Plaintiffs' counsel reiterated this argument at the hearing

4  on January 21, 2009, and represented that it would obtain its own license from Sybase in order

5  properly to access defendant's data in its native format.  The court expressed its lack of

6  confidence in the repeated assurances that full disclosure of defendant's electronic information

7  could be accomplished in any format other than "the exact format" in which "it has been stored

8  and maintained."  *See* Transcript of Jan. 21, 2009 Hearing, Dckt. No. 101, at pp. 13-14; *see also*,

9  Advisory Committee Notes for the 2006 Amendment of Rule 34 ("If the responding party

10  ordinarily maintains the information it is  producing in a way that makes it searchable by

11  electronic means, the information should not be produced in a form that removes or significantly

12  degrades this feature").

13    Accordingly, the court ordered – for the first time – that defendant "produce the

14  electronically stored information . . . in the format that it's maintained and stored, and . . .

15  produce whatever software is required to operate this data, to be able to access it, and search it,

16  and manipulate it."  *See* Transcript of Jan. 21, 2009 Hearing, Dckt. No. 101, at p. 14; *see also*,

17  Order filed Jan. 21, 2009, Dckt. No. 99, at p. 2 ("[d]efendant shall . . . produce said files in the

18  exact format in which they are maintained and stored (i.e., as a Sybase database), and provide the

19  software or 'front end' application required to search and manipulate the files").  The

20  compliance deadline set by this court, January 23, 2009, was extended by the district judge to

21  January 28, 2009.  Dckt. No. 100.  (The production has apparently been made, as the matter has

22  not further been raised before the court.)

23    Therefore, the failure of defendant previously to provide its proprietary database in its

24  native format was not a violation of court order.  Rather, based on plaintiffs' prior informal

25  agreements to obtain the information in an alternative format (despite their initial request for ESI

26  in its native format), and this court's reiteration of the parties' agreement for such disclosure,

defendant's prior nondisclosure of its Sybase database was "substantially justified," and does not

warrant the imposition of sanctions.  *See* Fed. R. Civ. P. 37(a)(5)(A)(ii) (sanctions improper if

opposing party's nondisclosure was substantially justified).  The court recognizes the irony in

this conclusion – were it not for the cooperative and flexible approach of plaintiffs' counsel,

sanctions would be in order.

        2.  Expert Discovery

        Plaintiffs also seek sanctions based on defendant's failure to provide the records of their

experts when defendant filed, on August 21, 2008, their experts' declarations in opposition to a

class certification motion in a separate state action, *Deist et al. v. Viking Industries, Inc.*, San

Joaquin County Superior Court, Case No. CV025771.[4]  Plaintiffs also challenge defendant's

withholding of this expert information pursuant to their privilege log served in this case on

September 24, 2008.  Plaintiffs rely on the established federal rule that the testimonial use of

work product information waives the protection, *see United States v. Nobles*, 422 U.S. 225, 239

(1975), *United States v. Salsedo*, 607 F.2d 318, 320 (9th Cir. 1979); *accord, S.E.C. v. Reyes*,

2007 WL 963422, 1 (N.D.Cal. 2007) ("When experts serve as testifying witnesses, the discovery

rules generally require the materials reviewed or generated by them to be disclosed, regardless of

whether the experts actually rely on those materials as a basis for their opinions"); *see also*

*Regional Airport Authority of Louisville v. LFG, LLC.,* 460 F.3d 697, 717 (6th Cir. 2006)

(agreeing with the "majority rule" that "Rule 26 creates a bright-line rule mandating disclosure

of all documents, including attorney opinion work product, given to testifying experts").

Plaintiffs also rely on California law finding a waiver of the attorney-client privilege when a

communication between the attorney and client takes place in the presence of a third party.  *See*

_____

        [4]  *See* Exh. B. to Thacker Decl. (Superior Court Order Granting Motion to Quash), and
the Case Summary Information accessible at the court's website, http://ccms.stocktoncourt.org/
viaplayer/CaseInformationSummary.aspx?CaseNo=CV025771.  A court may take judicial notice
of facts that are capable of accurate determination by sources whose accuracy cannot reasonably
be questioned. Fed. R. Evid. 201.

1   *e.g., Sony Computer Entertainment America, Inc. v. Great American Ins. Co.*, 229 F.R.D. 632,

2   633-34 (N.D. Cal. 2005)(citing Cal. Evid. Code § 912(a)).

3          However, these and plaintiffs' related citations do not involve the scenario presented

4   here, where the third-party disclosures were made – in limited fashion – in a different court

5   action.  Moreover, it is significant that the state court upheld Viking's motion to quash the *Diest*

6   plaintiffs' subpoenas served on Viking's experts for production of their files.  *See* Exh. B. to

7   Thacker Decl. (Superior Court Order Granting Motion to Quash).  The state court found that the

8   experts had not yet been technically disclosed in the case, and that work product protections had

9   not been waived by Viking's submission of its experts' declarations for the limited purpose of

10  opposing plaintiffs' motion for class certification.  The state court concluded that, with the

11  exception of photographs, the information relied on by the experts was both "derivative" and

12  "nonderivative" and therefore "so intertwined" that work product protections continued to apply.

13  *Id.*[5]

14         These factors support the conclusion of this court that expert disclosures were not

15  required in the present case until November 24, 2008, the deadline for both parties to initially

16  disclose their pre-certification experts.[6]  Plaintiffs' argument they were prejudiced in the

17  preparation of their expert reports due to defendant's failure earlier to provide their expert files is

18  not persuasive.  The disclosure deadline was shared by plaintiffs and defendant, thus equalizing

19  the advantages and disadvantages of contemporaneous disclosure.

20  ////

21

22        [5]  After the state court decision, Viking offered, in this case, to provide its experts'
23  photos, Exh. 7 to Oroza Decl., and on December 2, 2008 agreed to waive both work product and
    attorney client privileges associated with their experts' files, Exh. 10 to Oroza Decl.  The parties
24  entered into such stipulation, which was submitted to the court on December 12, 2008, Dckt. No.
    87, and approved on December 15, 2008, Dckt. No. 88.

25        [6]  The deadline for pre-certification expert disclosures was originally September 23,
26  2008, Dckt. No. 36, extended to October 23, 2008, Dckt. No. 46, and then November 24, 2008,
    Dckt. No. 66.  The deadline for rebuttal expert disclosures was December 22, 2008.

1    Defendant nonetheless failed to disclose all of its expert information until December 15,

2    2008, when the court approved the parties' stipulation.  Thus, plaintiffs were arguably prejudiced

3    during the period from November 24 to December 15, 2008, in the preparation of their rebuttal

4    expert disclosures which were due December 22, 2008.  However, plaintiffs filed their rebuttal

5    expert disclosures early, on December 18, 2008, thus diminishing the inference of prejudice

6    during this time period.  Moreover, while it is reasonable to conclude that defendant's

7    cooperation in entering into the stipulation with plaintiffs was advanced by the filing of the

8    instant motion, it is also reasonable to conclude that plaintiffs' motion required defendant

9    prematurely to respond to a matter it need not have addressed until November 24, 2008.  The

10   court therefore finds, on balance, that these circumstances render "an award of expenses unjust."

11   Fed. R. Civ. P. 37(a)(5)(A)(iii).

12   <u>CONCLUSION</u>

13       For the foregoing reasons, plaintiffs' motion for sanctions, Dckt. No. 71, is DENIED.

14       SO ORDERED.

15   DATED:  February 25, 2009.

16                                        EDMUND F. BRENNAN

17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26