1  RICHARD M. WILLIAMS (SBN 68032)
   KEVIN P. CODY (SBN 96355)
2  J. MARK THACKER (SBN 157182)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  50 W. San Fernando Street, Suite 1400
   San Jose, CA  95113
4  Telephone:    (408) 287-6262
   Facsimile:    (408) 918-4501
5
6  Attorneys for Defendant
   VIKING INDUSTRIES, INC., an Oregon
   corporation
7

8                  UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

10

11 LYNDA CARTWRIGHT and LLOYD          CASE NO.  2:07-cv-2159 FCD/EFB
   CARTWRIGHT on behalf of themselves
12 and all others similarly situated,      DEFENDANT VIKING INDUSTRIES,
                                           INC.'S OPPOSITION TO PLAINTIFFS'
13             Plaintiffs,                 MOTION FOR CLASS CERTIFICATION

14       v.                                Date:      August 7, 2009
                                           Time:      10:00 a.m.
15 VIKING INDUSTRIES, INC., an Oregon      Courtroom:  2
   corporation, and Does 1 through 100,    Honorable Frank C. Damrell, Jr.
16 inclusive,
                                           Complaint filed:  August 16, 2007
17             Defendants.

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................ 3

    A.    FACTS UNDERLYING THIS ACTION ................................................. 3

    B.    THE EXTENDED DISCOVERY AND SUMMARY ADJUDICATION
        PROCESS IN DEIST STARKLY DEMONSTRATES THE INDIVIDUAL
        NATURE OF SIMILAR CLAIMS HERE ................................................ 4

        1.    Discovery in the Deist Action Confirms the Highly Individualized
              Nature Of The Claims Being Asserted In This Case ................................. 4

        2.    Viking's Motions for Summary Judgment or Adjudication Confirm
              the Highly Individualized Nature Of The Claims Being Asserted In
              This Case ................................................................................................. 8

              a.    Causation: ...................................................................................... 8

              b.    Notice: ............................................................................................ 8

              c.    Privity: ........................................................................................... 8

              d.    Statute of limitations defense: ...................................................... 9

    C.    THE DEIST PLAINTIFFS NARROW THEIR PURPORTED CLASSES,
        WHICH ARE THEN CERTIFIED ...................................................... 10

    D.    THIS CLASS ACTION IS FILED SEEKING TO REVIVE DISCARDED
        CLASSES AND CERTIFY AN OVERLAPPING CLASS ................. 11

III.  PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING THROUGH
    SUBSTANTIAL EVIDENCE THE EXISTENCE OF EACH ELEMENT
    REQUIRED UNDER F.R.C.P. RULE 23 ....................................................... 11

IV.   LEGAL ARGUMENT ................................................................................... 13

    A.    THERE IS NO REASON TO DUPLICATE YEARS OF EFFORT BY
        THE COURT AND COUNSEL IN DEIST BY CERTIFYING A CLASS
        BASED ON FACTS IDENTICAL TO DEIST ................................... 13

    B.    INDIVIDUAL QUESTIONS OF LAW AND FACT PREDOMINATE IN
        ALL OF THE PURPORTED CLASSES ............................................ 15

        1.    The Putative Class Members Cannot Establish Standing To Assert
              Any Cause of Action Without Individualized Proof and
              Adjudications ......................................................................................... 16

        2.    Viking's Substantial Statute Of Limitations Defenses Preclude
              Class Certification ................................................................................. 17

        3.    Common Issues Of Law Or Fact Do Not Predominate As The
              Issues of Causation And Damage/Injury Require Individualized
              Proof ...................................................................................................... 18

        4.    Class Members' Claims For Consequential Damages Preclude Any
              Possibility That Common Issues Of Law Or Fact Predominate ............... 20

        5.    Plaintiffs' Strict Liability and Negligence Causes of Action Are Not
              Appropriate For Certification ................................................................. 21

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**TABLE OF CONTENTS**
**(continued)**

Page

6.   Plaintiffs' Fraud, UCL and CLRA Causes of Action Are Not Appropriate For Certification...................................................................21

7.   Plaintiffs' Warranty Claims Require The Adjudication Of Individual Issues Of Such Significance As To Preclude Any Finding Of Predominance Of Common Issues ..........................................24

    a.   Manifestation of defect or injury...................................24

    b.   Notice ..............................................................................26

    c.   Privity .............................................................................26

C.   THE CARTWRIGHTS' CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF THE CLASS AND THEY CANNOT ADEQUATELY PROTECT THE INTERESTS OF THE PROPOSED CLASS ...........................27

D.   A CLASS ACTION IS NOT SUPERIOR TO INDIVIDUAL LAWSUITS FOR RESOLVING THESE CLAIMS...............................................................28

    1.   Pending Litigation............................................................................29

    2.   Lack of manageability......................................................................29

V.   CONCLUSION.................................................................................................31

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Ambrosia Coal & Construction Co. v. Pages Morales* (11th Cir. 2004)
368 F.3d 132 ...................................................................................... 14

*Amchem Products, Inc. v. Windsor* (1997)
521 U.S. 59.................................................................................. 15, 20, 29

*Berger v. Compaq Computer Corp.* (5th Cir. 2001)
257 F.3d 475 ...................................................................................... 27

*Castano v. American Tobacco Co.* (5th Cir. 1996)
84 F.3d 734 ........................................................................................ 30

*Chamberlan v. Ford Motor Company* (N.D. Cal. 2004)
223 F.R.D. 524 ................................................................................... 24

*Colorado River Conservation District v. United States* (1976)
424 U.S. 800....................................................................................... 13

*Coopers & Lybrand v. Livesay* (1978)
437 U.S. 555....................................................................................... 15

*Fisher v. Ciba Specialty Chemicals Corp.* (S.C. Ala. 2006)
238 F.R.D. 27 ..................................................................................... 12

*Gartin v. S&M NuTec LLC* (C.D. Cal 2007)
245 F.R.D. 429 ................................................................................... 12

*General Telephone Company of the Southwest v. Falcon* (1982)
457 U.S. 147.................................................................................. 12, 27

*In re Global Crossings Ltd. Securities Litigation* (S.D. N.Y. 2003)
313 F.Supp.2d 18 ............................................................................... 28

*Grays Harbor Adventist Children's School v. Carrier Corp.* (W.D. Wash. 2007)
242 F.R.D. 568 ................................................................................... 23

*Huff v. N.D. Cass Co.* (5th Cir.1973)
485 F.2d 710 ...................................................................................... 16

*In re Initial Public Offering Securities Litigation* (2nd Cir. 2006)
471 F.3d 24 ........................................................................................ 12

*Intel Corp. v. Advanced Micro Devices,
Inc., supra,* 12 F.3d at 913 ............................................................... 14

*Lightbourn v. County of El Paso* (5th Cir. 1997)
118 F.3d 42 ........................................................................................ 27

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**
(continued)

Page

*Los Angeles Branch NAACP v. Los Angeles Certified School Dist.* (9th Cir. 1984)
750 F.2d 731 ................................................................. 14

*In re Masonite Corporation Hardboard Siding Products Liability Litigation* (E.D. La. 1997)
170 F.R.D. 417 ................................................................. 19

*Nakash v. Marciano* (9th Cir. 1989)
882 F.2d 141 ................................................................. 13, 14, 15

*National Super Spuds, Inc. v. New York Mercantile Exchange* (2nd Cir. 1981)
660 F.2d 9 ................................................................. 28

*O'Connor v. Boeing North American, Inc.* (C.D. Cal. 2000)
197 F.R.D. 404 ................................................................. 30

*Rambaran v. Park Square Enterprises, Inc.* (M.D. Fla. 2008)
2008 U.S. Dist. LEXIS 7153 ................................................................. 14

*Richards v. Jefferson County* (1996)
517 U.S. 793-80 ................................................................. 27

*Romine v. Compuserve Corporation* (6th Cir. 1998)
160 F.3d 337, 341 ................................................................. 14

*Ross v. U.S. Bank National Association* (N.D. Cal. 208)
542 F. Supp.2d 1014, 1021-1022 ................................................................. 14, 15

*Stickrath v. Globalstar, Inc.* (N.D. Cal. 2007)
527 F.Supp.2d 992 ................................................................. 21

*In re Stucco Litigation* (E.D. N.C. 1997)
175 F.R.D. 210 ................................................................. 19

*Sweet v. Pfizer* (E.D. Cal. 2005)
232 F.R.D. 360 ................................................................. 12, 20, 30

*Szabo v. Bridgeport Machs, Inc.* (7th Cir. 2001)
249 F.3d 672, 676 ................................................................. 12

*Weiner v. Dannon Co., Inc.* (C.D. Cal. 2009)
255 F.R.D. 658 ................................................................. 22

*Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001)
253 F.3d 118 ................................................................. 11, 30

**STATE CASES**

*Aas v. Superior Court* (2000)
24 Cal.4th 627 ).] ................................................................. 21

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

# TABLE OF AUTHORITIES
## (continued)

Page

*All West Electronics, Inc. v. M-B-W, Inc.* (1998)
64 Cal.App.4th 717 ................................................................................ 27

*American Suzuki Motor Corp. v. Superior Court* (1995)
37 Cal.App.4th 129 ................................................................................ 25

*Arata v. Tonegato* (1957)
152 Cal.App.2d 837 *citing, Vogel v. Thrifty Drug Co.*(1954) 43 Cal.2d 184 ................. 26

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987)
191 Cal.App.3d 1341 ................................................................................ 20

*Burr v. Sherwin Williams Co.* (1954)
42 Cal.2d 682 ........................................................................................ 26

*Daro v. Superior Court* (2007)
151 Cal.App.4th 1079 .............................................................................. 18

*Daugherty v. American Honda Motor Co., Inc.* (2006)
144 Cal. App. 4th 82 ...................................................................... 23, 24, 25

*Dinosaur Development, Inc. v. White* (1989)
216 Cal. App. 3d 131 .............................................................................. 18

*Fieldstone Co. v. Briggs Plumbing Products, Inc.* (1997)
54 Cal.App.4th 357 ............................................................................ 21, 26

*Frieman v. San Rafael Rock Quarry, Inc.* (2004)
116 Cal. App. 4th 29 .............................................................................. 26

*Fundin v. Chicago Pneumatic Tool Company* (1984)
152 Cal.App.3d 951 ............................................................................ 17, 18

