UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LYNDA CARTWRIGHT and LLOYD
CARTWRIGHT on behalf of
themselves and all others
similarly situated,

          CASE NO. 2:07-CV-02159-FCD-EFB

       Plaintiffs,

   v.                <u>MEMORANDUM AND ORDER</u>

VIKING INDUSTRIES, INC., an
Oregon Corporation, and Does 1
through 100, inclusive,

       Defendants.

----oo0oo----

    This matter comes before the court on plaintiffs Lynda and
Lloyd Cartwright's (collectively "plaintiffs") motion for class
certification pursuant to Federal Rule of Civil Procedure 23.
Defendant Viking Industries, Inc.'s ("Viking") opposes the
motion.  The court heard oral argument on the motion on September
4, 2009.  For the reasons set forth below, plaintiffs' motion for
class certification is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiffs are the owners of a residence in which defendant Viking's Series 3000 window products (the "windows" or "window products") are installed. (Plaintiffs' Complaint, filed Aug. 16, 2007 ("Compl."), ¶ 6).  Specifically, plaintiffs purchased the windows from a distributor in March of 1991 while in the process of constructing their home.  (Id. ¶ 27.)  Plaintiffs brought this class action on behalf of themselves and persons in California who own or owned homes in which Viking Window Products have been installed.  (Id. ¶ 1).  Plaintiffs' claims are based on the defective nature of the Window Products and the damages caused by the defective Window Products.  (Id. ¶ 13).  The alleged defects in the windows include the failure to resist water and air intrusion, which created water damage in the home.  (Id. ¶¶ 13, 19).

Plaintiffs further allege Viking made fraudulent omissions and misrepresentations concerning the Window Products.  (Id. ¶ 15).  Plaintiffs assert that defendant knew that the windows were

---

[1]    Defendant objects to the declarations of plaintiffs' experts submitted in support of the motion for class certification.  "On a motion for class certification, the court may consider evidence that may not be admissible at trial." Mazza v. Am. Honda Motor Co., 254 F.R.D. 610, 616 (C.D. Cal. 2008) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974)).  At this stage in the litigation, "robust gatekeeping of expert evidence is not required; rather, the court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.'"  Ellis v. Costco Wholesale Corp., 240 F.R.D. 627, 635 (N.D. Cal. 2007) (quoting Dukes v. Wal-Mart, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004)). Accordingly, the court does not address the ultimate admissibility of plaintiffs' proffered evidence and considers it where it determines the evidence is sufficiently relevant and reliable and helpful to the resolution of plaintiffs' motion. See Mazza, 254 F.R.D. at 616; Ellis, 240 F.R.D. at 635-36.

defective, would fail prematurely, and were unsuitable for their advertised use, but concealed these material facts from consumers like plaintiffs. (Compl. ¶¶ 16-17.) Plaintiffs also assert Viking represented that the Window Products came with a "Lifetime Warranty," would be "free from defects in material and workmanship," and would perform in conformance with standards promulgated by the American Architectural Manufacturers Association ("AAMA"). (Id.) Plaintiffs claim these representations were false because the Window Products were defective, failed prematurely, and would not satisfy AAMA standards. (Id. ¶ 18).

By June of 1997, plaintiffs became aware of excess moisture near some windows and sills and contacted Viking concerning the moisture problems with the Window Products. (Id. ¶ 30). A Viking representative visited plaintiffs' residence in June 1997 and advised plaintiffs that the excess moisture was caused by problems with the heating and air conditioning unit. (Id.) Plaintiffs believed the Viking representative and allege they had no reason to suspect the Window Products were defective until they were advised of the pendency of the class action lawsuit, Deist, et al. v. Viking Industries, Case No. CV025771 (the "Deist action"), filed in the San Joaquin County Superior Court. (Id. ¶ 31). Plaintiffs claim the filing of the Diest action on February 17, 2005 tolled the running of the statute of limitations for claims related to the Window Products. (Id. ¶ 32).

On August 16, 2007, plaintiffs filed this civil class action against defendant, alleging eight causes of action: Strict Products Liability, Negligence, Breach of Express Warranty,

Breach of Implied Warranty, Violation of the Consumer Legal Remedies Act ("CLRA"), Violation of California's Unfair Competition Law ("UCL"), Fraudulent Concealment, and Restitution. (Id. ¶¶ 40-102; Notice of Removal, filed Sept. 21, 2007). Defendant removed the case to this court on September 21, 2007, and filed a motion to dismiss, which was denied on February 12, 2008.

Meanwhile, the Deist action continued to be litigated in state court.  The parties in the Deist action have completed 22 depositions, 20 sets of interrogatories, 21 sets of requests for production of documents, 18 subpoenas for records pertaining to the Deist plaintiffs' homes, inspections of all the Deist plaintiffs' homes by Viking's experts, productions of thousands of pages of documents in response to subpoenas, and further investigation, surveys, testing, and statistical surveys.  (Decl. of Mark J. Thacker ("Thacker Decl."), filed June 25, 2009, ¶ 3.) On July 14, 2008, the San Joaquin Superior Court issued an order on defendant's motion for summary adjudication, granting in part and denying in part.  Some of the Deist plaintiffs' claims for strict liability, breach of warranties, and negligence were barred based upon the expiration of the statute of limitation or lack of privity.  On April 9, 2009, the San Joaquin Superior Court certified the following two subclasses for Express and Implied Warranty causes of action:

   1)   **The Retail Purchaser Sub-Class.** All California
        property owners that purchased the Viking Series 3100
        horizontal sliding, 3300 single hung or 3600 fixed
        windows that were manufactured between January 1989 and
        December 31, 1999, which were installed in their
        California homes and buildings who have not already
        released their claims about these windows or who are

4

1    not presently a Plaintiff in a lawsuit, other than
     Deist v. Viking, that alleges the Window Products are
2    defective.  This subclass down not include owners of
     California buildings who acquired their Viking Series
3    3000 windows by purchasing a building.

4    2)   **The Original Home Purchaser Subclass.**  All California
          property owners whose buildings have one or more of the
5         Viking's aluminum window Series 3000 et seq. windows in
          them who are 1st occupant resident owners of buildings
6         located in California that had Viking Series 3100
          horizontal sliding, 3300 single hung or 3600 fixed
7         windows installed in them when they purchased their
          home and which windows were manufactured between
8         January 1989 and December 31, 1999, who have not
          already released their claims about these windows or
9         who are not presently a Plaintiff in a lawsuit, other
          than Deist v. Viking, that alleges the Window Products
10        are defective.

11   (Ex. A to Pls.' Request for Judicial Notice, filed May 22, 2009.)

12   By order dated May 18, 2009, the San Joaquin Superior Court

13   ordered that parties in the <u>Deist</u> action inform potential class

14   members about the pendency of this action and plaintiffs' motion

15   for class certification; the court directed notification that

16   "[i]f the Cartwright claim is certified as a class action, you

17   will have the option to opt-out of the Deist case and participate

18   in the Cartwright case."  (Ex. B to Request for Judicial Notice.)