*Hicks v. Kaufman and Broad Home Corporation* (2001)
89 Cal.App.4th 908 ...................................................................... 21, 25, 26

*Home Savings and Loan Assn. v. Superior Court* (1974)
42 Cal.App.3d, 1006 .............................................................................. 14

*Krusi v. S. J. Amoroso Construction Co., Inc.* (2000)
81 Cal.App. 4th 995 .............................................................................. 16

*Merrill v. Navegar, Inc.* (2001)
26 Cal.4th 465 ...................................................................................... 18

*Meyer v. Sprint Spectrum L.P.* (2009)
45 Cal.4th 634 ...................................................................................... 18

*Occidental Land, Inc. v. Superior Court* (1976)
18 Cal.3d 355 ...................................................................................... 22

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Osborne v. Subaru of America, Inc.* (1988)
198 Cal.App.3d 646 .................................................................. 22, 27

*In re Tobacco II Cases* (2009)
46 Cal.4th 298 ................................................................................. 22

*Slater v. Blackwood* (1975)
15 Cal.3d 791 ............................................................................ 11, 13

*South Tahoe Gas Co. v. Hofmann Land Improvement Co.* (1972)
25 Cal.App.3d 750, 765 .................................................................... 18

*Vaughn v. Dame Construction Co.* (1990)
223 Cal.App.3d 144 ......................................................................... 16

*Vogel v. Thrifty Drug Co.* (1954)
43 Cal.2d 184 .................................................................................. 26

**FEDERAL STATUTES**

F.R.C.P. Rule 23 ........................................................... 1, 11, 12, 15, 27,
29, i

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200, et seq .......................................................... 4

Cal. Code Civ. Proc. §337.] ............................................................................. 18

[Cal. Code Civ. Proc. §339 ...................................................................... 17, 18

Cal. Civ. Code § 1780(a) ................................................................................ 18

Cal. Com. Code §2314, comment no. 13 ............................................................. 18

Cal. Com. Code §2607(3)(A) .................................................................... 8, 26

Cal. Com. Code  §2725 ................................................................................... 17

Wash. Rev. Code §19.86 ................................................................................. 23

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# I.

## **INTRODUCTION**

On April 8, 2009, a California trial court certified two subclasses of California original purchasers of Viking Industries Series 3000 windows manufactured between 1989 and 1999, based on the allegation that the windows contained a defect. *Deist v. Viking Industries, Inc.*, Case No. CV025771, San Joaquin County Superior Court. One month later, Plaintiffs moved this Court to certify a class based on the ***same*** products, under the ***same*** theory of defect, for California citizens who currently own or formerly owned Viking Series 3000 windows manufactured between 1991 and 1999.

The similarity between this 2007 action and the 2005 *Deist* lawsuit is no accident: Plaintiffs' counsel here expressly admitted that this lawsuit only was filed because they could not reach a fee-sharing agreement with the *Deist* plaintiffs' counsel. Thus, by this motion, Plaintiffs embroil this Court in an overt competition with *Deist*, where the duplication of efforts by multiple courts involving overlapping classes is the goal. This tug of war is unnecessary. For even if the coexistence of these two cases were coincidental, the record and state court's summary adjudication rulings in *Deist*, and the individualized facts and legal theories alleged by Plaintiffs here, collectively confirm that class certification is unwarranted under FRCP 23.

As a fundamental matter, the putative class members' window claims are heterogeneous and require a highly individualized adjudication. That is not rhetoric. To the contrary, it was definitively illustrated by the *Deist* Court's 48 page summary adjudication order. Judge Carter Holly's order established that even a sample of only 15 owners of Viking Series 3000 windows requires an individualized analysis to establish the elements of the claims alleged and includes claimants who cannot establish any liability. Thus:

- Causation cannot be established class wide, for as the Court found and plaintiffs expressly conceded, "water infiltration could have been caused by a myriad of other things, such as faulty construction of the home or installation of the window . . . ," thus requiring individualized inquiry for causation. [*Deist* MSJ Order, pp. 37-38. (Decl. J.M. Thacker, Exhibit "A.")]

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

- As with causation, individualized issues of notice and privity governed plaintiffs' standing to allege certain warranty claims. [*Deist* MSJ Order, p. 24 ("Even if is determined at trial that plaintiffs, or any one of them, had sufficient 'sophistication' so that notice was required, there remains a question of timing. . . . [Which] must be determined from the particular circumstances of each case."), and p. 27 ("[W]ith regard to privity, it becomes important to categorize the warranties involved and the plaintiffs.").]

- In addition, with products up to twenty years old, Judge Holly's inquiry on the statute of limitations confirmed that many of the claims alleged were time barred by individual facts: "[p]laintiffs must act when they are aware of damages occasioned by someone's wrongdoing; it is not required that plaintiffs know the specifics such as who or how." [*Deist* MSJ Order, p. 37.)

After confirming their diversity, Judge Holly reviewed the various class representatives' claims and – based entirely upon individualized evidence as to each named plaintiff – granted summary judgment/adjudication as to some, all, or no claims for each claimant.   These issues only would be exacerbated by any class treatment, and no class judgment could establish the basic issue of defendant's liability universally to any purported class.

It was not surprising then that, three days after Judge Holly's ruling, the *Deist* plaintiffs' counsel narrowed the scope of the class claims to only seek a class of ***original*** owner and retail purchaser plaintiffs and ***warranty*** claims, a sharp contrast to the three subclasses of window owners and six causes of action originally alleged for class treatment in the *Deist* complaint.

Defendant does not concede that a class is proper for any claims here, and has sought extraordinary review of the *Deist* two-page certification ruling.  [Plaintiffs' Request for Judicial Notice, Ex. "A."]  However, that certification exists, and cannot be ignored as Plaintiffs have done in their motion.  More broadly, the record in *Deist*, and the record established in discovery here, confirms that certification is unwarranted in this case.

***First***, there is no legal basis to certify a class that overlaps with original homeowners or retail purchasers of class windows who could participate in the certified class in *Deist*.

***Second***, as to non-original purchasers of homes with Series 3000 windows as potential class members, the *Deist* court's summary adjudication ruling confirms why such persons do not have valid claims under California law.  Moreover, the class representatives here cannot demonstrate "typicality" or "adequacy" of representation for such non-original purchasers.

- 2 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    ***Third***, with regard to the additional claims asserted in this action, individual issues clearly

2    predominate and would render this action wholly unmanageable.  And further, any class litigation

3    here would be in constant competition with parallel proceedings in Judge Holly's court about

4    identical facts and conduct, casting further confusion and doubt into the scope and effect of any

5    rulings as they are rendered among the different jurisdictions.

6         In sum, while Plaintiffs ignore *Deist* in favor of presenting identical claims to this Court,

7    there is no rational, practical, or legal reason to duplicate Judge Holly's work.  Nor should this

8    Court resurrect additional claims or claimants excluded by Judge Holly or the *Deist* plaintiffs'

9    counsel's own decision.   As detailed below, Plaintiffs' motion is without merit and should be

10   denied.

## II.

## FACTUAL BACKGROUND

**A.    FACTS UNDERLYING THIS ACTION**

14        From May 1989 to September 1999, Viking manufactured aluminum window and door

15   products known as the Model 3000 Series, which included a slider, single hung, fixed, and

16   casement window, and sliding glass door (the "Window Products").  Most of these products were

17   manufactured before 1995, as Viking phased out aluminum products in response to a market

18   demand for vinyl products.  Throughout this time, Viking was a remote manufacturer selling its

19   products only to builders and retailers.  [Decl. J. Stickney, ¶3.]  The Window Products were sold

20   throughout the State of California.

21        Viking's 3000 Series products were covered by a written warranty.  From May 1989

22   through February 1991, Viking provided a one-year warranty against defects in materials and

23   workmanship.  From March 1991 through September 1999 Viking warranted that its products

24   "will be free of defects in material and workmanship that significantly impairs their operation and

25   proper usage for as long" as they are owned by the original purchaser.  The warranties require

26   that the customer notify Viking of any claim, and further provide that "Viking will repair or

27   furnish replacements for products or components found to be defective or, at its option, refund the

28   original purchase price of the product."  [Decl. of D. Birka-White (submitted by Plaintiffs), Ex.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   "F."]  For the approximately 1.2 million Window Products sold in California during 1989-1999,

2   fewer than 360 service calls, made between 1995 and 2005, mentioned water intrusion.  [Decl.

3   Michael Sullivan, ¶ 28a.]  There is no evidence that the incidence of water intrusion claims

4   increased during the 20 years the Window Products have been in use or that leaks increase with

5   the age of the product; in fact, there is evidence to the contrary.  [See, Section II.B.1, below.]

6         Plaintiffs filed their complaint on August 16, 2007, seeking certification of a class

7   consisting of all owners of residential property in California in which the Viking Series 3000

8   aluminum windows are or were installed, and asserting causes of action for strict liability,

9   negligence, breach of express warranty, breach of implied warranty, violation of the Consumer

10  Legal Remedies Act ("CLRA"), violation of California's Unfair Competition Law (Cal. Bus. &

11  Prof. Code §§ 17200, et seq. and 17500, et seq.) ("UCL"), fraudulent concealment, and

12  restitution.  The complaint alleges that the Window Products contain inherent defects that cause

13  water intrusion damage to the structures in which they were installed, and seeks recovery of all

14  damage in the form of replacement costs and consequential damage to other property caused by

15  water intrusion.

16  **B.**   **THE EXTENDED DISCOVERY AND SUMMARY ADJUDICATION PROCESS**

17  **IN *DEIST* STARKLY DEMONSTRATES THE INDIVIDUAL NATURE OF SIMILAR CLAIMS HERE.**

18        To understand the class certification process in *Deist*, it is important to review how

19  discovery and the court's prior rulings in *Deist* led the *Deist* plaintiffs to narrow their proposed

20  class only to warranty claimants.

21      **1.**   **Discovery in the *Deist* Action Confirms the Highly Individualized Nature Of**

22  **The Claims Being Asserted In This Case.**

      In *Deist*, the following discovery and investigation has taken place:  22 depositions (14

23  plaintiffs, two "persons most knowledgeable for Viking" and six former Viking employees), 20

24  sets of interrogatories (each with 50 or more separate interrogatories), 21 sets of requests for

25  production of documents, 18 subpoenas for records pertaining to the *Deist* Plaintiffs' homes,

26  inspections of all of the *Deist* Plaintiffs' homes by Viking's experts, production of thousands of

27  pages of documents by Viking and hundreds of pages from the *Deist* Plaintiffs and individuals

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  responding to subpoenas, destructive investigation of five of the *Deist* Plaintiffs' homes by

2  Viking, surveys of 292 non-plaintiff owner homes concerning the Viking windows in their

3  homes, inspections by Viking of 564 Viking windows in non-plaintiff owned homes, statistical

4  studies performed by Viking's experts, and testing by Viking experts in many of the non-plaintiff

5  owned homes.   [Decl. J. Mark Thacker.]