19        On May 22, 2009, plaintiffs filed a motion to certify the

20   following classes:

21        All current and past owners of residential property in
          California in which Viking Series 3000 windows
22        manufactured by Viking Industries Inc. between
          approximately March 1, 1991 and 1999 (the "Class
23        Period") are or have been installed.  The proposed
          class includes property owners who have replaced their
24        Viking windows.  Excluded from the Plaintiff Class are
          the Defendant, any entity in which Defendant has a
25        controlling interest, and their legal
          representatives, heirs and successors, and any judge to
26        whom this case is assigned, and any member of the
          judge's immediate family.  Claims for personal injury
27        are excluded from the claims of the Plaintiff Class
          which are alleged herein.

28

                                    5

**Warranty Subclass**

All original owners of residential property in
California who are the first occupant resident owner in
which Viking Series 3000 windows manufactured by Viking
Industries Inc. between approximately March 1, 1991 and
1999 (the "Class Period") are or have been installed.
The proposed class includes property owners who have
replaced their Viking windows.  Excluded from the class
are named Plaintiffs in pending lawsuits against Viking
Industries, Inc. relating to Series 3000 windows other
than in Cartwright v. Viking; also excluded is the
Defendant, any entity in which the Defendant has a
controlling interest, and their legal representatives,
heirs and successors, and any judge to whom this case
is assigned, and any member of the judge's immediate
family.  Claims for personal injury are excluded from
the claims of the Plaintiff Class which are alleged
herein.

At oral argument, plaintiffs clarified that they sought

certification of the warranty subclass only as to plaintiffs'

express warranty claims.  However, plaintiffs also asserted that,

to the extent the court disagreed with their arguments regarding

privity, the warranty subclass could be applied to the claims for

both breach of express warranty and breach of implied warranties.

**STANDARD**

District courts have broad discretion in ruling on motions

for class certification because "the district court is in the

best position to consider the most fair and efficient procedure

for conducting any given litigation." <u>Doninger v. Pacific</u>

<u>Northwest Bell, Inc.</u>, 564 F.2d 1304, 1309 (9th Cir. 1977).

However, before certifying a class, the court must "conduct a

'rigorous analysis' to determine whether the party seeking

certification has met the prerequisites of Rule 23" of the

Federal Rules of Civil Procedure.  <u>Zinser v. Accufix Research</u>

<u>Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing

<u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1233 (9th Cir.

1996)). "The 'rigorous analysis requirement' means that a class

is not maintainable merely because the complaint parrots the

legal requirements of Rule 23." <u>Communities for Equity</u>, 192

F.R.D. 568, 570 (citing <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069,

1079 (6th Cir. 1996)).

Under Rule 23(a), there are four threshold requirements

applicable to all class actions: (1) the class is so numerous

that joinder of all members is impracticable; (2) there are

questions of fact common to the class; (3) the claims and

defenses of the representative party are typical of the claims

and defenses of the class; and (4) the representative party will

fairly and adequately represent the interests of the class.  Fed.

R. Civ. P. 23(a).

An action may be maintained as a class action where the

above prerequisites are met and one of the conditions enumerated

in Rule 23(b) is satisfied.  As set forth below, plaintiffs move

for certification under Rule 23(b)(2).  Certification under Rule

23(b)(2) is proper where "the party opposing the class has acted

or refused to act on grounds generally applicable to the class,

thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a

whole." Fed. R. Civ. P. 23(b)(2).

The burden is on the party seeking to maintain the action as

a class action to establish a prima facie showing of each of the

23(a) prerequisites and the appropriate 23(b) ground for a class

action.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019, 1022 (9th

Cir. 1998); <u>Mantolete v. Bolger</u>, 767 F.2d 1416, 1424 (9th Cir.

1985).  "[I]n adjudicating a motion for class certification, the

1  court accepts the allegations in the complaint as true so long as
2  those allegations are sufficiently specific to perform an
3  informed assessment as to whether the requirements of Rule 23
4  have been satisfied." Ellis, 240 F.R.D. at 635 (citing Blackie
5  v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Generally,
6  the merits of the class members' substantive claims is
7  irrelevant, unless they overlap with certification issues.  Id.
8  (citing Eisen, 417 U.S. at 177-78).  The operative determination
9  is whether class claims "may be proven by evidence common to all
10  class members," not whether the evidence will ultimately be
11  persuasive.  In re Live Concert Antitrust Litigation, 247 F.R.D.
12  98, 144 (C.D. Cal. 2007).

**ANALYSIS**

13  **A.   Rule 23(a)**

14  **1.   Numerosity**

15  The initial inquiry under Rule 23(a) is whether the class is
16  sufficiently numerous that joinder of all members individually is
17  "impracticable."  Fed. R. Civ. P. 23(a)(1); see Communities for
18  Equity, 192 F.R.D. at 571 ("Numbers alone are not dispositive
19  when the numbers are small, but will dictate impracticability
20  when the numbers are large.").  "The requirement does not demand
21  that joinder would be impossible, but rather that joinder would
22  be extremely difficult or inconvenient."  5 Moore's Federal
23  Practice § 23.22[1] (3d Ed. 2003).
24
25  The numerosity requirement imposes no absolute numerical
26  limitation, but, rather, requires that the specific facts of each
27  case be examined.  General Tel. Co. v. E.E.O.C., 446 U.S. 318,
28  330 (1980).  "Practicability of joinder depends on many factors,

including, for example, the size of the class, ease of
identifying its numbers and determining their addresses, facility
of making service on them if joined and their geographic
dispersion." Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878
(11th Cir. 1986) (upholding class certification where plaintiff
identified thirty one individual class members and the class
included future and deterred job applicants who were necessarily
unidentifiable).  Where the class is comprised of more than forty
individuals, numerosity is generally satisfied. Cox v. Am. Cast
Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986); see also
Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (holding
that class consisting of 50 individuals met numerosity
requirement).  If class members are unknown or unidentifiable,
then joinder of all class members is likely impracticable. See
Jordan v. Los Angeles County, 669 F.2d 1311, 1319-20 (9th Cir.
1982), vacated on other grounds, 459 U.S. 810 (1982) (holding
that the numerosity requirement was met because "[t]he joinder of
unknown individuals is inherently impracticable"); see also 5
Moore's Federal Practice § 23.22[3] (3d Ed. Supp. 2008) ("It is
well established . . . that the party seeking class certification
need not be able to prove the exact number of members of the
proposed class or to identify each class member.").

In support of their motion for class certification,
plaintiffs present evidence that Viking sold approximately one
million windows during the proposed class period.  Given expert
testimony that an average residence has approximately 20 windows,
it is likely that Viking windows were installed in approximately
50,000 residential units during the proposed class period.

1 Joinder of all these parties would be impracticable.

2 Accordingly, the numerosity requirement is fulfilled.[2]

3     **2.  Commonality**

4     The next inquiry under Rule 23(a) is whether there exist

5 "questions of law or fact common to the class."  Fed. R. Civ. P.