6       In connection with the *Deist* action, the data demonstrates the highly individualized nature

7  of the claims being asserted in this action.  First, there is **no** evidence that demonstrates each unit

8  in the field has failed to function and in fact the data demonstrates the overwhelming majority

9  have performed.  For the approximately 1.2 million Window Products sold in California during

10  1989-1999 there were only 353 leak service calls between 1996 and 2005.  [Decl. of Michael

11  Sullivan, ¶ 28a.]  In a random survey of consumers with Series 3000 aluminum windows, less

12  than 2% complained of any leaks.  [Decl. of Michael Sullivan, ¶ 28c.]  Review of randomly

13  selected windows demonstrated the vast majority of the Window Products are performing without

14  any malfunction or damage.  [Decl. of Joel Wolf, ¶¶ 25-32; Decl. of George Tsongas, ¶¶23-29;

15  Decl. of Michael Sullivan, ¶¶28-31.]

16       Viking's consultants performed water tests consistent with the *Deist* plaintiffs' experts'

17  testing, which testing subjected the windows to quantities of water that exceeded any level of

18  rainfall ever recorded in California and recorded a single drop as a failure.  [Decl. of George

19  Tsongas, ¶¶34-39; Decl. of Pete Cruz, ¶19f; Decl. of Joel Wolf, ¶¶33, 42-43.]  A majority of the

20  windows tested by Viking's consultants passed the plaintiffs' test.  [Decl. of Joel Wolf, ¶33.]

21  More importantly, the investigation of actual window performance demonstrated that the *Deist*

22  plaintiffs' tests showed an unreasonable level of false positives and was not a reliable indicator to

23  determine a window that had not performed.  [Decl. of Joel Wolf, ¶¶28-31; Decl. of Michael

24  Sullivan, ¶¶32-33, 36-37.]  Even in those instances where the *Deist* plaintiffs' tests showed a

25  failure, 93% had no visible staining, 82% showed no swelling of window stools, and 79% had no

26  damage or deterioration anywhere.  [Decl. of Michael Sullivan, ¶¶32-33, Decl. of Joel Wolf,

27  ¶¶21, 25.]  In addition, damage and staining were equally likely to occur in windows that failed

28  the water test (49%), as they were in windows that passed the test (51%).  [Decl. of Joel Wolf, ¶¶

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

30-31.] It is not surprising the *Deist* plaintiffs' testing wildly overstates the rate of window failure

as it ignores accepted standards and guidelines and subjects the window to never seen quantities

of water. [Decl. of Pete Cruz, ¶¶19c-19f; Decl. of George Tsongas, ¶¶34-39.] In fact, the ASTM

standard specifically warns against the type of testing conducted by the *Deist* plaintiffs: "The test

method should simulate the actual conditions under which leakage has been observed. Testing at

an environmental exposure level that the building has never experienced and has little likelihood

of experiencing may lead to incorrect conclusions." [ASTM E2128, §§10.2.1 and 10.2.2,

attached as Exhibit "B" to Decl. of Pete Cruz.]

Further, the *Deist* plaintiffs' tests demonstrate there is no correlation between a window's

age and deterioration. A comparison of manufacture dates and test results establishes that the

performance of the Window Products is not affected by the length of time in service. [Decl. of

Michael Sullivan, ¶¶ 34-35; Decl. of Joel Wolf, ¶¶ 34-36.] The failure rates under plaintiff's

testing showed a rate essentially equivalent for products sold between 1989-1991 and products

sold between 1995-1997. The warranty service data also confirms the lack of evidence of mass

failure arising in the future years.   All of the foregoing illustrates that any issues concerning the

performance of the Viking Series 3000 windows, which have been in service for 10-20 years

without any significant signs of malfunction, are extremely variable, and can only be addressed

home-by-home, window-by-window.

In addition, the *Deist* plaintiffs' test results conclusively demonstrate that there are

alternative causes that must be analyzed. Sixty-seven percent of the windows that **passed** the

plaintiffs' tests had staining adjacent to them. [Decl. of Michael Sullivan, ¶37.] Obviously, this

staining was not caused by a malfunction of a window that did not allow single drop of water to

infiltrate even after being subjected to water levels simulating rainfalls never before seen in

California. This is not a surprise. The *Deist* court adopted plaintiff's admission: **"water**

**infiltration could have been caused by a myriad of other things, such as faulty construction**

**of the home or installation of the window."** [*Deist* MSJ Order, 37:22-28.] As recognized in the

applicable ASTM: "Failure of a single wall component to perform at the specified level does not

automatically mean that it was the cause of leakage. Windows are often wrongfully blamed for

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  leaks because the interior symptom of the leak appears at a window, even though the cause is

2  elsewhere." [ASTM E2128, §7.2.1 and Appendices, §X3.8.8, attached as Exhibit "B" to the Decl.

3  of Pete Cruz.]

4      Moreover, considering that windows receive different degrees of exposure to the elements

5  (e.g., direction of exposure, extent of overhang of the eaves, protection by porches and awnings)

6  [Decl. of George Tsongas, ¶36; Decl of Pete Cruz, ¶18], individualized inquires is required on a

7  window-by-window basis to determine whether the window has malfunctioned, whether the

8  window is likely to malfunction in the future, and the extent (if any) of any damage caused by the

9  malfunction.

10     The *Deist* case and data demonstrate that individual issues abound. Each window must be

11  diagnosed to see if any damage was caused by it. Each window must be examined to determine if

12  there is damage to or around the windows. If there is damage, then, it must be determined if it

13  was caused by the window.  Then it must be determined if the cause was a malfunction in the

14  window, or something else, like faulty installation or placement of a security system through the

15  unit. In one investigation 7 of 21 windows provided by the *Deist* plaintiff's had holes drilled in

16  them to accommodate security alarm wires [Decl. of Joel Wolf, ¶18(a)(i)],  As Plaintiffs are

17  seeking recovery for damage to building components other than the windows, extensive discovery

18  and trial time will be required to explore all of the alternative and contributory causes for the

19  damage claimed by plaintiffs.  [*See e.g.*, the *Deist* court's adoption of plaintiffs' admission:

20  **"water infiltration could have been caused by a myriad of other things, such as faulty**

21  **construction of the home or installation of the window".** (*Deist* MSJ Order, 37:22-28.)]

22     The data from *Deist* indicates further individual issues, such as whether the plaintiff was a

23  purchaser of the original home (survey data indicated only 27% were original homeowners and,

24  consistent with census data, over 7% buy their home each year [Decl. of Michael Sullivan, ¶38]).

25  The individual issues increase exponentially as we consider of all the possible scenarios of

26  window or home purchase.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

2. **Viking's Motions for Summary Judgment or Adjudication Confirm the Highly Individualized Nature Of The Claims Being Asserted In This Case.**

Viking filed motions for summary judgment and/or summary adjudication as to each of the fifteen plaintiffs in *Deist*.   The *Deist* Court's ruling, set forth in a 48-page order, found that at least one of the claims of 12 out of the 15 named plaintiffs (80%) were barred either by the statute of limitations or for lack of privity.  The *Deist* Court's rulings and analysis demonstrate the myriad of issues that arise in this context requiring individualized proof and adjudication.

a. **Causation:**

Obviously, in a case alleging a product defect that causes windows to leak, the cause of water infiltration in any leaking window is a key issue.  With this in mind, the *Deist* court agreed with a point **conceded by plaintiffs** and found that "water infiltration could have been caused by a myriad of other things, such as faulty construction of the home or installation of the window[.]" [*Deist* MSJ Order, pp. 37:22-28).

b. **Notice:**

Addressing the issue of notice of breach of warranty  (Cal. Com. Code §2607(3)(A)) the *Deist* court determined that "the sophistication of the parties is an element for consideration as to whether notice of the warranty breach is required or not." [*Deist* MSJ Order, 23:5-7.]  It ruled that Viking's arguments and evidence concerning the *Deist* plaintiffs' levels of sophistication "raises a triable issue as to whether these plaintiffs had sufficient 'sophistication' to warrant the notice requirement." [*Deist* MSJ Order, 24:2-4.]  Further, the court determined that if the individual level of 'sophistication' of a particular individual requires that notice be given, the issues of timing and reasonableness remained to be resolved, individually.  As the court recognized, "whether notice was reasonable must be determined **from the particular circumstances of each case.**" [*Deist* MSJ Order, 24:18-22.  (Emphasis added.]

c. **Privity:**

With respect to the requirement of privity in connection with the warranty claims, the court divided the named plaintiffs into three groups: (1) those who acquired Window Products through the purchase of their home, but who are not the original owners (i.e., subsequent

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    purchasers);  (2) those who acquired Window Products through the purchase of their home as a

2    new homeowner (i.e., original homeowners); and (3) those who "directly" acquired the Window

3    Products by purchasing them at a retail store (i.e., retail purchasers).  [*Deist* MSJ Order, 27:10-

4    17.]

5          For express warranty claims, the *Deist* Court found that privity is an essential element,

6    and that it may exist if an original homeowner proves that the home was built specifically for him

7    or her.  [*Deist* MSJ Order, 28:26-29:6.]  The court further recognized that a "critical" issue in the

8    analysis was whether a plaintiff was aware of and relied on the warranty.  [*Deist* MSJ Order,

9    29:7-30:10.]  For plaintiffs who could not establish privity, the court recognized that "the only

10   remaining viable theory" was for each such plaintiff to establish that he or she was a third party

11   beneficiary.  [*Deist* MSJ Order, 30:14-32:21.]  Accordingly, "[a]fter reviewing the specific facts

12   as to each plaintiff who was not an "original homeowner," the court found that privity did not

13   exist and that no exception applied.  [*Deist* MSJ Order,  32:22-27.]

14         Regarding the named plaintiffs' implied warranty claims, and based on the same analysis

15   of each plaintiff's individual circumstances, the court recognized that privity existed as to "direct"

16   retail purchasers, but that there was no basis for finding privity as to all others.  [*Deist* MSJ Order,

17   33:1-26.]