6 23(a)(2).  "The fact that there is some factual variation among

7 the class grievances will not defeat a class action . . . .  A

8 common nucleus of operative fact is usually enough to satisfy the

9 commonality requirement of Rule 23(a)(2)."  <u>Rosario v. Livaditis</u>,

10 963 F.2d 1013, 1017-18 (7th Cir. 1992).  "All questions of fact

11 and law need not be common to satisfy the rule.  The existence of

12 shared legal issues with divergent factual predicates is

13 sufficient, as is a common core of salient facts coupled with

14 disparate legal remedies within the class."  <u>Hanlon Corp.</u>, 150

15 F.3d at 1019.  "[A] proposed class can consist of members with

16 widely differing experiences as they relate to a common case but

17 seek a common remedy for a common policy."  <u>See</u> <u>Parra v. Bashas',</u>

18 <u>Inc.</u>, 536 F.3d 975, 978 (9th Cir. 2008); <u>Communities for Equity</u>,

19 192 F.R.D. at 572.  The commonality preconditions of Rule

20 23(a)(2) have been described as "minimal," and "are less rigorous

21 than the companion requirements of Rule 23(b)(3)."  <u>Hanlon v.</u>

22 <u>Chrysler Corp.</u>, 150 F.3d at 1019; <u>Grays Harbor Adventist</u>

23 <u>Christian Sch. v. Carrier Corp.</u>, 242 F.R.D. 568, 572 (W.D. Wash.

24 2007).

25     In this case, plaintiffs set forth the following questions

26 of law and fact, common to all prospective class members: (1)

27  

28        [2]  Defendant does not argue that the proposed class fails to meet the numerosity requirement.

whether the Series 3000 Windows are defective because they allow moisture to penetrate into the interior of the home, fail prematurely, and are unsuitable for use as a window product; (2) whether Viking knew of should have known that the Series 3000 Windows were defective; (3) whether Viking created and breached express warranties; (4) whether Viking breached the implied warranty of merchantability; (5) whether Viking violated the provisions of the CLRA; (6) whether Viking owed a duty of reasonable and ordinary care and whether it breached that duty. See Mazza, 254 F.R.D. at 618 (holding that commonality was established in a class action alleging claims for violations of California's Business and Professions code, unjust enrichment, and for violations of the CLRA).  Accordingly, the commonality requirement is satisfied.[3]

### 3. Typicality

Next, Rule 23(a) requires that the "claims or defenses of the class representative must be typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of

---

[3]     Defendant also does not argue that the proposed class fails to meet the commonality requirement.

1   the class." Id.  While this requirement seemingly merges with

2   the commonality requirement, the inquiry under typicality focuses

3   on potential conflict[4] between the interests of the class

4   representatives and the interests of the absent class members

5   that would preclude certification.  See Falcon, 457 U.S. at 157

6   n.3 (noting that typicality tends to merge with both commonality

7   and adequacy of representation because it serves as a guidepost

8   for determining "whether maintenance of a class action is

9   economical and whether the named plaintiff's claim and the class

10  claims are so interrelated that the interests of the class

11  members will be fairly and adequately represented in their

12  absence").

13      The typicality requirement is "satisfied when each class

14  member's claim arises from the same course of events, and each

15  class member makes similar legal arguments to prove the

16  defendant's liability." Mazza, 254 F.R.D. at 618 (quoting

17  Marisol v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)).  "Under

18  the rule's permissive standards, representative claims are

19  'typical' if they are reasonably coextensive with those of absent

20  class members." Hanlon, 150 F.3d at 1020.  "Courts look to

21  whether class members have similar injuries, 'whether the action

22  is based on conduct which is not unique to the named plaintiffs,'

23  and whether other class members were injured by the same

24  conduct." Mazza, 254 F.R.D. at 618 (quoting Hanon, 976 F.2d at

25  _____

26      [4]    The inquiry into potential conflict also implicates the
    requirement under Rule 23(a)(4) and under constitutional due
    process standards that "absent class members must be afforded
27  adequate representation before entry of a judgment which binds
    them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311
28  U.S. 32, 42-43 (1940)).

508 (holding that class certification was inappropriate where the putative class representative was subject to a unique defense arising out of his specialized knowledge and that defense threatened to become the focus of the litigation)); see also Andrews Farms v. Calcot, Ltd., No. CV 07-0464, 2009 WL 1211374, *7 (May 1, 2009) ("Typicality is determined by the violation alleged to have occurred.").

Plaintiffs' claims are based upon defendant's alleged defective design and manufacture of window products. Specifically, plaintiffs assert that defendant's fraudulently and deceptively failed to disclose material facts about the nature of the defects so that consumers would purchase its product. Plaintiffs also assert that, in some cases, defendant made affirmative misrepresentations about its windows.  In all instances, however, the injury suffered was the purchase of allegedly defective windows that failed to protect against water intrusion and damage.  As such, because the purported class member's claims all arise from the same or similar course of conduct and resulted in the same or similar injury,[5] the typicality requirement is satisfied.[6]

**4.    Adequacy of Representation**

The final prerequisite under Rule 23(a) is that the person representing the class must be able "fairly and adequately to protect the interests" of all members in the class.  Fed. R. Civ.

---

[5]    Indeed, plaintiffs have represented that the proposed class will not seek consequential damages other than repair and replacement of windows.  (Pls.' Reply at 28.)

[6]    The court addresses defendant's arguments with respect to standing, notice, and privity, *infra*.

13

P. 23(a)(4).  This element requires: "(1) that the proposed
representative [p]laintiffs do not have conflicts of interest
with the proposed class, and (2) that [p]laintiffs are
represented by qualified and competent counsel."  <u>Dukes v. Wal-
Mart, Inc.</u>, 509 F.3d 1168, 1185 (9th Cir. 2007).

Defendant's objections to the adequacy of representation are
based primarily upon the same alleged conflicts discussed under
the typicality requirement.  As set forth above, the court finds
that plaintiffs' claims are typical of the class.[7]  Defendant
raises no specific argument with respect to class counsel.
However, plaintiffs' counsel has submitted declarations outlining
their experience litigating class action lawsuits, administering
class action settlement funds, and overseeing multi-year claim
programs.  Accordingly, representation is adequate.

**B.    Rule 23(b)(3)**

"To qualify for certification under Rule 23(b)(3), a class
must meet two requirements beyond the Rule 23(a) prerequisites."
<u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 615 (1997).  First,
the party seeking certification must demonstrate "that the
questions of law or fact common to class members predominate over
any questions affecting only individual members."  Fed. R. Civ.
Proc. 23(b)(3).  Second, the party must demonstrate "that a class
action is superior to other available methods for fairly and
efficiently adjudicating the controversy."  <u>Id.</u>

/////

/////

_____

[7]    The court addresses adequacy of representation with the
warranty sub-class, *infra*.