18          **d.**     **Statute of limitations defense:**

19         With regard to the applicable statute of limitations – a significant issue given the age of

20   the Window Products – the *Deist* Court recognized that individualized inquiry was necessary to

21   determine when a plaintiff did or reasonably should have become aware of a potential claim.

22   Ultimately, the court eliminated both warranty and tort-based causes of action as time-barred.

23   [*Deist* MSJ Order, p. 37].)  In ruling on these issues, the *Deist* court assessed each named

24   plaintiff's individual circumstances, on a plaintiff-by-plaintiff and house-by-house basis.

25         In summary, after an exhaustive examination of individualized evidence and the

26   application of three different statutes of limitations to nearly a dozen individual plaintiffs, the

27   *Deist* Court ruled that two-thirds of the named Plaintiffs' warranty and tort claims were without

28   merit **as a matter of law**, ordering summary adjudication in favor of Viking.  [*Deist* MSJ Order,

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   47:6-48:11.]  As to those Plaintiffs who were able to avoid summary adjudication, Viking will

2   still have the right to assert a statute of limitations defense at trial, which would involve factual

3   inquiries on an individual-by-individual basis.

4          Accordingly, the *Deist* Court's ruling confirmed Viking's substantial defenses with

5   respect to the viability of Plaintiffs' warranty and tort-based claims.  Each of these defenses will

6   require individualized inquiry and proof, in addition to extensive pre-trial discovery and

7   investigation.  Notwithstanding the substantial nature of these individualized issues, Plaintiffs

8   have provided the Court with nothing by way of a trial plan or proposed procedure for addressing

9   these issues.

10  C.   **THE *DEIST* PLAINTIFFS NARROW THEIR PURPORTED CLASSES, WHICH**
         **ARE THEN CERTIFIED.**

11         Recognizing  the importance of the record developed through discovery and summary

12  adjudication, the *Deist* plaintiffs narrowed significantly their purported class claims and

13  categories of plaintiffs.  The *Deist* Plaintiffs sought certification of only two subclasses of retail

14  purchasers and original home purchasers, and only for warranty claims.

15         Notwithstanding the individual issues surrounding the claims for which the *Deist*

16  plaintiffs sought certification, two subclasses that substantially overlap the proposed class in this

17  action were certified. By order dated April 8, 2009, the *Deist* Court certified a class comprised of

18  two sub-classes, described as follows:

19
20          The Retail Purchaser Sub-Class.  All California property owners that
        purchased the Viking Series 3100 horizontal sliding, 3300 single hung or 3600
21      fixed windows that were manufactured between January 1989 and December 31,
        1999, which were installed in their California homes and buildings who have not
22      already released their claims about these windows or who are not presently a
        Plaintiff in a lawsuit, other than Deist v. Viking, that alleges the Window Products
23      are defective.  This subclass does not include owners of California buildings who
        acquired their Viking Series 3000 windows by purchasing a building.

24          The Original Home Purchaser Subclass.  All California property owners
        whose buildings have one or more of the Viking's aluminum window series 3000
25      et seq. windows in them who are 1st occupant resident owners of buildings located
        in California that had Viking Series 3100 horizontal sliding, 3300 single hung or
26      3600 fixed windows installed in them when they purchased their home and which
        windows were manufactured between January 1989 and December 31, 1999, who
27      have not already released their claims about these windows or who are not
        presently a Plaintiff in a lawsuit, other than Deist v. Viking, that alleges the
28      Window Products are defective.  [*Deist* Class Cert. Order, ¶ 4 (Plaintiffs' Request

RC1/5331241.1/BS                              - 10 -          DEFENDANT VIKING INDUSTRIES, INC.'S
                                                            OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
                                                                        CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    For Judicial Notice, Exhibit "A").]

2    Notice already has been mailed to potential class members and dealers, and publication of

3    the notice will commence on July 5.  [Decl. J.Mark Thacker, ¶4.]

4    **D.    THIS CLASS ACTION IS FILED SEEKING TO REVIVE DISCARDED CLASSES AND CERTIFY AN OVERLAPPING CLASS.**

5    This action and the *Deist* action are substantially similar.  Both allege identical defects in

6    the same series of Window Products, and both assert the identical "primary right."  [*Slater v.*

7    *Blackwood* (1975) 15 Cal.3d 791, 795 (California applies the 'primary rights' theory which holds

8    that "[e]ven where there are multiple legal theories upon which recovery might be predicated, one

9    injury gives rise to only one claim for relief.").]  The subclasses certified in *Deist* include the

10   proposed "Warranty Subclass" in its entirety, and the only remaining portion of the general class

11   proposed by Plaintiffs, designated as "The Class" in their motion, are (1) those who no longer

12   own their residential property that at some point in time had Window Products installed, and (2)

13   current owners who were non-original purchasers of residential property that had Window

14   Products installed prior to their purchase of the property.  In fact, the proposed class

15   representatives in this action are not even members of the class remaining after excluding the

16   portion of the proposed class that overlaps with the class certified in *Deist*.

17                                          **III.**

18   **PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING THROUGH SUBSTANTIAL EVIDENCE THE EXISTENCE OF EACH ELEMENT REQUIRED UNDER F.R.C.P. RULE 23**

19

20   It is Plaintiffs' burden to establish each of the required elements under Rule 23(a) –

21   numerosity, commonality, typicality, and adequacy of representation – and at least one of the

22   required elements under Rule 23(b).  [*Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253

23   F.3d 1180, 1186.]  Because Plaintiffs' motion focuses exclusively on the requirement under Rule

24   23(b)(3), Plaintiffs must prove:

25   . . . that the questions of law or fact common to class members predominate over
26   any questions affecting only individual members, and that a class action is
     superior to other available methods for fairly and efficiently adjudicating the
27   controversy.  The matters pertinent to these findings include;
     (A)    the class members' interests in individually controlling the prosecution of
28   defense of separate actions;

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1

(B)      the extent and nature of any litigation concerning the controversy already
2            begun by or against class members;

3      (C)      the desirability or undesirability of concentrating the litigation of the
             claims in the particular forum;
4

(D)      the likely difficulties in managing a class action.
5

[F.R.C.P. Rule 23(b)(3).]
6

Courts consistently hold that plaintiffs may not meet their Rule 23 burdens by relying on
7

their pleadings, allegations and argument, but rather must submit sufficient evidence to enable a
8

court to engage in a "rigorous analysis" of whether each required element under Rule 23 has been
9

established.[1]  [*General Telephone Company of the Southwest v. Falcon* (1982) 457 U.S. 147, 161
10

(a class action "may only be certified if the trial court is satisfied, after rigorous analysis, that the
11

prerequisites of Rule 23(a) have been satisfied.").]  If necessary, the Court must engage in an
12

analysis of the merits to determine if plaintiffs satisfied Rule 23's requirements.  [*See, In re Initial
13

Public Offering Securities Litigation* (2nd Cir. 2006) 471 F.3d 24, 33 ("the requirements of Rule
14

23 must be met, not just supported by some evidence . . . . [therefore,] the class determination
15

generally involves considerations that are enmeshed in the factual and legal issues comprising the
16

plaintiff's cause of action.); *Szabo v. Bridgeport Machs, Inc.* (7th Cir. 2001) 249 F.3d 672, 676
17

(when Rule 23 issues "overlap the merits . . . then the judge must make a preliminary inquiry into
18

the merits").[2]

19

20

21

_____

22
[1]  Any expert evidence submitted in support of a motion for class certification must be "sufficiently probative to be
useful in evaluating whether class certification requirements have been met." [*Fisher v. Ciba Specialty Chemicals
23   Corp.* (S.C. Ala. 2006) 238 F.R.D. 273, 281.] Further, the opinion of any expert must "relate to, or benefit from, any
such expertise." [*Id.*] As reflected in Viking's objections to Plaintiffs' expert declarations, many of the opinions set
24   forth therein are not "sufficiently probative" as Plaintiffs' experts, by their own admission, attest to their lack of
expertise as to a number of opinions offered.
25   [2]  Plaintiffs appear to argue that consumer fraud and product defect cases are somehow deserving of special treatment
for class consideration. (Plaintiffs' Memo. Of Pts. & Auths., 8-9) However, this is not accurate. [*See, e.g., Gartin v.
26   S&M NuTec LLC* (C.D. Cal 2007) 245 F.R.D. 429 (court denied certification of consumer fraud action based on lack
of typicality and commonality, including individualized issues of reliance, causation, and affirmative defenses);
27   *Sweet v. Pfizer* (E.D. Cal. 2005) 232 F.R.D. 360 (court denied certification of consumer strict liability, warranty and
UCL action based on lack of typicality, lack of predominant common issues, and lack of superiority).]  Contrary to
28   their generalized assertions, Plaintiffs must establish each required element for certification and undergo the same
"rigorous analysis" as is required in every other action in which class certification is sought.

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**IV.**

**LEGAL ARGUMENT**

A.  **THERE IS NO REASON TO DUPLICATE YEARS OF EFFORT BY THE COURT AND COUNSEL IN *DEIST* BY CERTIFYING A CLASS BASED ON FACTS IDENTICAL TO *DEIST***

This action and the Deist action are identical as to every essential element.  Each action alleges identical defects in the same Window Products.  Moreover, the claims are identical. [*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 (California applies the 'primary rights' theory which holds that "[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.").]  Accordingly, there is no justification to entertain Plaintiffs' motion for certification which essentially asks this Court to reconsider all the issues submitted to and decided by the *Deist* Court.

Although the two actions initially were identical, extensive litigation in *Deist* over the past four years has resulted in a substantial narrowing of the claims and potential class.  There is no reason why Plaintiffs in this action should be allowed essentially to relitigate these issues in hopes of achieving a different result.  The *Deist* Court's particularized analysis and rulings in its order on Viking's motions for summary judgment or adjudication eliminated claims and potential classes both as a matter of law, and by implication, that are now being re-submitted to this Court. It was no mere coincidence that the *Deist* Plaintiffs' motion for class certification, filed shortly after the *Deist* Court's summary judgment rulings, substantially narrowed the claims and proposed class being sought in that action.