1        **1.   Predominance**

2        The predominance inquiry under Rule 23(b)(3) "tests whether

3    proposed classes are sufficiently cohesive to warrant

4    adjudication by representation." Amchem, 521 U.S. at 616; Grays

5    Harbor, 242 F.R.D. at 573.  Neither Rule 23 nor courts

6    interpreting it have set forth "any ready quantitative or

7    qualitative test for determining whether the common questions

8    satisfy the rule's test." Mazza, 254 F.R.D. at 619 (citations

9    and quotations omitted).  However, the commonality requirements

10   under this analysis are more rigorous than those required under

11   Rule 23(a).  Hanlon, 150 F.3d at 1022.

12       Class treatment "does not in any way alter the substantive

13   proof required to prove up a claim for relief." Alabama v. Blue

14   Bird Body Co., Inc., 573 F.2d 309, 327 (5th Cir. 1978) (holding

15   that predominance was not met where the impact of alleged anti-

16   trust conduct by the defendant was an issue that must be proved

17   with certainty and was unique to each particular plaintiff).

18   Specifically, in products liability cases, fact issues that vary

19   among individual plaintiffs can overwhelm the common question of

20   the manufacturer's conduct.  In re Masonite Corp. Hardboard

21   Siding Prods. Liability Litigation, 170 F.R.D. 417, 424 (E.D. La.

22   1997); see Castano v. Am. Tobacco Co., 84 F.3d 734, 743 n.15

23   (noting that factual difference among the class members impacts

24   the application of legal rules such as causation, reliance,

25   comparative fault, and other affirmative defenses).

26       However, the Ninth Circuit has explicitly held that the need

27   for individual "damage calculations alone cannot defeat

28   certification." Yokoyama v. Midland Nat'l Life Ins. Co., No. 07-

15

16825, – F.3d –, 2009 WL 2634770, *6 (9th Cir. Aug. 28, 2009); see Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Furthermore, The Ninth Circuit has specifically upheld class certification where statute of limitations issues would have to be separated out for individual adjudication at the close of the class trial. Arthur Young & Co. v. U.S. Dist. Court, 549 F.2d 686, 696 (9th Cir. 1977); see also Grays' Harbor, 242 F.R.D. at 573 ("Class certification, under Rule 23(b)(3), is also not precluded by the need to address individual statute of limitations defenses.").[8]

### a. Strict Products Liability and Negligence

With respect to their claims for strict products liability and negligence, plaintiffs' asserted injury arises from the allegedly defective windows allowing "water to penetrate into wall systems, other building system, and the interior of the of the structure" and the consequent cost to the purported class of repairing and replacing the windows. (Compl. ¶¶ 44-45, 52.) Defendant argues that common issues do not predominate with respect to these claims because individualized determinations of causation and damages are required. Plaintiffs assert that common issue predominate because they do not seek damages beyond repair and replacement of the windows.

---

[8] Defendants argue that common issues do not predominate as to all of plaintiffs' purported class claims because there are substantial statute of limitations defenses individual to each class member. Plaintiffs do not dispute that there may be individual issues among the class regarding the statute of limitation; rather, plaintiffs contend that such individualized issues do not necessarily foreclose class certification.

"[U]nder either a negligence or strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury." Merill v. Navegar, Inc., 26 Cal. 4th 465, 479 (2001).

Defendant presents evidence that damages and stains adjacent to windows can be the result of other causes, such as installation errors or condensation. (Decl. of Joel Wolf ("Wolf Decl."), filed June 25, 2009, ¶¶ 28-32; Decl. of Pete Cruz ("Cruz Decl."), filed June 25, 2009, ¶¶ 15-16.) Moreover, defendant also presents evidence that windows can be damaged after they are shipped by defendant due to rough handling, security alarm penetrations, and structural and soil movements; these post-shipment damages can result in impaired performance with respect to preventing water intrusion. (Cruz Decl. ¶ 17.) Defendant proffers evidence that indications of these post-shipping conditions were present on windows examined in the Deist action. Furthermore, plaintiff's expert, Jim Cassell, agreed that a variety of factors contributes to the performance assessment of a window, and that he would "have to totally investigate the area," including removing drywall, looking at framing, examining the exterior, and looking at how the window is put together. (Dep. of Jim Cassell ("Cassell Dep."), Ex. A to Decl. of Kevin P. Cody ("Cody Decl."), filed June 25, 2009, at 126-27.)

While plaintiffs may be able to present common proof relating to the design and manufacture of defendant's windows, the individualized determinations of causation with respect to the alleged class-wide injuries overwhelm these commonalities. Defendant is entitled to present its defenses, that damages to

17

the windows may have been caused by unrelated circumstances or by actions post-shipping, though a process which permits a thorough and discrete examination.   See In re Masonite Corp., 170 F.R.D. at 425 (holding that common issues did not predominate where defendant was entitled to present defenses that the property damage was the result of poor home design, construction, maintenance, improper installation, and location, as opposed to defendant's design or manufacturing); Hicks v. Kaufmann & Broad Home Corp., 89 Cal. App. 4th 908, 922-23 (2d Dist. 2001) (holding that common issues did not predominate as to the plaintiffs' strict liability and negligence causes of action regarding property damage because "each class member would have to come forward to prove specific damage to her home . . . and that such damage was caused by cracks in the foundation, not some other agent").   While plaintiffs' limitation on requested damages addresses commonality issues with respect to individualized consequential damages for each class member, plaintiffs fail to address how the vast array of individualized causation issues could be properly adjudicated through class treatment.   See Gartin v. S&M Nutec LLC, 245 F.R.D. 429, 439 (C.D. Cal. 2007) (holding that class certification was inappropriate on the plaintiff's negligence claims because individualized analyses of proximate cause issues predominated); In re Paxil Litig., 212 F.R.D. 539, 551 (C.D. Cal. 2003) (same).

Accordingly, the individual issues relating to causation militate against a finding that common questions predominate with respect to plaintiffs' strict liability and negligence claims. Therefore, class certification on these claims is inappropriate.

18

### b.   Breach of Warranty Claims

With respect to their claims for breach of express and implied warranty, plaintiffs allege that defendant's windows do not perform as warranted.  (Compl. ¶¶ 57, 64.)  Defendant argues that common issues do not predominate with respect to these claims because there are individual determinations with respect to privity and manifestation of damage.[9]

/////

---

[9]     Defendant also asserts that individualized determinations must be made within the class regarding standing. In the context of a class action lawsuit, standing is generally "assessed solely with respect to class representatives, not unnamed members of the class." In re. Gen. Motors Corp. Dex-Cool Prods. Liab. Litig., 241 F.R.D. 305, 310 (S.D. Ill. 2007).  "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense."  1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:5 (4th ed. 2002 & Supp. 2006) (collecting cases); see 1 Conte & Newberg, Newberg on Class Actions § 2:7 (unnamed class members "need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.").  Accordingly, there is no need for individualized factual determinations among the class regarding standing.