In similar circumstances, the United States Supreme Court established the preferred course to avoid the kind of unnecessary, wasteful and improper duplication of effort presented to this Court by Plaintiffs' motion seeking certification.  [*Colorado River Conservation District v. United States* (1976) 424 U.S. 800, 817 (Federal courts may appropriately decline to exercise their jurisdiction where there are concurrent state court proceedings involving the same matter as in the federal court proceeding, based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."); *see, also, Nakash v. Marciano* (9th Cir. 1989) 882 F.2d 1411, 1416.]

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1     A judgment in *Deist* will be binding in this action, and consequently, as to the portion of

2  the class proposed in this action that overlaps with the *Deist* class, such a judgment will

3  unquestionably dispose of all claims asserted in this action by the "overlapping" segment. [*Home*

4  *Savings and Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d, 1006, 1011 (notice to the class

5  will result in "a binding adjudication and an enforceable judgment with respect to the rights of the

6  members of the class."); *Los Angeles Branch NAACP v. Los Angeles Certified School Dist.* (9th

7  Cir. 1984) 750 F.2d 731, 741 ("A judgment on behalf of a class binds all persons belonging to the

8  class and all those who subsequently come into the class.").] Moreover, as a practical matter, a

9  judgment in *Deist* will dispose of **all** potential class claims in this action because the only claims

10  and class claimants that are even possibly viable on a class basis are those currently certified in

11  *Deist*. This factor alone justifies this Court's denial of Plaintiffs' motion. [*Intel Corp. v.*

12  *Advanced Micro Devices, Inc., supra*, 12 F.3d at 913; *Ross v. U.S. Bank National Association*

13  (N.D. Cal. 2008) 542 F.Supp.2d 1014, 1021-1022.]

14     Additional factors considered by courts in this regard include the desirability of avoiding

15  piecemeal litigation, and the order in which the concurrent forums obtained jurisdiction." [*Ross*

16  *v. U.S. Bank National Association, supra*, 542 F.Supp.2d at 1021.] These considerations also

17  warrant this Court's denial of Plaintiffs' motion, as this action has clearly already resulted in

18  "piecemeal litigation," and the *Deist* action preceded this action by two and one-half years.

19  [*Romine v. Compuserve Corporation* (6th Cir. 1998) 160 F.3d 337, 341 ("Piecemeal litigation

20  occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and

21  potentially rendering conflicting results."); *See, also, Ross v. U.S. Bank National Association,*

22  *supra*, 542 F.Supp.2d at 1022 (holding that the fact that two state actions were filed one year or

23  less before the federal action "favors deferring jurisdiction" as to the federal action.).] Moreover,

24  the claims in this action are entirely based on state law, and there is no credible claim that the San

25  Joaquin Superior Court cannot adequately adjudicate these claims and protect the rights of the

26  parties. [*Nakash v. Marciano, supra*, 882 F.2d at 1415; *Ambrosia Coal & Construction Co. v.*

27  *Pages Morales* (11th Cir. 2004) 368 F.3d 1320, 1334.][3]

28  ---
[3]   Moreover, the fact that a plaintiff chose state court to assert his or her claims supports a presumption of adequacy

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1    Finally, although not specifically identified as a factor for consideration, the genesis of

2    this separate action is nevertheless an important consideration in this Court's analysis of

3    Plaintiffs' motion. [*See, e.g., Nakash v. Marciano, supra*, 882 F.2d at 1416; *Ross v. U.S. Bank*

4    *National Association, supra*, 542 F.Supp.2d at 1022 ("forum shopping weighs in favor of staying

5    the current action.").]  In a declaration submitted by Plaintiffs' counsel, they admit that this action

6    was filed because they could not agree on a fee-sharing agreement with the *Deist* counsel.

7    [Declaration of Steve Oroza, ¶ 4 (Docket # 23).]  In essence, Plaintiffs' counsel stated that from

8    April 2006 through April 2007 they worked with the *Deist* counsel on the *Deist* action, but that

9    "[n]o co-counsel agreement was ultimately reached and the Birka-White Law Offices [Plaintiffs

10   counsel in this action] ceased working on the [*Deist*] case."  [*Id.*]  Less than four months later,

11   this action was filed.

12   Based on the foregoing, this Court should simply deny Plaintiffs' motion.

13   **B.    INDIVIDUAL QUESTIONS OF LAW AND FACT PREDOMINATE IN ALL OF
14   THE PURPORTED CLASSES**

15   Plaintiffs' proposed class is inappropriate for certification because individual issues of law

16   and fact predominate over common issues with respect to each of Plaintiffs' claims.  Plaintiffs

17   must establish the existence of common issues of law and fact pursuant to the requirements of

18   Rule 23(a), and must further establish that these issues predominate all other individualized

19   issues, as required under Rule 23(b)(3).[4]  The "predominance" inquiry under Rule 23(b)(3) is far

20   more demanding than the "commonality" requirement under Rule 23(a), and requires analysis of

21   "the legal or factual questions that qualify each class member's case as a genuine controversy."

22   [*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 623-624.]  Furthermore, courts

23   recognize that in determining whether common issues predominate, there are occasions when

24   preliminary inquiries into the merits of the plaintiffs' claims must be made.  [*See, e.g., Coopers &*

25   *Lybrand v. Livesay* (1978) 437 U.S. 555, 558 ("Evaluation of many of the questions entering into

26   of the state forum.  [*See, e.g., Rambaran v. Park Square Enterprises, Inc.* (M.D. Fla. 2008) 2008 U.S. Dist. LEXIS

27   71538, at 20-21.]  Plaintiffs in this action initially filed their complaint in San Joaquin Superior Court, the same court
     in which the *Deist* action is pending.  There can be no credible basis for Plaintiffs to argue that the San Joaquin
     Superior Court is somehow inadequate to adjudicate the issues.
     [4]   Plaintiffs base their motion strictly on subsection (3) of Rule 23(b), and do not address to any extent the other

28   alternative criteria under Rule 23 (b)(1) or (2).

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/5331241.1/BS                                  - 15 -

1  determination of class action questions is intimately involved with the merits of the claims.  The

2  typicality of the representative's claims or defenses, the adequacy of the representative, and the

3  presence of common questions of law or fact are obvious examples.  The more complex

4  determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the

5  merits. . . ." (*quoting,* 15 Wright, Miller & Cooper, Federal Practice and Procedure, §3911, p.485,

6  n. 45 (1976).); *see, also, Huff v. N.D. Cass Co.* (5th Cir.1973) 485 F.2d 710, 714 (en banc) ("It is

7  inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b)

8  and the question of whether plaintiff can succeed on the merits.").]

9      As discussed below, the problem of individual issues pervades all classes involving all

10  purported theories of recovery.

### 1.   The Putative Class Members Cannot Establish Standing To Assert Any Cause of Action Without Individualized Proof and Adjudications.

12  California law requires individualized proof that a claimant suffered actual economic

13  injury while he or she owned the home in order to assert such claims.  [*See, Krusi v. S. J.*

14  *Amoroso Construction Co., Inc.* (2000) 81 Cal.App. 4th 995, 1005 (holding that a cause of action

15  for inadequate design or construction accrues to the homeowner when the owner suffers harm,

16  and that such a cause of action will not transfer to a subsequent owner "without some clear

17  manifestation of such an intention.");  *see also, Vaughn v. Dame Construction Co.* (1990) 223

18  Cal.App.3d 144, 148-149 (recognizing that for subsequent purchasers to maintain an action for

19  construction defects, "they would first have to establish damage to their interests in the

20  property."[5]).]

21      Accordingly, adjudication of complex, individualized issues is inescapable for every

22  member of the proposed class that does not directly overlap with Deist.  These putative class

23  members would not have standing to assert any claims without first establishing, through

24  individualized evidence, when the property damage occurred, or was first discovered or ought to

25  have been discovered, and by whom.  Such issues will necessarily involve complex

---

[5]  The *Vaughn* Court further noted highly individualized issues that must also be considered and resolved such as whether the subsequent owners bought the property with knowledge of the defective construction, whether the alleged defects or damage was disclosed by the seller to the buyer, and whether the purchase price reflected the fair market value of the property in its defective condition.  [*Id.* at 149.]

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   determinations of individualized facts based on investigations and testing of virtually every

2   plaintiff's home.  Expert analysis and testimony for virtually every home will be necessary.

3          Further, because the proposed class descriptions include both former owners and

4   subsequent owners of the same structure, it will be necessary for the Court to adjudicate on an

5   individualized basis, for each set of former/subsequent owners, whether there is any manifestation

6   of intent by each former owner to transfer a claim to the corresponding subsequent owner.

7          **2.      Viking's Substantial Statute Of Limitations Defenses Preclude Class
                Certification.**

8          Many class members' claims are likely barred by the applicable statutes of limitations.

9   The likelihood of Viking prevailing on this defense is demonstrated by the age of the Window

10  Products – they have been in service for between 10 and 20 years – and by the *Deist* Court's

11  ruling on Viking's motions for summary judgment which eliminated a substantial number of

12  claims on this basis.  Four groups of *Deist* plaintiffs, nine out of the 15 individuals, had either all

13  their warranty claims or all of their tort claims, or both sets of claims, eliminated as a result of

14  being time-barred in a 48 page order.  [*Deist* MSJ Order, 34:1-47:4.]  The *Deist* Court's Order

15  demonstrates the entirely individualized analysis that is required to adjudicate these issues.  [*Deist*

16  MSJ Order, 38:11-44:15;  45:4-47:4.]  Viking is entitled to investigate, and present relevant

17  evidence by way of pre-trial motions or at trial, as to each class member's particular

18  circumstances with respect to the condition of the windows and relevant portions of the building,

19  as well as each class member's knowledge (actual and/or constructive), to ascertain whether each

20  class member's claims may be time-barred.

21         Moreover, even the basic determination of which statute of limitations applies, at least for

22  the warranty claims, will require individualized proof and adjudications.  The express and implied

23  warranty claims are subject either to a two-year period of limitations in the event there was no

24  written sales agreement between the particular class member and Viking, or a four-year period if

25  a written agreement existed.  [Cal. Code Civ. Proc. §339, *Fundin v. Chicago Pneumatic Tool*

26  *Company* (1984) 152 Cal.App.3d 951, 958-960 (two years for oral agreements);  Cal. Com. Code

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  §2725 or Cal. Code Civ. Proc. §337.][6]  Whether a particular class member's individual

2  circumstances warrant a finding of a written contract sufficient to trigger a four-year period of

3  limitations must be individually adjudicated based on each class member's individualized

4  circumstances.