Similarly, defendant contends that individualized determinations will need to be made with respect to notice. First, it is unclear under the circumstances of this case whether notice is required.  See In re HP Inkjet Printer Litig., No. C 05-3580, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006) ("[T]imely notice of a breach under California law is no longer required where the action is against a manufacturer on a warranty that arises independently of a contract of sale, such as a manufacturer's express warranty.") (citing Greenman v. Yuba Power Prods., 59 Cal. 2d 57, 61 (1963)).  Second, notice may be given after commencement of suit.  Id. (citing Hampton v. Gebhardt's Chili Powder Co., 294 F.2d 172, 174 (9th Cir. 1961)).  Third, whether plaintiffs and the class were required to give notice and/or whether they provided sufficient notice are questions that are likely common to the class.  Accordingly, there is no need for individualized factual determinations among the class regarding notice.

### i.   Privity:  Express Warranty Claims

Plaintiffs have designated a warranty subclass, consisting of all original owners of residential property in California who are the first occupant resident owners in which window products were installed, for their claim for breach of express warranty. This subclass includes both original owners who bought new homes in which the windows were installed as well as original owners who purchased the windows themselves through distributors.

"The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 695 (1954); see Blanco v. Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1059 (4th Dist. 2008).  There is a well-established exception to the privity rule when the purchaser of a product relied on representations made by the manufacturer in labels or advertising.  Fundin v. Chicago Pneumatic Tool Co., 152 Cal. App. 3d 951, 957 (4th Dist. 1984); see Burr, 42 Cal. 2d at 696. Further, under California Civil Code § 1559, a third party beneficiary can enforce a contract made expressly for his benefit.  Cal. Civ. Code § 1559 (2007); see Shell v. Schmidt, 126 Cal App. 2d. 279 (1954) (finding that the plaintiffs purchasing homes constituted the class intended to be benefitted, and holding that the contract must therefore be for their benefit). A contract made expressly for a third party's benefit does not need to specifically name the party as the beneficiary; the only requirement is that "the party is more than incidentally

benefitted by the contract." <u>See</u> <u>Shell</u>, 126 Cal. App. 2d at 290;
<u>see</u> <u>also</u> <u>Gilbert Financial Corp. v. Steelform Contracting Co.</u>, 82
Cal. App. 3d 65, 69 (1978) (finding that the plaintiff, as the
owner of the building, was an intended beneficiary of the
contract between the general contractor and the subcontractor).

In this case, the court has previously held that named
plaintiffs, who purchased the windows directly from distributors
had alleged sufficient facts demonstrating that privity exists
between Viking and plaintiffs as third party beneficiaries.  The
<u>Deist</u> court also held, in ruling on defendant's motion for
summary adjudication, that the plaintiffs that were original
homeowners of new homes in which defendant's window products were
installed had raised at least a triable issue of fact that they
were also intended beneficiaries of the lifetime warranty at
issue in this case.  Pursuant to the allegations and a reasonable
reading of the warranty at issue, such plaintiffs fit Viking's
definition of "original homeowners" who are covered by the
warranty.  The court agrees with the reasoning of the <u>Deist</u>
court.  Accordingly, for purposes of class certification,
plaintiffs have sufficiently demonstrated that individualized
issues relating to privity will not predominate.[10]

---

[10]     Defendant also asserts that named plaintiffs cannot
adequately represent owners of Viking windows who did not buy
them directly from a distributor.  As an initial matter, the
proposed warranty subclass does not distinguish between retail
owners and home owners, as the state court classes do.  Moreover,
to the extent any privity issues exist, the theory of third party
beneficiary recovery likely applies to all members of the
warranty subclass.  Therefore, the court finds named plaintiffs
to be adequate representatives.  However, nothing prevents
defendant from raising this argument at a later stage in the
(continued...)

1 **ii.  Privity:  Implied Warranty Claims**

2       With respect to the implied warranty claims, plaintiffs seek

3 to bring claims on behalf of all owners of Viking windows, not

4 just those in the warranty subclass.  However, at oral argument,

5 plaintiffs argued that, in the alternative, they would bring the

6 implied warranty claims solely on behalf of the proposed warranty

7 subclass.

8       As set forth above, the privity requirement applies to

9 claims for breach of implied warranty.  The <u>Deist</u> court, relying

10 on representations regarding implied warranty rights of owners

11 who had bought the windows directly or who were first time

12 homeowners with windows installed, held that there were at least

13 triable issues of fact with respect to privity.  However, the

14 broad class proposed by plaintiffs extends beyond those "original

15 owners"; plaintiffs have failed to raise an argument with respect

16 to privity for those class members.  Indeed, the <u>Deist</u> court held

17 that these plaintiffs failed to raise an inference that they were

18 the intended beneficiaries of an implied warranty.  As such,

19 there are individualized issues relating to privity within the

20 broad class.  Further, named plaintiffs, who do not suffer from

21 the more challenging issues of privity, cannot adequately

22 represent members of the class who do.  Accordingly, the court

23 denies certification of the proposed class with respect to

24 plaintiffs' claims for breach of implied warranty.  However, for

25 the reasons set forth above in the court's discussion of

26

27       [10](...continued)
28 litigation to the extent conflicts among the class become
apparent.

22

1  plaintiffs' claims for breach of express warranty, plaintiffs

2  have sufficiently demonstrated that individualized issues

3  relating to privity will not predominate if the implied warranty

4  claims are pursued solely by the warranty subclass.

5                    **iii. Manifestation of Damage**

6       Finally, defendant argues that individualized issues of law

7  and fact predominate within the warranty subclass because

8  plaintiffs' warranty claims require individual proof of

9  malfunction.

10      "[P]roof of breach of warranty does not require proof the

11 product has malfunctioned but only that it contains an inherent

12 defect which is substantially certain to result in malfunction

13 during the useful life of the product.  The question whether an

14 inherently defective product is presently functioning as

15 warranted goes to the remedy for the breach, not proof of the

16 breach itself." Hicks, 89 Cal. App. 4th at 918.  If a plaintiff

17 can demonstrate that their products contain an inherent defect

18 that is "substantially certain to result in malfunction during

19 the useful life of the product," the plaintiff has established a

20 breach of express and implied warranties.  Id. at 923 (noting

21 that it was not necessary for each individual class member to

22 prove inevitable injury before recovering damages to repair the

23 defect and prevent injuries); see also Anthony v. Gen'l Motors,

24 33 Cal. App. 3d 699, 702, 704-05 (1973) (holding that it is

25 "unnecessary to produce individualized evidence [of] wheel

26 failure or personal injury or property damages as a result of

27 wheel failure" and that allegations of a common inherent defect

28 is "exactly the sort of common issue for which class actions are

                                23

1  designed"); <u>In re Ford Motor Co. E-350 Van Products Liability</u>

2  <u>Litigation (No. II)</u>, No. 03-4558, MDL No. 1687, 2008 WL 4126264,

3  at *14 (D. N.J. Sep. 2, 2008) (applying California breach of

4  warranty law in multistate class action and stating that "[a]

5  California court likely would not find that product malfunction

6  is a necessary element of [plaintiff's] breach of warranty

7  claims.").