5      The significance of Viking's statute of limitations defense in making class certification

6  inappropriate is further magnified as a result of Plaintiffs', and consequently all class members',

7  claims of delayed accrual and equitable estoppel as a result of alleged representations by Viking.

8  [Complaint, 4:16-5:9.]  The named Plaintiffs Mr. and Mrs. Cartwright will rely on statements

9  made by a technician who made a service call in response to their complaints about interior

10  condensation.  [Decl. of L. Cartwright (submitted by Plaintiffs), ¶¶ 6-7.]  Clearly, they are not

11  relying on any consistent statement broadcast or widely communicated to every owner of

12  Window Products, or even to a majority of owners.  Accordingly, in response to Viking's

13  assertion of a statute of limitations defense, each class member likely will attempt to prove

14  reliance on individualized and predominantly oral representations by a myriad of different service

15  technicians in asserting claims of delayed accrual or equitable tolling.

16  **3.  Common Issues Of Law Or Fact Do Not Predominate As The Issues of**
**Causation And Damage/Injury Require Individualized Proof.**

17

18      Causation and damages or injury are essential elements of each claim asserted by

    Plaintiffs.  [Strict liability and negligence: *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 479

19  ("[U]nder either a negligence or a strict liability theory of products liability, to recover from a

20  manufacturer, a plaintiff must prove that a defect caused injury."); Fraud: *South Tahoe Gas Co.*

21  *v. Hofmann Land Improvement Co.* (1972) 25 Cal.App.3d 750, 765; Warranties: Cal. Com.

22  Code §2314, comment no. 13; CLRA: Cal. Civ. Code § 1780(a), *Meyer v. Sprint Spectrum L.P.*

23  (2009) 45 Cal.4th 634, 641; UCL: Cal. B&P Code §§17204 and 17535, *Daro v. Superior Court*

24  (2007) 151 Cal.App.4th 1079, 1098-1099; Restitution:[7] *Dinosaur Development, Inc. v. White*

25

---

26  [6]  The *Deist* Court ruled that Cal. Code Civ. Proc. §337 controlled (four-years), but based its ruling on a decision that
did not address or decide the issue based on whether the contract was oral or written.  The *Fundin* court however

27  directly decided the issue and found that in the absence of a written sales agreement, the two-year period under Cal.
Code Civ. Proc. §339 controls.

28  [7]  Plaintiffs' restitution claim is necessarily premised on their other claims, each of which includes the essential
elements of causation and either damages or injury.

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1  (1989) 216 Cal. App. 3d 1310, 1315-1316.]

2       In *Deist*, plaintiffs explicitly admitted, and the Court agreed, that "water infiltration could

3  have been caused by a myriad of other things, such as faulty construction of the home or

4  installation of the window[.]" [*Deist* MSJ Order, 37:14-38:1.] Specifically, windows may be

5  damaged through improper handling and storage, such as being dropped, forced into improperly

6  sized openings or damaged by being hit with a hammer when nailing the flange during

7  installation. Windows may also be damaged by events after installation, such as structural

8  movement or settlement, soil movement and lack of maintenance. Additionally, construction

9  conditions unrelated to the windows themselves can cause or contribute to the appearance of

10  water and water stains near or adjacent to windows, such as defects in siding, wood trim and the

11  underlying paper.[8] [Decl. of Joel Wolf, ¶¶ 28-32; Decl. of Pete Cruz, ¶¶ 15-17.]

12       Class certification would effectively deny Viking the right and opportunity to thoroughly

13  investigate and present evidence related to the alternative causes of each alleged instance of

14  malfunction. Consequently, class certification is simply improper. For example, in *In re Stucco*

15  *Litigation* (E.D. N.C. 1997) 175 F.R.D. 210, 215, the court denied certification recognizing that

16  "individual issues will overshadow any common questions that exist" because comparative fault

17  must be decided individually for each class members' claim due to the fact that different builders

18  and contractors were involved for each home. [*See, also, In re Masonite Corporation Hardboard*

19  *Siding Products Liability Litigation* (E.D. La. 1997) 170 F.R.D. 417, 425 (recognizing that the

20  defendant "cannot receive a fair trial without a process which permits a thorough and discrete

21  presentation of these defenses," including those based on improper installation, varying levels of

---

22  [8] Even Plaintiffs' window expert, Jim Cassell, agrees that these issues are highly individualized.

23     Q. Well, I'm asking you is: If you were going to assess the performance of this window –
       A. It certainly wouldn't lay on the criteria of just a water test. A lot of things would come into play.

24     Q. Right. Because as you just testified, it can happen that one of these water tests can cause a window to
       leak that had previously never leaked in actual service, true?

25     A. That could possibly happen.
       Q. So what you need to do is you need to actually look at the condition first to see if there's evidence if
       water ever got to that location and was causing a problem, wouldn't you?

26     A. Just looking is not good enough. You would have to totally investigate the area.
       Q. Right.

27     A. Remove drywall, look at framing, look at things on the outside, look at how the window is put together.
       I mean, there's lot of things that go into this. It's not just one thing. [Decl. of Kevin P. Cody, Ex. "A",

28     126:15-127:9.]

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   maintenance, differences in location and climate, and variations regarding knowledge of and

2   reliance on warranties.).]

3   **4.      Class Members' Claims For Consequential Damages Preclude Any Possibility
          That Common Issues Of Law Or Fact Predominate.**

4

5   Plaintiffs seek to recover consequential damages which by their nature are highly

6   individualized.  Plaintiffs seek to recover consequential damages which, by their nature, are

7   highly individualized.  For example, such damage will require investigation and analysis of each

8   window's surrounding structure and components.  Such damage would also include claims

9   involving alleged damage to personal property such as rugs, furniture, and window treatments.

10  Such individualized claims will necessarily involve a potentially large majority of claims since

11  former owners would **only** have individualized consequential damages because they no longer

12  own the house and would have no interest or standing to seek repair or replacement of the

13  existing windows

    Plaintiffs' reliance on *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* (1987) 191

14  Cal.App.3d 1341, to support their argument that damage calculations do not present

15  individualized issues, is unavailing.  Initially, it must be recognized that this California decision

16  on a procedural issue is not binding on this Court's analysis of Plaintiffs' motion.  [*See, e.g.,*

17  *Sweet v. Pfizer* (E.D. Cal. 2005) 232 F.R.D. 360, 371 (rejecting plaintiff's counsel's reliance on

18  California decisions on procedural issues), *citing, Amchem Products, Inc. v. Windsor* (1997) 521

19  U.S. 591, 613.]  Moreover, in that case, the plaintiffs alleged the defendants engaged in price

20  fixing of glass containers in violation of California's antitrust statute, the Cartwright Act, and the

21  UCL.  [*Id.* at 1345.]  The relief sought in that action (e.g., restitution and damages based on

22  overpayment due to price fixing) was entirely distinct from the kind of individualized

23  consequential damages (e.g., damage of various degrees to individualized personal property) that

24  Plaintiffs seek in this action.

25  Each claim for each proposed class member must be determined on a claim-by-claim and

26  window-by-window basis to ascertain the nature and extent of such damage, including its cause,

27  the extent of mitigating efforts required by the circumstances and/or actually taken by each

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

1   claimant, and when such damage was, or should have been, discovered.  Obviously,

2   individualized proof and adjudications will be required in each instance.

3       **5.      Plaintiffs' Strict Liability and Negligence Causes of Action Are Not
                    Appropriate For Certification.**

4       Plaintiffs' strict liability and negligence claims are inappropriate for class certification.

5   As the court recognized in *Hicks v. Kaufman and Broad Home Corporation* (2001) 89

6   Cal.App.4[th] 908, 922-923,

7

8           It is well-settled strict liability and negligence do not provide a remedy for
            defects which have not caused property damage, i.e., defects causing only
            economic damage.  Accordingly, to recover under these theories of liability each
9           class member would have to come forward and prove specific damage to her
            home (e.g., uneven floors, insect infestation, misaligned doors and windows), and
10          that such damage was caused by cracks in the foundation, not some other agent.
            **[¶]  Given this need for individualized proof commonality of facts is lost and
11          the action splits into more pieces than the allegedly defective foundations.**

12  [(Emphasis added.)  (Footnote omitted, citing, *Fieldstone Co. v. Briggs Plumbing Products, Inc.*

13  (1997) 54 Cal.App.4[th] 357, 363-366; *Aas v. Superior Court* (2000) 24 Cal.4[th] 627, 632).]

14      Plaintiffs cannot avoid the *Hicks* court's rejection of strict liability and negligence claims

15  for class action treatment.  The *Hicks* court unequivocally rejected these claims because they

16  necessarily require individualized proof of damages to 'other property'.  [*Hicks, supra*, 89

17  Cal.App.4[th] at 922-923.]  Accordingly, each class member will be precluded from asserting such

18  claims without first proving through individualized evidence that damage has occurred to

19  property other than the Window Products, including establishing the nature and extent of such

20  damage.

21      As recognized by the *Hicks* Court, additional inquiries and adjudications in this action will

22  be required on a claim-by-claim and window-by-window basis as discussed in subsection no. 4,

23  above.  Accordingly, such issues requiring individualized proof by each class member preclude

24  certification of Plaintiffs' strict liability and negligence claims.

25      **6.      Plaintiffs' Fraud, UCL and CLRA Causes of Action Are Not Appropriate For
                    Certification.**

26      To the extent Plaintiffs seek to certify fraud, UCL and CLRA claims that are based on

27  misrepresentations by Viking (e.g., Plaintiffs' Memo. Pts. & Auths., 16:9-28), class members

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   must establish some form of reliance.  [*Stickrath v. Globalstar, Inc.* (N.D. Cal. 2007) 527

2   F.Supp.2d 992, 996 (finding that the plaintiffs' CLRA and UCL claims require them to establish

3   that they were aware of the alleged misrepresentations prior to purchase, that had they known of

4   the actual quality of the product they would have acted differently (reliance), or that such

5   representations were a substantial factor in their purchase decision.);  *see, also*, *In re Tobacco II*

6   *Cases* (2009) 46 Cal.4th 298, 328 ("we conclude that a plaintiff must plead and prove actual

7   reliance to satisfy the standing requirement of [California Business & Profession Code] section

8   17204. . . .").]