8       In this case, plaintiffs' claims are based on their

9  allegations and their experts' opinions that defendant's windows

10  suffer from an inherent defect that makes it substantially likely

11  that they will fail before the end of their expected, useful

12  life.  The question of whether defendant's window products are

13  inherently defective is the predominate, common question as to

14  all warranty sub-class members.

15       Defendant's reliance on <u>American Suzuki</u> for the assertion

16  that individualized manifestations issues will predominate is

17  misplaced.  <u>Am. Suzuki Motor Corp. v. Superior Court</u>, 37 Cal.

18  App. 4th 1291 (2d Dist. 1995).  In <u>American Suzuki</u>, the

19  plaintiffs brought claims for breach of implied warranty,

20  alleging the design of the Samurai, a sport utility vehicle

21  manufactured by defendant, "'create[d] an unacceptable risk of a

22  deadly roll-over accident when driven under reasonably

23  anticipated and foreseeable driving conditions . . . .'"  <u>Id.</u> at

24  1293.  The court granted defendant's petition for a writ of

25  mandate decertifying the class because there was insufficient

26  evidence of a defect, in that "nearly all" of the vehicles were

27  not involved in rollover accidents; rather, the evidence

28  demonstrated that "the vast majority of the Samurais sold to the

24

putative class 'did what they were supposed to do as long as they were supposed to do it.'"   <u>Id.</u> at 1298-99.  As such, the implied warranty claims in <u>American Suzuki</u> "were not decided on the ground a defect must have resulted in the product malfunctioning in order to give rise to a suit for breach of warranty.  Rather, they were decided on the ground that since there was no history of the products failing they were not, as a matter of law, defective." <u>Hicks</u>, 89 Cal. App. 4th at 923-24.  Under the evidence presented in support of this motion, the court cannot find that defendant's products were, as a matter of law, not defective.  As such, the facts of <u>American Suzuki</u> are inapposite.

Accordingly, for the foregoing reasons, the court finds that common issues of fact predominate with respect to plaintiff's claims for breach of express and implied warranties as brought on behalf of the warranty subclass.

### c.   CLRA, UCL, and Fraudulent Concealment

With respect to their claims for violation of the Consumer Legal Remedies Act and California's Unfair Competition Law, plaintiffs allege that defendant fraudulently concealed the defective nature of the window products and deceptively advertised that the window products were free from defects in order to induce plaintiffs and class members to purchase them.[11]

---

[11]   Under their allegations referencing violations under the UCL, plaintiffs specifically assert that defendant engage in "unfair, deceptive, untrue, or misleading advertising" as set forth in Business and Professions Code § 17500, California's False Advertising Law.  To state a claim under that section, plaintiffs must demonstrate that members of the public are likely to be deceived.  <u>Mazza</u>, 254 F.R.D. at 627 (citing <u>Day v. AT&T</u>, 63 Cal. App. 4th 325, 332 (1st Dist. 1998)).  The standard is that

(continued...)

(Compl. ¶¶ 78-85.)   Defendant contends that individual factual issues preclude certification because each class member "must establish some form of reliance." (Def.'s Opp'n at 22.) Plaintiffs contend that reliance is shown by materiality, which does not require an individual inquiry.

"Reliance raises individual issues such as credibility and state of mind; therefore, class certification [under Rule 23(b)(3)] is generally inappropriate where reliance is an issue." Grays Harbor, 242 F.R.D. at 573.   California courts have held that relief under the UCL is available without individualized proof of deception, reliance, and injury.   Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal. 3d 442, 451 (1979);   Mass. Mutual Life Ins. Co. v. Superior Court of San Diego, 97 Cal. App. 4th 1282, 1288-95 (4th Dist. 2002); Corbett v. Superior Court, 101 Cal. App. 4th 649, 672 (1st Dist. 2002).   Furthermore, with respect to claims brought under the CLRA or that sound in fraud, a presumption of reliance overcomes the individual nature of the reliance inquiry. Grays Harbor, 242 F.R.D. at 573.

A presumption of reliance is appropriate in cases sounding in fraud where the plaintiffs "have *primarily* alleged omissions, even though the [p]laintiffs allege a mix of misstatements and omissions." Id. (citing Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999)).   In Grays Harbor, the court granted the plaintiffs' motion for class certification on claims for

---

[11](...continued)
of a "reasonable consumer," and proof of actual deception or confusion caused by misleading statements is not required.   Id. Therefore, this claims is subject to common proof by the class.

actionable misrepresentation, the Washington Consumer Protection

Act, unjust enrichment, and breach of express warranty arising

out of allegedly defective furnaces manufactured by the

defendant.  The court held that even though the claims were

grounded in fraud allegations, plaintiffs had sufficiently

demonstrated that common questions predominated because the

primary issue was not the information each class member received,

but rather, what information the defendant allegedly concealed

"in light of what consumers reasonably expect."  <u>Id.</u>  Similarly

in <u>Mazza v. American Honda Motor Corp.</u>, 254 F.R.D. at 625-26, and

<u>Chamberlan v. Ford Motor Corp.</u>, 223 F.R.D. 524, 526-27 (N.D. Cal.

2004),[12] California district courts held that a presumption of

reliance was appropriate, and thus common issues of law and fact

predominated, in claims brought pursuant to the CLRA for failure

to disclose alleged design defects.  <u>See also</u> <u>Mass. Mutual</u>, 97

Cal. App. 4th at 1292 (noting that plaintiffs pursuing claims

under the CLRA "satisfy their burden of showing causation as to

each by showing materiality as to all"); <u>cf.</u> <u>Gartin</u>, 245 F.R.D.

at 437-39 (holding the common issues did not predominate where

the plaintiff's fraud and CLRA claims were based upon affirmative

misrepresentations and a presumption of reliance did not apply).

In this case, the gravamen of plaintiffs' allegations is

that defendant fraudulently and deceptively concealed material

information about the defective nature of the window products.

Specifically, plaintiffs proffer evidence that the lower corners

---

[12]     The Ninth Circuit upheld the district court's
certification of the plaintiff class.  <u>Chamberlan v. Ford Motor
Co.</u>, 402 F.3d 952, 962 (9th Cir. 2005).

1   of defendant's window products are not water tight and require

2   the appropriate sealant to be properly applied.  (Decl. of

3   Antoine Chamsi ("Chamsi Decl."), filed May 22, 2009, ¶¶ 24-26;

4   Decl. of James Cassell ("Cassell Decl."), filed May 22, 2009, ¶¶

5   14, 23, 26.)  Plaintiffs also proffer evidence that the selected

6   sealant was ineffective and that the sealant was poorly or

7   inadequately applied.  (Chamsi Decl. ¶¶ 26, 30-42; Cassell Decl.