9       Plaintiffs appear to rely on the concept of "inferred reliance."  However, the facts of this

10   case do not support any application of that principle.  As recognized by plaintiffs' own authority,

11   *Weiner v. Dannon Co., Inc.* (C.D. Cal. 2009) 255 F.R.D. 658, 669, "[f]or a class action, an

12   inference of reliance arises as to the entire class **only** if the material misrepresentations were

13   made to **all** class members."  [Emphasis added.]  Plaintiffs' reliance on *Weiner* is misplaced.  The

14   *Weiner* court specifically emphasized that every class member bought the products and therefore

15   necessarily saw the packaging with the alleged misrepresentations.  [*Id.* at 669 (". . . the record

16   clearly establishes that [the defendant's] alleged misrepresentations . . . are prominently displayed

17   on all of the Product's packaging, a fact that [the defendant] has never contested.").]  On the

18   contrary, Plaintiffs have not submitted any substantial or credible evidence to establish that

19   misrepresentations were communicated to every potential consumer.  [*See, e.g., Osborne v.*

20   *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 660-661 (an inference of reliance arises **only**

21   if the representations "were in fact made to each of the class members," and "only if the

22   representation forms a part of the transaction." (citing, *Occidental Land, Inc. v. Superior Court*

23   (1976) 18 Cal.3d 355, 363.)]  Moreover, the California Supreme Court recently confirmed that an

24   inference of reliance is improper without evidence of "an extensive and long-term advertising

25   campaign."  [*In re Tobacco II Cases, supra,* 46 Cal.4th at 328.]  In fact, the Supreme Court

26   carefully noted that "the class, as certified, consists of members of the public **who were exposed**

27   **to defendants' allegedly deceptive advertisements and misrepresentations and who were**

28   **also consumers of defendants' products during a specific period of time.**"  [*Id.* at 324.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  (Emphasis added.)]  Plaintiffs offer no evidence in support of this requirement of an "extensive

2  and long-term" campaign of material misrepresentations because none exists.[9]

3    Viking sold all of its window products through retailers or dealers.  Viking's participation

4  in advertisement was essentially limited to providing financial assistance to its dealers and

5  retailers.  Although brochures and "tear sheets" were produced by Viking, these materials were

6  provided to retailers and dealers to use as they determined.  Viking did not otherwise direct or

7  coordinate the marketing or advertising efforts or activities of its dealers or retailers.  In fact, from

8  at least 1993 until the Series 3000 was no longer manufactured or sold in 1999, Viking's

9  advertising budget for the Series 3000 window products was virtually zero.  [Depo. John

10  Stickney, ¶¶ 4-10;  Decl. L. Chiagouris, ¶¶ 7-14.]  Moreover, as part of Viking's investigation,

11  homeowners were surveyed with respect to their knowledge of the existence of Viking's warranty.

12  76 percent were unaware that the Window Products had an express warranty.  [Decl. of Michael

13  Sullivan, ¶39.]  Accordingly, there simply is no consistent or extensive advertisement upon which

14  Plaintiffs can rely for inferred reliance.

15    Furthermore, the Cartwrights rely on alleged oral representations by an individual

16  employee of the particular dealer from whom they purchased the windows.  [Decl. L. Cartwright,

17  ¶ 5.]  There is no evidence that identical or even similar oral representations were made to every

18  purchaser by every dealer or retailer.  In fact, such oral representations are by their nature,

19  individualized and cannot form the basis for an inference of reliance as to the entire class.

20    To the extent Plaintiffs argue that Viking concealed material information, they must prove

21  that Viking had a duty to disclose such information in the first place or that the allegedly

22  concealed information was inconsistent with affirmative representations made to **every** class

23  member.  [*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal. App. 4th 824, 833-

24  839.]  Plaintiffs' reliance on *Grays Harbor Adventist Children's School v. Carrier Corp.* (W.D.

25  Wash. 2007) 242 F.R.D. 568 is misplaced.  That decision was based on claims asserted under

26  Washington's Consumer Protection Act (Wash. Rev. Code §19.86, et seq.) which, unlike

27

28  [9]  As recognized by the *Deist* Court, there was undisputed evidence that at least four of the *Deist* Plaintiffs were not aware of any warranty, and had not received or read any such document.  [*Deist* MSJ Order, 5:4-6, 8:2-3.]

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   California law, does not require either a duty to disclose or that the concealed information be

2   inconsistent with representations to every class member, as the *Daugherty* court recognized is

3   required under the CLRA.  Further, Plaintiffs' reliance on *Chamberlan v. Ford Motor Company*

4   (N.D. Cal. 2004) 223 F.R.D. 524, is equally unavailing.  The *Daugherty* court distinguished the

5   *Chamberlan* decision noting that it did not purport "to hold that a nondisclosure was actionable

6   under the CLRA in the absence of a related representation or disclosure obligation," and further

7   that it did not even address the issues.  In the words of the *Daugherty* court, "[c]ases are not

8   authority for issues they neither discuss nor decide."  [*Daugherty v. American Honda Motor Co.,*

9   *Inc., supra,* 144 Cal. App. 4th at 835, fn. 5.]

10      Consequently, each class member will be required to prove that he or she was aware of the

11   alleged misrepresentations, and that he or she relied on the misrepresentations and that they were

12   material in his or her purchase decision.[10]  This will be problematic given that one of the two

13   remaining segments of the proposed class that would remain if the Court decides only to exclude

14   class claims that overlap with *Deist* is non-original purchasers of homes with window products

15   already installed.  In their case, they must prove that the alleged misrepresentations by Viking

16   were a substantial factor in their decision to purchase their homes.[11]

17   **7.   Plaintiffs' Warranty Claims Require The Adjudication Of Individual Issues**
18   **Of Such Significance As To Preclude Any Finding Of Predominance Of**
     **Common Issues[12]**

19      The individualized issues presented by Plaintiffs' warranty claims, as confirmed by the

20   *Deist* Court's ruling on Viking's motions for summary judgment or adjudication, simply preclude

21   class certification.[13]

22   **a.   Manifestation of defect or injury.**

23      Individualized evidence is necessary for each claimant to assert a breach of warranty

---

[10]   Any such representations must have been made at the time of the sale.  [*Daugherty v. American Honda Motor Co., Inc., supra,* 144 Cal.App.4th at 837, fn.6.]

[11]   This will be particularly difficult for those who purchased after 1993, when Viking's advertising budget was non-existent, or after September 1999 when manufacturing (and advertising) ceased.

[12]   Although the *Deist* Court has granted class certification as to claims for breach of express warranty and the implied warranty of merchantability, Viking has filed a petition for writ of mandamus challenging the ruling.

[13]   In fact, the *Deist* Court's ruling on Viking's motions for summary judgment or summary adjudication demonstrates that there are significant individual issues concerning whether a class member has standing to allege such claims.

1   claim in this action.  Under California law, a plaintiff has no standing to assert a breach of

2   warranty claim without first establishing a manifestation of injury.  [*American Suzuki Motor*

3   *Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1298.]  As the *American Suzuki*

4   court held, "[b]ecause the vast majority of the [vehicles] sold to the putative class 'did what they were

5   supposed to do for as long as they were supposed to do it' (citation omitted), we conclude that

6   these vehicles remained fit for their ordinary purpose.  This being so, their owners are not entitled

7   to assert a breach of implied warranty action against [the manufacturer.]" [*Id.*]  Similarly, under

8   an express warranty, a defect must become manifest within the stated warranty period.

9   [*Daugherty v. American Honda Motor Company* (2006) 144 Cal.App.4th 824, 831-832.]  All data

10  demonstrates that there are a substantial number of potential class members whose windows

11  continue to function as expected and which have not manifested any injury.  Accordingly, it is

12  clear that individualized evidence will be required to determine manifestation of defect on a

13  window-by-window basis.

14       Reliance on *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal. App. 4th 908 for the

15  notion that Plaintiffs can maintain class warranty claims based on a showing that the windows are

16  "substantially certain to result in malfunction," is misplaced.  The *Hicks* decision deals with an

17  allegedly defective product that is incorporated into concrete foundations to limit the extent of

18  cracking of the foundations.  Recognizing that foundations have "indefinite" useful lives, the

19  *Hicks* court concluded that products with less than "indefinite" useful lives would require actual

20  manifestation of injury to sustain a breach of warranty claim, as required in *American Suzuki.*

21  Distinguishing *American Suzuki,* the *Hicks* court said,

22           "Cars and tires have a limited useful life.  At the end of their lives
              they, and whatever defect they may have contained, wind up on a
23           scrap heap.  If the defect has not manifested itself in that time span,
              the buyer has received what he bargained for.  A foundation's
24           useful life, however, is indefinite.  Some houses continue to provide
              shelter for centuries." [*Id.* at 923.]
25
       Even Plaintiffs' experts in this case agree that windows, unlike foundations, have limited

26  useful lives.  [Decl. James Cassell, [Decl. of Joel Wolf, ¶¶ 28-32; Decl. of Pete Cruz, ¶¶ 15-

27  17.]33; Decl. of Antoine Chamsi, [Decl. of Joel Wolf, ¶¶ 28-32; Decl. of Pete Cruz, ¶¶ 15-

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    17.]33.]  The *Hicks* "substantially certain to result in malfunction" standard is therefore not

2    applicable or appropriate for windows.  Moreover, as recognized in *Frieman v. San Rafael Rock*

3    *Quarry, Inc.* (2004) 116 Cal. App. 4th 29, the holding in *Hicks* applied because the "common

4    questions of liability" did not turn on the particular condition of the structure involved.  (*Id.* at

5    40.)  In the case of windows, water intrusion around windows could have resulted from "any

6    number of causes."  [Decl. of Joel Wolf, ¶¶ 28-32; Decl. of Pete Cruz, ¶¶ 15-17.]

7                    **b.**    **Notice.**

8             As recognized by the *Deist* Court, notice is a required element of both express and implied

9    warranty claims.  [Cal. Com. Code § 2607(3)(A).]  Moreover, notice cannot be provided on a

10   class wide basis after litigation is initiated.  Notice must be provided **before** the filing of a

11   lawsuit.  [*Arata v. Tonegato* (1957) 152 Cal.App.2d 837, 841, *citing*, *Vogel v. Thrifty Drug*

12   *Co.*(1954) 43 Cal.2d 184 ("The fact that the giving of notice must be pleaded obviously requires

13   that it be given before filing suit.").][14]

14            As discussed above, in its ruling on Viking's motions for summary judgment or summary

15   adjudication, the *Deist* Court left unresolved whether Plaintiffs and class members were required

16   to have given Viking notice as an element of either the implied or express warranty claim.  [*Deist*

17   MSJ Order, 24:18-27.]  Specifically, the *Deist* Court based its ruling on its finding that each

18   claimant's level of sophistication must be assessed, and further, that whether notice was

19   reasonable, assuming any notice was given, "must be determined from the particular

20   circumstances of each case."[15]  [*Deist* MSJ Order, 24:1-4, 24:21-23 (*citing, Fieldstone Company*

21   *v. Briggs Plumbing Products, Inc.* (1997) 54 Cal.App.4th 357, 370-371).]