8   ¶¶ 27-34.)  Plaintiffs allege that defendants knew about these

9   inherent defects at the lower joints, but failed to inform

10  consumers about them.

11      Based upon these allegations as well as plaintiffs'

12  submitted evidence in support thereof, the court finds that a

13  presumption of reliance is appropriate and thus, that common

14  issues of fact predominate with respect to plaintiffs' CLRA, UCL,

15  and fraudulent omission claims.

16                  **d.   Restitution/Unjust Enrichment**

17      Finally, with respect to their claims for restitution and

18  unjust enrichment, plaintiffs allege that defendant was unjustly

19  enriched at the expense of plaintiff and the class due to the

20  conduct alleged in their aforementioned claims.  Defendant

21  contends, for the same reasons argued above, that individual

22  factual issues preclude certification.

23      Under California law, "'Unjust Enrichment' does not describe

24  a theory of recovery, but an effect: the result of a failure to

25  make restitution under circumstances where it is equitable to do

26  so."  Lauriedale Assocs., Ltd. v. Wilson, 7 Cal. App. 4th 1439,

27  1448 (1st Dist. 1992).  Plaintiff may recover restitution

28  damages; "a term which modernly has been extended to include not

28

only the restoration or giving back of something to its rightful owner, but indemnification." Id.; see also Mazza, 254 F.R.D. at 627.  Generally, in order to be entitled to such recovery, a plaintiff must demonstrate a defendant's (1) "receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." Mazza, 254 F.R.D. at 627 (citing Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)).

In this case, as set forth above, the crux of plaintiffs' claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts about the defective nature of those products.  For the same reasons discussed above with respect to plaintiffs' CLRA, UCL, and fraudulent concealment claims, the court finds that common issues of fact predominate.  See Mazza, 254 F.R.D. at 627 (holding common issues of fact predominated with respect to the plaintiffs' unjust enrichment claim that arose from the defendant's failure to disclose that the product at issue did not perform reliably).

### 2. Superiority

The superiority requirement of Rule 23(b)(3) requires that plaintiff demonstrate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Rule 23(b)(3) sets forth four factors for consideration: (1) the class members interests in individually controlling the litigation; (2) the desirability of concentrating the litigation in the particular forum; (3) the extent and nature of any litigation over the same matter already begun by class

members; and (4) the likely difficulties in managing the class
action.[13]

Under the circumstances of this case, individual prosecution
of the claims is impractical.  First, because many of the claims
arise out of alleged material omissions about defendant's window
products, there may be many class members that are not even aware
they have potentially suffered an injury as a result of deceptive
or fraudulent conduct.  See Grays Harbor, 242 F.R.D. at 563-74.
Second, as plaintiffs seek primarily restitution and the cost of
replacement or repair, each claim is for a relatively small
amount of damages relative to the cost of litigating these
claims.  See Mazza, 254 F.R.D. at 628 (holding that individual
class members do not have a strong interest in controlling the
litigation where potential damages amount to approximately
$4000).  This is particularly true in this case, where
plaintiffs' evidence is comprised of multiple expert opinions.

Moreover, it is desirable to litigate the claims in
California, where the named plaintiffs and class members reside
or resided.  See Grays Harbor, 242 F.R.D. at 574.  Further, all
claims are brought pursuant to California law.

Defendant contends that the pending Deist action, which was
initiated over two years before this action, precludes a finding

---

[13]   In arguing that the class would be difficult to manage,
defendant reiterates the same arguments addressed above, that
individual issues within the class predominate and thus, class
treatment is unmanageable.  However, for the reasons set forth
above, plaintiffs have sufficiently demonstrated that common
issues predominate as to most of their claims.  Individualized
determinations of damages or statute of limitations issues can be
made after common questions of liability are decided.  See
Yokoyama, 2009 WL 2634770, at *6; Arthur Young & Co., 549 F.2d at
696; Grays Harbor, 242 F.R.D. at 574.

of superiority.  However, defendant failed to cite any legal

authority to support this assertion in his opposition.[14]  At oral

argument, defendant *for the first time* asserted that the Ninth

Circuit's decision in Kamm v. California City Developments Co.,

509 F.2d 205 (9th Cir. 1975), precludes a finding of superiority.

In Kamm, the plaintiffs brought a putative class action for

various claims arising out of the defendants' land promotion

scheme.  Prior to the initiation of plaintiffs' suit, the

Attorney General and the Real Estate Commissioner of California

had brought an action against four of the five defendants, in

which a permanent injunction and final judgment on a settlement

agreement had already been filed.  Id. at 207-08.  The settlement

agreement provided for offers of restitution of principal payment

to certain purchasers as well as an agreement that defendant

would use its "best efforts to establish and implement a program

_____

[14]    At the outset of its legal argument, defendant cites
the Colorado River abstention doctrine in support of its
assertion that there is no reason for this court to certify a
class based upon facts identical to those underpinning the Deist
action.  This doctrine provides that abstention is based upon
"considerations of [w]ise judicial administration, giving regard
to conservation of judicial resources and comprehensive
disposition of litigation."  Colorado River Water Conservation
Dist. v. United States, 424 U.S. 800, 817 (1976).  Further, a
court may stay or dismiss an action where it is clear that a
pending "parallel state proceeding will end the litigation."
Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913
(9th Cir. 1993) (citing Gulfstream, 485 U.S. at 277).

    First, defendant does not move to stay or dismiss the
action, and thus, invocation of the Colorado River doctrine is
procedurally improper.  Second, the Deist action would not end
this litigation as plaintiffs are not named plaintiffs in that
litigation, and the Deist action does not assert all theories
advanced by plaintiffs in this case.  Finally, defendant fails to
cite any authority or make any compelling argument that the
rationale supporting Colorado River abstention should be applied
in a class certification context.  As such, defendant's argument
is devoid of merit.

1  to settle future disputes," including rendering quarterly reports

2  to the Attorney General setting forth the names of complainants,

3  the general nature of the complaints, and the disposition.  <u>Id.</u>

4  at 208.  The defendants were also permanently enjoined from

5  engaging in the fraudulent conduct at issue.  Moreover, the state

6  court retained jurisdiction over the matter, and nothing

7  precluded any purchaser from instituting an individual action

8  against the defendants for any alleged damage.  Under these

9  circumstances, the Ninth Circuit upheld the district court's

10  dismissal of the plaintiffs' class complaints for lack of

11  superiority because (1) significant relief had been realized

12  through the state court action, including restitution, a

13  permanent injunction, and the defendant's agreement to establish

14  a program to settle future disputes; (2) a class action would

15  duplicate and potentially negate aspects of the state action; (3)

16  the state court retained jurisdiction; and (4) individual

17  claimants still retained the ability to press their own claims

18  and seek damages.  <u>Id.</u> at 212.