22                    **c.**    **Privity.**

23            The *Deist* Court further recognized that privity is a fundamental element of any claim

24   based on implied or express warranty.  [*Burr v. Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695-

25   [14] Although Plaintiffs may argue that notice was given on behalf of the entire class pursuant to their pre-suit CLRA
26   notification requirement, an individualized claimant-by-claimant assessment would nevertheless be necessary to
     determine whether, based on each claimant's particular circumstances, such notice was timely and reasonable for the
     purpose of asserting a warranty claim.
27   [15] It is Viking's position that notice is absolutely required (by law and by the terms of the express warranty), and does
28   not concede that levels of sophistication determine the need for a claimant to give notice.  This issue is called to the
     Court's attention as yet another individualized issue that will require adjudication.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/5331241.1/BS                        - 26 -                    DEFENDANT VIKING INDUSTRIES, INC.'S
                                                                 OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
                                                                 CERTIFICATION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  696 ("The general rule is that privity of contract is required in an action for breach of either

2  express or implied warranty and that there is no privity between the original seller and a

3  subsequent purchaser who is in no way a party to the original sale."); *see also, All West*

4  *Electronics, Inc. v. M-B-W, Inc.* (1998) 64 Cal.App.4th 717, 725; *Osborne v. Subaru of America,*

5  *Inc.* (1988) 198 Cal.App.3d 646, 656.] The *Deist* Court found that privity (or a recognized

6  exception) may exist for original "new home buyers," and direct retail purchasers, but that there

7  was no basis for a finding that any other categories of potential class members could establish

8  standing to assert a warranty claim. [*Deist* MSJ Order, 32:3-33:26.]

9      Privity is a particularly problematic issue in this case. As noted above, one of the only

10  remaining groups after excluding the portions already certified in *Deist* are subsequent purchasers

11  of homes with window products already installed. Privity does not exist for any of these potential

12  members. Whether they can establish any of the exceptions to privity will require individual

13  adjudications for each such class member of the issues of reliance and/or third party beneficiary

14  status. The same individualized issues exist for every other remaining potential class member

15  (i.e., former owners) to the extent they are not original purchasers of homes with Viking window

16  products already installed or original retail purchasers of Viking window products.

17  **C.    THE CARTWRIGHTS' CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF
        THE CLASS AND THEY CANNOT ADEQUATELY PROTECT THE INTERESTS
18      OF THE PROPOSED CLASS.**

19      The Cartwrights meet neither the typicality nor adequacy requirements because they are

20  not members of the class they purport to represent. Rule 23(a)(3) and (4) require that named

21  Plaintiffs prove that their claims are typical of the proposed class and that they will fairly and

22  adequately protect the interests of the class. "Typicality focuses on the similarity between the

23  named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom

24  they purport to represent." [*Lightbourn v. County of El Paso* (5th Cir. 1997) 118 F.3d 421, 426.]

25  Adequacy assures that the proposed representatives will "vigorously prosecute the interests of the

26  class, as well as assure that class members' due process rights are protected." [*Berger v. Compaq*

27  *Computer Corp.* (5th Cir. 2001) 257 F.3d 475, 482-483; *Richards v. Jefferson County* (1996) 517

28  U.S. 793-801.] It is fundamental that **a class representative must be a member of the class he**

1  **or she represents to meet these requirements.**  [*General Telephone Company of the Southwest*

2  *v. Falcon* (1982) 457 U.S. 147, 156;  *National Super Spuds, Inc. v. New York Mercantile*

3  *Exchange* (2nd Cir. 1981) 660 F.2d 9, 17;  *In re Global Crossings Ltd. Securities Litigation* (S.D.

4  N.Y. 2003) 313 F.Supp.2d 189, 207.]

5          The Cartwrights purchased their windows through a retailer, and had them installed in

6  their home.  Consequently, they would fall within the "Retail Purchaser Subclass" certified in

7  *Deist* except that they are specifically excluded based on this pending litigation.  They are not

8  members of the only remaining segments of the proposed class after excluding the portions

9  overlapping with the *Deist* class.

10          The Cartwrights' claims and interests differ substantially from those of the proposed class.

11  As original retail purchasers, the Cartwrights' claims are substantially different from the

12  remaining segments' claims, subject to substantially different proof, and entitled to substantially

13  different remedies.  The Cartwrights claim that they were personally aware of an express

14  warranty and relied on it in their purchase decision.  [Decl. L. Cartwright, ¶ 3.]  However, it

15  appears that many of the potential class members were unaware of any warranty terms.  [Decl. of

16  Michael Sullivan, ¶39 (76% of those interviewed were not aware of warranty).]  Additionally, as

17  discussed above, former owners and subsequent purchasers must first establish the timing of the

18  manifestation of damage in order to establish standing to assert either a strict liability or

19  negligence claim.  Subsequent purchasers likely cannot assert either an implied or express

20  warranty claim for lack of privity.  Subsequent purchasers and former owners cannot assert an

21  express warranty claim (lack of privity and no applicable exception to the privity requirement),

22  and consequently, are unlikely to have standing to assert a UCL, CLRA or fraud claim.  Former

23  owners are not interested in repair and replacement remedies.  Subsequent purchasers are not

24  likely to be able to prove reliance to assert a UCL, CLRA or fraud claim.

25          Thus, both the Cartwrights are not "typical" of the proposed class and cannot adequately

26  represent it.  Consequently, certification should be denied.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5331241.1/BS

DEFENDANT VIKING INDUSTRIES, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION

**D.** **A CLASS ACTION IS NOT SUPERIOR TO INDIVIDUAL LAWSUITS FOR RESOLVING THESE CLAIMS.**

In addition to establishing that common issues predominate, it is Plaintiffs' burden to establish that class action treatment is superior to resolution through individual lawsuits. [F.R.C.P. 23(b)(3); *Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 615.] Factors enumerated in Rule 23(b)(3) as relevant to the determination of superiority include "the extent and nature of any litigation concerning the controversy already begun by or against class members," as well as the difficulties likely to be encountered in managing the class action.

**1.** **Pending Litigation.**

As discussed in Section IV.A above, the procedural status of the *Deist* action precludes a finding of superiority. *Deist* was initiated almost two and one-half years before this action. The parties in that action have engaged in extensive discovery and investigation. The *Deist* Court has now certified two subclasses, and notice should be accomplished in advance of the hearing on Plaintiffs' motion in this action.

Also as discussed above, the *Deist* class eliminates a significant portion of the class proposed in this action, leaving only former owners and subsequent purchasers of homes with Window Products already installed at the time of acquisition. Whether these remaining segments of the proposed class have viable claims is questionable, and to establish that they do requires individualized proof and separate adjudications on a member-by-member basis.

Moreover, as noted above, Viking's express warranty applies only to original owners, for as long as they own the windows, and is not assignable. Consequently, neither **former** owners nor **subsequent** non-original purchasers can assert an express warranty claim. Further, Plaintiffs base their UCL, CLRA and fraud claims on the alleged representations made in Viking's lifetime warranty. [*See, e.g.,* Memorandum of Points and Authorities, 5:10-6:18; Decl. W. Keegan.] Since neither segment of the proposed class remaining after excluding the "overlap" with *Deist* has standing to assert an express warranty claim, they similarly do not have standing to assert UCL, CLRA or fraud claims.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

## 2.      Lack of manageability.

"[A] greater number of individual issues results in greater difficulty in managing the class action and in lower judicial efficiency. (Citation omitted.)  Thus, a class action is improper where an individual class member would be compelled to try numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." [*O'Connor v. Boeing North American, Inc.* (C.D. Cal. 2000) 197 F.R.D. 404, 414-415.  (Internal quotes omitted.)]

As demonstrated above, the number and significance of individual issues presented in this action are substantial, and preclude any finding that common issues predominate.  Moreover, they are so substantial as to render any possible class action unmanageable.  Plaintiffs and class members will be required to present evidence on individualized issues such as Viking's statutes of limitations defenses, privity, causation, reliance, and damages.  Plaintiffs' counsel ignores these individualized issues and has not even attempted to present a trial plan for the Court's consideration.

Plaintiffs' have the burden of demonstrating a trial plan sufficient to establish that the proposed class action is manageable and will protect the rights of the parties, particularly Viking. [*See, e.g., Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1180, 1189;  *Castano v. American Tobacco Co.* (5th Cir. 1996) 84 F.3d 734, 742 ("a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome.");  *Windham v. American Brands, Inc.* (4th Cir. 1977) 565 F.2d 59, 70.]  Plaintiffs did not bother to support their conclusory references to managing individualized issues or calculating damages.  Moreover, it would be improper for them to do so in their reply brief.  [*Sweet v. Pfizer* (E.D. Cal. 2005) 232 F.R.D. 360, 369, 370-371.]

Plaintiffs' counsel's conclusory reference to determining damages by "formula or guidelines" is specious.  The damage claims alleged cannot be resolved in that fashion. Consequential damages already will include damage to surrounding structure and components. The only possible means of determining such damage amounts would be through the presentation of individualized proof of the nature and extent of the claimed damage and extensive proof of

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

- 30 -

1    cost of repair.  Moreover, consequential damages would also include injury to personal property.

2    There is nothing formulaic about such issues.  In fact a potentially large segment of the proposed

3    class, former owners, would have **only** individualized consequential damages, because they no

4    longer own the house which contained the Window Products.  Each claim must be determined on

5    a case-by-case basis.

6    V.

7    **CONCLUSION**

8    Plaintiffs have not met their burden of establishing the essential elements for class

9    certification.  Consequently, Plaintiffs' notice should be denied.

10    Dated:  June 25, 2009          Respectfully Submitted,

11                           ROPERS, MAJESKI, KOHN & BENTLEY

13                           By:

14                           J. MARK THACKER

                            Attorneys for Defendant

15                           VIKING INDUSTRIES, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RC1/5331241.1/BS