19      While defendant's counsel adamantly asserted at oral

20  argument that the Ninth Circuit's decision in <u>Kamm</u> precludes

21  certification of plaintiffs' class claims because of the pending

22  <u>Deist</u> action, the court finds that the facts of <u>Kamm</u> are wholly

23  distinguishable from the facts before the court in this case, and

24  thus, the holding in <u>Kamm</u> is inapplicable.  First and most

25  importantly, there has been no relief accorded or judgment

26  rendered in the <u>Deist</u> action.  Rather, the state court only

27  recently certified two classes, smaller than the broad class

28  advanced in this case, solely for claims of breach of express and

32

implied warranties; there has been no significant relief for any

class members.  Further, the pending state court action was not

brought on behalf of the public or by a state agency.  Defendant

fails to cite any case law where courts have held <u>Kamm</u> or its

reasoning to be persuasive in the absence of a prior state action

or investigation.  <u>Cf.</u> <u>Brown v. Blue Cross & Blue Shield of</u>

<u>Michigan, Inc.</u>, 167 F.R.D. 40, 46 (E.D. Mich. 1996) (citing <u>Kamm</u>

and denying a motion for class certification where "[t]he

agreement entered into by the State and defendant covers all

members of the proposed class ... and provides full co-pay relief

on all but de minimis claims"); <u>Ostrof v. State Farm Mut. Auto.</u>

<u>Ins. Co.</u>, 200 F.R.D. 521, 532 (D. Md. 2001) (explaining that the

Maryland Insurance Agency had investigated the accused practices

and that "[i]n any event, as a supplement to administrative

proceedings, the small claims courts" are perfectly adequate);

<u>Wechsler v. Southeastern Props., Inc.</u>, 63 F.R.D. 13, 16-17

(S.D.N.Y. 1974) (finding that an action in state court by the

attorney general justified dismissal of class action); <u>see</u> <u>also</u>

<u>Thornton v. State Farm Mut. Auto Ins. Co., Inc.</u>, No. 1:06-cv-

00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) (finding

that a class action was not superior where the Attorneys General

for 49 states had already "expended substantial effort to come to

a nationwide agreement"); <u>Caro v. The Proctor & Gamble Co.</u>, 18

Cal. App. 4th 644, 659-61 (4th Dist. 1993) (finding that class

action treatment would not serve a substantial benefit where the

defendant had already entered into an agreement with the FDA, the

California Attorney General, and California county District

1  Attorneys).   Therefore, defendant's reliance on <u>Kamm</u> is

2  misplaced.[15]

3      Rather, courts often certify concurrent class actions

4  arising from similar facts.   <u>In re Wells Fargo Home Mortgage</u>

5  <u>Overtime Pay Litig.</u>, 527 F. Supp. 2d 1053, 1069 (N.D. Cal. 2007)

6  (concurrent FLSA and UCL class actions); <u>Romero v. Producers</u>

7  <u>Dairy Foods, Inc.</u>, 235 F.R.D. 474, 491 (E.D. Cal. 2006); <u>see</u>

8  <u>Anthony</u>, 33 Cal. App. 3d at 708 ("[T]he pendency of another

9  action, whether in class action cases or otherwise, is not a

10  ground for dismissal.").   Further, the claims and purported class

11  in this action are broader than those in the Deist action.   <u>Cf.</u>

12  <u>Becker v. Schenley Indus., Inc.</u>, 557 F.2d 346, 348 (2d Cir. 1977)

13  (holding that class action was not superior where *identical*

14  claims were brought in the same court on behalf of a class to

15  which the plaintiffs necessarily belonged and the plaintiffs

16  refused to intervene despite explicit invitation by the court to

17  do so); <u>Avritt v. Reliastar Life Ins. Co.</u>, 07-1817, 2009 WL

18  455808 (D. Minn. Feb. 23, 2009)(holding that a class action was

19  not superior based upon both predominance issues as well as a

20  similar nationwide class action pending in state court).

21  Specifically, in contrast to the certified class in the <u>Deist</u>

22  action, which consists only of original owners who still remain

23  current owners of window products, plaintiffs' proposed class

24  consists of (1) original owners who are also current owners; (2)

25  current owners who were not original owners; and (3) former

26  

27      [15]   The court notes that defendant's repeated and
   unqualified representations, in direct response to very specific

28  questions from the court, regarding the extent of <u>Kamm</u>'s
   applicability were misleading.

owners.  Moreover, in contrast to the sole claims for breach of express and implied warranties brought by the class in <u>Deist</u>, plaintiffs assert class claims for violations of the CLRA and UCL, fraudulent concealment, and unjust enrichment.[16]  Indeed, the state court required that putative class members be advised of the pendency of this action and the potential ability to opt out of the <u>Deist</u> action if plaintiffs prevail on their class certification motion.

Accordingly, the court finds that, for those claims in which common issues of law and fact predominate, class treatment is superior under Rule 23(b)(3).

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for class certification is GRANTED in part and DENIED.  The court denies class certification with respect to plaintiffs' claims for strict liability and negligence.  The court certifies the following class with respect to plaintiffs' CLRA, UCL, fraudulent concealment and unjust enrichment claims:

> All current and past owners of residential property in California in which Viking Series 3000 windows manufactured by Viking Industries Inc. between approximately March 1, 1991 and 1999 (the "Class Period") are or have been installed.  The proposed class includes property owners who have replaced their Viking windows.  Excluded from the Plaintiff Class are the Defendant, any entity in which Defendant has a controlling interest, and their legal representatives, heirs and successors, and any judge to whom this case is assigned, and any member of the judge's immediate family.  Claims for personal injury

---

[16]   As set forth above, plaintiffs failed to demonstrate that common issues of law and fact predominate with respect to plaintiffs' purported class claims for negligence and strict liability.

1    are excluded from the claims of the Plaintiff Class
2    which are alleged herein.

3    The court also certifies the following subclass with respect to

4    plaintiffs' breach of express and implied warranty claims:

5        All original owners of residential property in
         California who are the first occupant resident owner in
6        which Viking Series 3000 windows manufactured by Viking
         Industries Inc. between approximately March 1, 1991 and
7        1999 (the "Class Period") are or have been installed.
         The proposed class includes property owners who have
8        replaced their Viking windows.  Excluded from the class
         are named Plaintiffs in pending lawsuits against Viking
9        Industries, Inc. relating to Series 3000 windows other
         than in Cartwright v. Viking; also excluded is the
10       Defendant, any entity in which the Defendant has a
         controlling interest, and their legal representatives,
11       heirs and successors, and any judge to whom this case
         is assigned, and any member of the judge's immediate
12       family.  Claims for personal injury are excluded from
         the claims of the Plaintiff Class which are alleged
13       herein.

14   The court appoints Lynda Cartwright and Lloyd Cartwright as class

15   representatives.  The court appoints David M. Birka-White, of

16   Birka-White Law Offices, and Robert J. Nelson, of Lieff,

17   Cabraser, Heimann & Bernstein LLP, as class counsel.

18       IT IS SO ORDERED.

19   DATED: September 11, 2009

20

21   _____
                                    
22   FRANK C. DAMRELL, JR.
     UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

36