RICHARD M. WILLIAMS (SBN 68032)
KEVIN P. CODY (SBN 96355)
J. MARK THACKER (SBN 157182)
**ROPERS, MAJESKI, KOHN & BENTLEY**
50 W. San Fernando St., Suite 1400
San Jose, California  95113
Telephone:  (408) 287-6262
Facsimile:  (408) 918-4501

DAVID M. BERNICK (*Pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Attorneys for Defendant
VIKING INDUSTRIES, INC., an Oregon
corporation.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA CARTWRIGHT and LLOYD CARTWRIGHT on behalf of themselves and all others similarly situated, | **CASE NO.  2:07-cv-2159 FCD/EFB** |
| Plaintiffs, | **DEFENDANT VIKING INDUSTRIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE CLASS CERTIFICATION ORDER** |
| v. | |
| VIKING INDUSTRIES, INC., an Oregon corporation, and Does 1 through 100, inclusive | |
| Defendants. | |

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

## TABLE OF CONTENTS

I.      IT IS CLEAR ERROR TO RELY UPON VIKING'S LIFETIME
        WARRANTY AND ASSOCIATED MARKETING TO SUPPORT
        CERTIFICATION OF FRAUD CLAIMS BROUGHT BY SUBSEQUENT
        OWNERS. ...................................................................................................... 3

II.     IT WAS CLEAR ERROR TO ADOPT A PRESUMPTION OF RELIANCE
        IN CERTIFYING STATUTORY AND COMMON LAW FRAUD
        CLAIMS. ......................................................................................................... 4

        A.      THERE IS NO DISPUTE THAT RELIANCE IS REQUIRED FOR
                ANY AND ALL FRAUD CLAIMS. ...................................................... 4

        B.      RELIANCE CANNOT BE PRESUMED FOR ORIGINAL
                OWNERS. ............................................................................................ 5

        C.      RELIANCE CANNOT BE PRESUMED FOR SUBSEQUENT
                OWNERS. .......................................................................................... 13

        D.      EVIDENCE OF ACTUAL RELIANCE IS INHERENTLY
                INDIVIDUALIZED AND DOES NOT PRESENT A CLASSWIDE
                COMMON ISSUE. ............................................................................ 14

III.    IT IS CLEAR ERROR TO ACCEPT PLAINTIFFS' THEORY OF
        "DEFECT" AS A SUFFICIENT BASIS TO CERTIFY WARRANTY,
        STATUTORY, AND LEGAL COMMON LAW FRAUD CLAIMS. ................. 15

        A.      EXPRESS AND IMPLIED WARRANTY CLAIMS, AND ANY
                FRAUD BASED UPON SUCH CLAIMS, ALL TURN UPON
                ACTUAL PERFORMANCE. ............................................................... 15

        B.      PLAINTIFFS AND THE COURT CONFLATED
                MANUFACTURING DEFECT WITH ACTUAL FAILURE TO
                PERFORM IN THE FIELD, AN ERROR OF LAW AND FACT. ..... 17

        C.      HERE, ACTIONABLE FAILURE TO PERFORM TURNS UPON
                INTENSELY INDIVIDUAL ISSUES ................................................ 22

IV.     WITHOUT THE STATUTORY AND COMMON LAW FRAUD CLAIMS,
        THE COURT HAS CERTIFIED A DUPLICATIVE CLASS THAT
        CANNOT SATISFY THE SUPERIORITY REQUIREMENT. ....................... 24

V.      CONCLUSION .............................................................................................. 27

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

# TABLE OF AUTHORITIES

## CASES

*Alabama v. Blue Bird Body Co., Inc.*,
573 F.2d 309 (5th Cir. 1978) ........................................................................17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................14

*American Suzuki Motor Corp. v. Super. Ct.*,
37 Cal. App. 4th 1291 (1995) ..................................................................passim

*Arabian v. Sony Elecs. Inc.*,
2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...............................................24

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................................6

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ..............................................................6, 7, 8, 9

*Briehl v. General Motors Corp.*,
172 F.3d 623 (8th Cir. 1999) ........................................................................18

*Buckland v. Threshold Enterprises, Ltd.*,
155 Cal. App. 4th 798 (2007) ..........................................................................5

*Carlson v. General Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) ........................................................................19

*Caro v. Procter & Gamble Co.*,
18 Cal. App. 4th 644 (1993) ..........................................................................12

*Chamberlan v. Ford Motor Corp.*,
223 F.R.D. 524 (N.D. Cal. 2004) ....................................................................7

*Cipollone v. Leggett Group, Inc.*,
505 U.S. 504 (1992) ......................................................................................15

*Daugherty v. American Honda Motor Company*,
144 Cal. App. 4th 824 (2006) ........................................................................18

*Deist v. Viking Industries, Inc.*,
Case No. CV025771 (Cal. Superior Ct.) ..................................................passim

*Deitz v. Comcast*,
2007 WL 2015440, *5 n.4 (N.D. Cal. July 11, 2007) ....................................7

*Feinstein v. Firestone Tire & Rubber Co.*,
535 F. Supp. 595 (S.D.N.Y. 1982) ...............................................................18

*Gonzalez v. Proctor and Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ....................................................................7

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ......................................................................16

*Gray's Harbor Adventist Christian School v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) ................................................................8

*Gregory v. Finova Capital Corp.*,
442 F.3d 188 (4th Cir. 2006) ...................................................................26, 27

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

*Hahn v. Mirda*,
   147 Cal. App. 4th 740 ..........................................................................................11

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975)............................................................................................15

*Hewitt v. Joyce Beverages of Wisconsin, Inc.*,
   721 F.2d 625 (7th Cir. 1983) .................................................................................14

*Hicks v. Kaufman & Broad Home Corp.*,
   89 Cal. App. 4th 908 (2001)..............................................................................20, 21

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ...............................................................................24

*In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*,
   241 F.R.D. 305 (S.D. Ill. 2007)..............................................................................24

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ......................................................................................14

*In re Tobacco II Cases*,
   46 Cal. 4th at 298 (2009)..................................................................................passim

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   527 F. Supp. 2d 1053 (N.D. Cal. 2007) .................................................................26

*Kurczi v. Eli Lilly & Co.*,
   160 F.R.D. 667 (N.D. Ohio 1995)......................................................................25, 26

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................................12

*Marra v. Burgdorf Realtors, Inc.*,
   726 F. Supp. 1000 (E.D. Pa. 1989)........................................................................27

*Massachusetts Mutual*,
   97 Cal. App. 4th at 1293-94.............................................................................passim

*Mazza v. Am. Honda Motor Corp.*,
   254 F.R.D. 610 (C.D. Cal. 2008) .........................................................................5, 8

*Medina v. Safe-Guard Prods.*,
   164 Cal. App. 4th 105 (2008).................................................................................4

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993).........................................................................................8, 9

*Occidental Land, Inc. v. Super. Ct.*,
   18 Cal. 3d 355 (1976).............................................................................................6

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004)...................................................................................7

*Real Estate Alliance, Ltd. v. Sarkisian*,
   2007 WL 2814591 (E.D. Pa. 2007)........................................................................26

*Romero v. Producers Dairy Foods, Inc.*,
   235 F.R.D. 474 (E.D. Cal. 2006)............................................................................26

*Sanchez v. Wal-Mart*,
   2009 WL 1514435 (E.D. Cal. May 28, 2009).........................................................24

*Scottsdale Ins. Co. v. Flowers*,
   513 F.3d 546 (6th Cir. 2008)..................................................................................27

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**AMICA'S  MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - CASE NO.  C 01-02412 SBA**

*Sherman v. Brown*,
    2009 WL 2486192, at *1 (E.D. Cal. 2009) ............................................................3

*State Auto. Mut. Ins. Co. v. Frazier's Flooring, Inc.*,
    2009 WL 693142 (E.D. Tenn. 2009).................................................................26

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007)........................................................4, 12

*Suguri v. Wells Fargo Bank, N.A.*,
    2009 WL 2486546, *7 (C.D. Cal. Aug. 7, 2009) ..........................................5

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    2004 WL 5745993, *9 (D.S.C. 2004) ...........................................................12

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971).....................................................................................6, 7

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .........................................................................14

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ...............................................................6, 13

*Yost v. General Motors Corp.*,
    651 F. Supp. 656 (D. N.J. 1986)....................................................................19

*Zamora v. Shell Oil Co.*,
    55 Cal. App. 4th 204 (1997)...........................................................................19

**STATUTES**

Fed. R. Civ. P. 23(b)(3)(B)......................................................................24, 25

Fed. R. Civ. P. 23(c)(1)(C) ..............................................................................3

Fed. R. Civ. P. 59(e)........................................................................................3

**OTHER AUTHORITIES**

Cal. Com. Code §2313 ...................................................................................15

E.D. Local Rule 78-230(k)................................................................................3

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

RC1/329270.1/JT5

-3-

**AMICA'S  MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - CASE NO.  C 01-02412 SBA**

Viking appreciates the detailed, labor-intensive analysis reflected in the Court's September 14, 2009 order granting class certification in this case and, as well, the high bar applicable to motions for reconsideration. But the Court's work and the parties' own exertions to develop and analyze a complex legal and factual framework (both in this case and in *Deist*) favor identifying serious errors now and doing so to the Court directly, rather than simply addressing them to the Court of Appeals.

Viking believes that the errors at issue are fundamental – they go to the heart of the certification. As set forth below:

- The Court's certification of statutory and common law fraud claims made by subsequent owners based upon Viking's express warranty simply rewrites the express warranty itself, which did not cover anyone but original owners. Claims of breached promises must be based upon the promise actually given. The certified claims of subsequent owners here are not.

- The Court's legal presumption of reliance irreconcilably conflicts with existing law in many different ways: (1) any presumption of reliance by subsequent owners again flies in the face of the language of the express warranty – reliance by subsequent owners cannot be presumed for a promise that excluded them; (2) the California precedents that arguably permit an ***inference*** or ***presumption*** of reliance do so only where the same representations are made to everyone in the class, are material to everyone in the class, and everyone in the class has then acted in a way that is consistent with actual reliance on the representations; but here no such classwide communication was made even to original owners, and no communication at all was made to subsequent owners; and (3) adoption of a classwide presumption ignores Viking's right to rebut the presumption with individual evidence and makes such a rebuttal (which would have to be mounted owner by owner for thousands of class members) infeasible, effectively eliminating the element of reliance.

- While the Court did recognize that the facts relating to the causes of leaks around and through windows were so individual as to preclude certification of the tort claims, the Court

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

RC1/329270.1/JT5

-1-

VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO. 07-02159 FCD/EFB

found that the same facts and the same variability would not bar class treatment of the other claims.  But **all** claims depend legally and factually upon proof of the failure of the windows to perform.  Failure in fact is necessary both to prove fault (breach of warranty and misrepresentation through warranty) and, just as importantly, to prove causation.  A "defect" that does not affect actual failure to perform neither breaches any warranty nor causes any injury.  And because performance can only be determined window-by-window, certification of the warranty and fraud claims is no more proper than the certification of tort claims, which the Court correctly decided against.

These problems affect in different ways all of the claims certified and, in all cases, the claims of subsequent owners.  Original owners are included in the *Deist* class, and Viking preserves its superiority arguments against certification of an overlapping class.

## PROCEDURAL BACKGROUND

On May 22, 2009, plaintiffs sought class treatment of their claims on behalf of themselves and persons in California who own or owned homes in which Viking Window Products have been installed.  (Dkt. 111 at 3 (citing Cmplt. ¶ 1))  An earlier-filed California state court action seeking class treatment of the same core set of allegations pled here was certified over a month before plaintiffs' motion was filed, albeit the state court certified subclasses only for express and implied warranties.  *See Deist v. Viking Industries, Inc.*, Case No. CV025771 (Cal. Superior Ct.); (Dkt. 145, Class Cert. Order, 4-5).

On September 14, 2009, this Court granted plaintiffs' Motion for Class Certification and certified the following class with respect to plaintiffs' Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), fraudulent concealment and unjust enrichment claims:

> All current and past owners of residential property in California in which Viking Series 3000 windows manufactured by Viking Industries Inc. between approximately March 1, 1991 and 1999 (the "Class Period") are or have been installed.  The proposed class includes property owners who have replaced their Viking windows . . .

and the following subclass with respect to plaintiffs' breach of express and implied warranty claims:

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

> All original owners of residential property in California who are the first occupant resident owner in which Viking Series 3000 windows manufactured by Viking Industries Inc. between approximately March 1, 1991 and 1999 (the "Class Period") are or have been installed. The proposed class includes property owners who have replaced their Viking windows. Excluded from the class are named Plaintiffs in pending lawsuits against Viking Industries, Inc. relating to Series 3000 windows other than in *Cartwright v. Viking* . . .

(Class Cert. Order, 35-36)   Viking respectfully requests that the Court reconsider this order and decertify the class.

## LEGAL STANDARD

An order granting class certification may be modified at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C).  Federal Rule of Civil Procedure 59(e) also empowers courts to correct a "clearly erroneous" prior judgment upon a movant's timely-filed motion.  Fed. R. Civ. P. 59(e); E.D. Local Rule 78-230(k); *Sherman v. Brown*, 2009 WL 2486192, at *1 (E.D. Cal. 2009).

## ARGUMENT

### I. IT IS CLEAR ERROR TO RELY UPON VIKING'S LIFETIME WARRANTY AND ASSOCIATED MARKETING TO SUPPORT CERTIFICATION OF FRAUD CLAIMS BROUGHT BY SUBSEQUENT OWNERS.

The central representation cited in support of plaintiffs' fraud claims is Viking's "lifetime" warranty that its windows would be "free of defects in material or workmanship that significantly impairs their operation and proper usage."  (Dkt. 1, Att. 1, Cmplt. ¶ 15; Dkt. 109, Att. 1, Decl. of D. Birka-White in Supp. of Mot. for Class Cert., Ex. F)  According to plaintiffs, this representation was stamped "on each and every window, not to mention all of its brochures and tear sheets . . . ." (Dkt. 135, Pls.' Reply in Support of Mot. for Class Cert., at 14)  They contend that this express warranty formed "a part of the basis of the bargain between Viking and the proposed class members, as they were inducements for the purchase of the windows."  (Dkt. 111, Pls.' Mem. in Support of Mot. for Class Cert., at 6)

Plaintiffs predicate each of their class claims of fraud on the language of this warranty. Plaintiffs' UCL and fraudulent concealment claims cite the language of the warranty.  (*See* Cmplt. ¶ 82 (alleging the UCL was violated because Viking represented in its advertising that "Window Products would be 'free from defects' for the lifetime of the products"); ¶¶ 91, 96 (alleging in the

LAW OFFICES
Ropers, Majeski, Kohn & Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA 94063
(650) 364-8200

context of the fraudulent concealment claim that Viking made misleading disclosures about the Window Products "in their marketing and advertising **and warranties**" and stated that they would be "free from defect") (emphasis added))  Plaintiffs base their CLRA claim on the allegations that Viking represented "that the Window Products have characteristics and benefits which they do not have," and engaged in marketing efforts to persuade Class Members "to purchase[] and install[] . . . Window Products."  (Cmplt. ¶¶ 68, 74)

The glaring problem with each of these claims, and the clear error embedded in the order certifying them, is that the lifetime warranty by its very terms **does not extend to subsequent owners**.  The warranty itself recites that was it only "provided to the **original** homeowner and may **not be assigned or transferred**."  (Dkt. 109, Att. 1, Decl. of D. Birka-White in Supp. of Mot. for Class Cert., Ex. F; emphasis added); *see also* Ex. 1)  Plaintiffs do not allege that any of Viking's marketing efforts – which plaintiffs acknowledge were limited to stickers stamped on the Window Products, brochures and tear sheets – included all **subsequent** homeowners in their purchase of any particular home.  (*See* Cmplt. ¶¶ 15-18; Pls.' Mem. in Support of Mot. for Class Cert., 5; Pls.' Reply in Support of Mot. for Class Cert., 14)

## II.   IT WAS CLEAR ERROR TO ADOPT A PRESUMPTION OF RELIANCE IN CERTIFYING STATUTORY AND COMMON LAW FRAUD CLAIMS.

### A.   There Is No Dispute That Reliance Is Required For Any And All Fraud Claims.

The Court's order reflects established law holding that reliance is an element of each of plaintiffs' fraud-based claims.  (Class Cert. Order, 26-28); *see also In re Tobacco II Cases*, 46 Cal. 4th at 298, 325-29 (2009)  (holding that, under the fraud prong of the UCL, reliance is "an essential element" and is "proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct."); *Medina v. Safe-Guard Prods.*, 164 Cal. App. 4th 105, 115 (2008) ("[T]he 'as a result' language imports a reliance or causation element into Business and Professions Code section 17204."); *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N.D. Cal. 2007) (concluding that CLRA and UCL claims could not stand where the plaintiffs failed to allege (i) that they read the alleged misrepresentations before their purchase,

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-4-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

(ii) that, had they known the actual quality of defendant's service, they would have acted differently, and (iii) that the defendant's representations were a substantial factor in the plaintiffs' decision to purchase the service); *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 807-11 (2007) (holding actual reliance is an element of fraudulent concealment and CLRA claims).

This much is not in dispute.

### B.      Reliance Cannot Be Presumed For <u>Original Owners</u>.

While some California courts have afforded an inference of reliance to plaintiffs or absent class members in certain circumstances, that law does not call for such an inference on the facts of this case.

California courts have adjusted the proof requirements for reliance where:

- a broad dissemination of misrepresentations took place through "an extensive and long-term advertising campaign." *In re Tobacco II*, 46 Cal. 4th at 324, 328.  Proof of actual reliance by the plaintiff is *required*, but not at the level of specific representations in specific campaigns.  (*Id.*) ("Accordingly, we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement . . . but . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.")  Actual reliance is *not presumed* but, instead, still must be proven.  *See Suguri v. Wells Fargo Bank, N.A.*, 2009 WL 2486546, *7 (C.D. Cal. Aug. 7, 2009) ("The California Supreme Court recently held that a plaintiff must plead and prove actual reliance when a UCL claim is based on fraud.") (*citing In re Tobacco II*).  It is the specificity of the proofs that is relaxed in light of the massive nature of the advertising campaign.

- a uniform, written package of materials was used that includes the representation at issue *and* contains material *omissions*.  *Massachusetts Mutual*, 97 Cal. App. 4th at 1293-94; *Mazza v. Am. Honda Motor Corp.*, 254 F.R.D. 610, 626-27 (C.D. Cal. 2008) (following

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-5-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

*Massachusetts Mutual*).  In *Massachusetts Mutual*, reliance was **presumed** following the approach articulated in *Blackie v. Barrack*, 524 F.2d 891, 907 n.22 (9th Cir. 1975), a federal securities law case.

- there was a uniform representation and actual reliance can be demonstrated through **action**.  *See Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971).  Reliance is not presumed but **inferred**.  The presumption of reliance in this instance is only appropriate where the class includes only those who both received the misrepresentation at issue and then also acted in a way that permits the inference that they acted in reliance on the alleged misrepresentation or omission.  *See Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355, 363 (1976) ("an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation") (*citing Vasquez*, 4 Cal. 3d at 814).

Critically, in class actions, the alleged misrepresentation also must be classwide.  As the Court recognized in *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) "[f]or a class action, an inference of reliance arises as to the entire class only if the material misrepresentations were made to **all class members**."  *Id.* (emphasis added)

Reading all of the foregoing principles that have been articulated in the caselaw for adopting and declining a presumption or an inference of reliance, it is helpful to reflect on where the idea of a presuming reliance began.  It began in the federal securities law.  In a securities fraud case, the alleged misrepresentation is made classwide (to all purchasers and sellers of the securities at issue), it is made in the same way to everyone, and requirements of materiality assure that misrepresentations that are of no consequence to buyers and sellers do not become actionable.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 240-47 (1988).  Outside the securities law context, it is rare that such uniformity exists.  Those California decisions that have allowed proof of reliance to be relaxed have done so where the specific facts at hand start to approach the securities market fact pattern – mass marketing, uniform packages, consistency in delivery, integrated products.  But these decisions address a special circumstance and adopt a special legal presumption.  They do not

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

articulate or justify a broad rule that simply replaces reliance in fact with presumed or inferred reliance.

Accordingly, the recent federal decisions in the Ninth Circuit, which govern here, expressly foreclose such a dramatic and unwarranted extension of a securities law principle to other commercial, consumer transactions.   In *Poulos v. Caesars World, Inc.*, a RICO case, the Ninth Circuit declined to adopt the presumption of reliance, noting that the presumption emanated from, and was only applicable in, securities law cases involving omissions.   379 F.3d 654, 666 (9th Cir. 2004)  ("The shortcut of a presumption of reliance typically has been applied in cases involving securities fraud and, even then, the presumption applies only in cases primarily involving a failure to disclose-that is, cases based on omissions as opposed to affirmative misrepresentations.")  The presumption was found to be inapplicable in cases involving a mix of misrepresentations and omissions.   *Id*.  ("Although the Class Representatives urge us to follow the analysis of these securities cases, their claims are best characterized as either affirmative misrepresentations or 'mixed claims'-claims that, in any event, would not be entitled to the presumption.")  This guidance has been followed and expanded in federal consumer fraud cases in California.   In *Deitz v. Comcast*, the court denied certification of plaintiff's CLRA, unjust enrichment, and negligent misrepresentation because he had not pled actual reliance, as required by *Vasquez*, and also rejected the presumption of reliance articulated in the federal securities context in *Blackie*.   2007 WL 2015440, *5 n.4 (N.D. Cal. July 11, 2007).  Likewise, in *Gonzalez v. Proctor and Gamble Co.*, the court denied certification of CLRA claims because reliance could not be presumed, explaining that "the Ninth Circuit has stated that a presumption of reliance typically is only permitted in securities fraud cases, and only in cases based on omissions as opposed to affirmative misrepresentations." 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) (*citing Poulos*).[1]

---

[1]  Although this Court is relying upon *Chamberlan v. Ford Motor Corp*., 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), the *Chamberlan* court did not hold "that a presumption of reliance was appropriate, and thus common issues of law and fact predominated, in claims brought pursuant to the CLRA for failure to disclose alleged design defects."  (Class Cert. Order, 27)  To the contrary, *Chamberlan* was a plain non-disclosure case where the question was whether the information that Ford knew about plastic manifolds gave rise to a duty to disclose.  There was no representation at issue; as such, there was no need to discuss reliance, much less a presumption of.

The Court and plaintiffs have also relied upon *Gray's Harbor Adventist Christian School v. Carrier Corp.*, which speaks only of Washington law, to find that a presumption of reliance is appropriate in this case.  (Class

LAW OFFICES
Ropers, Majeski, Kohn & Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA 94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1   California Supreme Court law calls for the same result.  The California Supreme Court has

2   long recognized that the body of federal securities law is materially distinct from California tort

3   law.  *See Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) (declining to incorporate the presumption of

4   reliance found in federal securities law into a California cause of action for deceit).  In *Mirkin*, the

5   court observed that *Vasquez* involved allegations that defendants had made identical

6   misrepresentations to each class member, and went on to find that the presumption of reliance

7   would not apply "on the part of persons who never read or heard the alleged misrepresentations,

8   such as plaintiffs in the case before us."  *Id.* at 1094.  Moreover, the court rejected the presumption

9   of reliance applied in *Blackie* to securities claims, in part because, in the limited circumstances of

10  that federal securities law decision, "it was not the federal court's role to effect changes in state

11  law."  *Id.* at 1100.

12      Against this backdrop it is clear that no presumption of reliance is appropriate in this case.

13  Plaintiffs' lead California state case, *Massachusetts Mutual*, has generally not been followed by

14  California federal decisions (excepting *Mazza*) and goes beyond the California Supreme Court's

15  decision in *Mirkin*.  First, *Massachusetts Mutual* (without analysis) quotes *Blackie v. Barrack*, 524

16  F.2d at 907 n.22 for the proposition, (factually inapposite here), that "plaintiffs satisfy their burden

17  of showing causation as to each by showing materiality as to all."  97 Cal. App. 4th at 1292.  As

19  Cert. Order, 26 (citing *Gray's Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573

20  (W.D. Wash. 2007)) *Gray's Harbor* not only fails to construe the California law at issue here, but it relies on a single federal securities fraud decision which has no bearing on the analysis of the causes of action at issue

21  here.  *Compare Gray's Harbor*, 242 F.R.D. at 573 (permitting the presumption of reliance "where Plaintiffs have primarily alleged omissions, even though the Plaintiffs allege a mix of misstatements and omissions") (*citing Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)), *with Poulos*, 379 F.3d at 666 (rejecting

22  presumption of reliance for "mixed claims - claims that, in any event, would not be entitled to the presumption.") (quotations omitted).

23  Finally, *Mazza v. Am. Honda Motor Corp.*, a decision relied upon by plaintiffs and this Court, is plainly distinguishable.  That case, which involved mass advertising by Honda, simply adopted the presumption of

24  reliance from *Massachusetts Mutual*. 254 F.R.D. at 625-26.  Additionally, *Mazza* is currently before the Ninth Circuit, which recently exercised its decision to grant a petition for permission to appeal class certification

25  order.  *See Mazza v. Am. Honda Motor Corp.*, 07-cv-07857-VBF-JTL, Dkt. 121 (Notice of Order Granting American Honda Motor Co., Inc.'s Rule 23(f) Petition for Review); *see also Mazza v. Am. Honda Motor*

26  *Corp.*, 07-cv-07857-VBF-JTL, Dkt. 125 (district court granting request to stay all proceedings pending appeal).  One of the issues the Ninth Circuit may decide is whether the district court manifestly erred in resting

27  on a presumption of reliance to find that common questions predominate under the CLRA for new and subsequent purchasers of automobiles.  Given the nature of the express warranty at issue here, which only

28  applied to original owners, *Mazza* is inapposite.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

mentioned above and as distinguished in *Dietz* and *Mirkin*, *Blackie* is a 1975 opinion of the Ninth Circuit construing the Federal securities laws, not California consumer fraud law.  Indeed, *Blackie* is the opinion that *adopted* in the Ninth Circuit the very same presumption of reliance in open market securities cases that the California Supreme Court, in 1993, expressly *refused* to expand beyond those boundaries in *Mirkin*.  Both subsequent California Supreme Court and federal decisions have declined to extend *Blackie* outside the federal securities context.

And on the facts, the plaintiffs in *Massachusetts Mutual* predicated their CLRA claim upon the allegation that the insurer made certain uniform, widely-disseminated misrepresentations regarding a discretionary dividend, while omitting material information about its plans to lower the dividend rate.  The key to the court's decision was the uniformity of the representations and material omissions made to a class of plaintiffs who were presumed to have acted in reliance on the materially incomplete information – those who purchased the policies in question.  *Id.* at 1294.

Critically, *Massachusetts Mutual* did **not** presume reliance by a group of people **who had never been given** any information whatsoever about the product in question.  If it had, a presumption of reliance would have been directly contrary to the California Supreme Court's statement in *Mirkin* that reliance should not be presumed "on the part of persons who never read or heard the alleged misrepresentations."  5 Cal. 4th at 1094.  The presumption arose only because a representation uniformly made to the class (together with allegedly omitted information) was uniformly communicated to the insurance customers, who thereafter allegedly purchased a misrepresented insurance product in ignorance of the omitted information.  As the *Massachusetts Mutual* court said in distinguishing its facts from other cases in which California courts had refused a class wide inference of reliance, "such an inference will not arise where the record will not permit it."  97 Cal. App. 4th at 1294.[2]

In the present case, the record does not permit such an inference of reliance, particularly one that would apply classwide.  Here:

---

[2] *In re Tobacco II* is also inapposite for the reasons discussed above, namely, that the case did not do away with the requirement that a plaintiff must prove actual reliance and because its holding was very narrow, permitting relaxed proof of reliance in the specific context of an extensive, long-term advertising campaign of the sort not alleged in this case.  *See* 46 Cal. 4th at 328.

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-9-

VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB

1.   The uniform sales devices at issue in state court decisions that have presumed or inferred reliance were not used by Viking.

2.   No representations were made by Viking classwide.

3.   The misrepresentation alleged here concerns long term (30+ year) window performance, the materiality of which will (as the Cartwrights demonstrate) be variable among class members.

4.   Presuming reliance on a classwide basis effectively makes the presumption conclusive, because it is impossible for Viking to rebut the presumption case-by-case across the entire class.

More specifically, this case involves no mass advertising campaign directed to all class members, much less one of the scope mounted by the tobacco industry in *In re Tobacco II* or by Honda in *Mazza*. Nor did Viking use a uniform package of material distributed to each window purchaser prior to purchase, as did the insurer in *Massachusetts Mutual*. (Dkt. 127, Stickney Decl. ¶ 5) Rather, it is undisputed that the communications were limited, informal, ad hoc advertising, subject to the discretion of dealers and retailers:

- Advertising took place only at the behest of specific retailers or distributers. (*Id.*)

- The distributors and retailers determined what portions of Viking's "tear sheets" and brochures they would use, and could generate their own content entirely if they chose. (*Id.*)

- Stickers were put on new windows that referred to but did not attach the express warranty. (*See* Dkt. 109, Att. 1, Birka-White Decl. Ex. G, ("Viking Industries, Inc. warrants its window and door products to be free from defects in material and workmanship for as long as you own them. *A copy of the complete lifetime warranty is available from your Viking Dealer.*") (emphasis added))

- The *Deist* court found it undisputed that a "full copy of the warranty was not affixed to the windows. Warranties were only sent to homeowners who requested them." (Dkt. 129, Thacker Decl. Ex. A, *Deist* Summary Adjud. Order, at 17)

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-10-

1   • Viking made no recommendations as to how advertisements were to be displayed or made

2      available to the public generally.  (Dkt. 127, Stickney Decl. ¶ 7)

3
    • The advertising program varied over time, and there was virtually no advertising of any
4
       kind done by the retailers or distributors from 1993 until production ceased in 1999.  (*Id.* at
5
       ¶ 8)
6

7   • Seventy-six percent of homeowners were not aware of any express warranty for the

8      windows.  (Dkt. 121, Sullivan Decl. ¶ 39)

9      Thus, original homeowners who bought a home including Viking windows but who did not

10  pick out the windows themselves could not be presumed to have seen the stickers, which may or

11  may not have stayed on the windows during and after installation.  And original homeowners who

12  did pick out the windows themselves cannot be presumed to have obtained the lifetime warranty

13  and read it.  Finally, for all those that did actually obtain and read the warranty before purchase, the

14  lifetime warranty might or might not be material to the purchasing decision, in contrast to the

15  integrated terms of a life insurance policy premium.[3]

16     The record relating to the Cartwrights also is in accord.  The Cartwrights testified that they

17  either did not receive the written warranty before purchasing Viking windows or are not sure

18  whether they did.  (Ex. 2, H. Cartwright Dep. at 19:20-21:19; Ex. 3, L. Cartwright Dep. at 54:1-

19  56:10)  They also testified that they did not see any stickers on the windows prior to their purchase.

20  (Ex. 4, H. Cartwright Dep. at 72:11-14; Ex. 5, L. Cartwright Dep. at 56:25-57:8)  Likewise, the

21  _____

22  [3]   The fact that plaintiffs also allege omissions does not change the analysis.  Again, the Ninth Circuit in *Poulos*
     rejected an effort to apply the rule of *Blackie* in a mixed misrepresentation/omission case.  379 F.3d 666.

23  Moreover, plaintiffs' complaint here repeatedly relies on alleged misrepresentations in the Lifetime Warranty,
     and the omissions claims are simply restatements of the misrepresentation claim based on that warranty.

24  Indeed, in their class reply brief, plaintiffs glossed over any omissions claims and focused, for the purposes of
     discussing reliance, on affirmative misrepresentations.  (Pls.' Reply in Support of Class Cert. at 14 ("Here,

25  Viking represented on each window that the window would last a lifetime.  That is a material representation
     by any standard, stamped on each and every window, not to mention all of its brochures and tear sheets . . . .

26  Aside from the stickers on every window, Viking created the message that was presented in advertisements
     paid for by its partners. . . . Viking also created marketing materials for distribution by Viking's resellers.")

27  Therefore, this case is far from a case that alleges omissions unaccompanied by misrepresentations, which
     generally are only actionable when there is a duty to disclose the allegedly omitted information.  *See Hahn v.*

28  *Mirda*, 147 Cal. App. 4th 740, 745 (2007) ("To state a cause of action for fraudulent concealment, the
     defendant must have been under a duty to disclose some fact to the plaintiff.")

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200
-11-
**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1   Cartwrights never asserted that they purchased the windows *because of* Viking's alleged

2   representations.  Their individual story can hardly be said to evidence reliance, much less a fact

3   pattern that could justify a presumption of reliance classwide.

4          The Cartwrights also professed to have special, personal reasons for their interest in the

5   long term performance of the windows.  They intended that their new home be their last.  (Ex. 6, H.

6   Cartwright Dep. at 25:16-25)  It is precisely such facts that are the stuff of reliance litigation.  *See*

7   *Stickrath*, 527 F. Supp. 2d at 996 (concluding CLRA and UCL claims could not stand where the

8   plaintiffs failed to allege (i) that they read the alleged misrepresentations before their purchase, (ii)

9   that had they known the actual quality of defendant's service, they would have acted differently, or

10  (iii) that the defendant's representations were a substantial factor in the plaintiffs' decision to

11  purchase the service); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005)

12  (holding that because the named plaintiffs failed to allege they saw, read, or in any way relied on

13  false or misleading advertisements, or that they entered into the transaction as a result of those

14  advertisements, "plaintiffs fail to adequately allege causation as required by Proposition 64").  **But**

15  it is precisely such litigated facts that are *individualized* rather than classwide.

16         Finally, but critically, adopting a presumption of reliance dramatically undercuts Viking's

17  indisputable right to rebut the presumption with claimant-by-claimant proofs.  The Court clearly

18  recognized that right in its refusal to certify tort claims.  (Class Cert. Order at 17-18 ("Defendant is

19  entitled to present its defenses, that damages to the windows may have been caused by unrelated

20  circumstances or by actions post-shipping, th[r]ough a process which permits a thorough and

21  discrete examination."))   But the variability of reliance evidence and the right to present that

22  evidence in rebuttal have not been given comparable weight when it comes to plaintiffs' fraud-

23  based claims.  Indeed, the real effect of the presumption of reliance is that it will bar rebuttal as a

24  practical matter – it is simply infeasible for Viking to rebut reliance case-by-case in the thousands

25  of claims that comprise the class.  *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667 n.20

26  (1993) ("Defendants could also properly introduce evidence to rebut any inference or presumption

27  of reliance arising from Caro's evidence of a material misrepresentation."); *Thorn v. Jefferson-Pilot*

28  *Life Ins. Co.*, 2004 WL 5745993, *9 (D.S.C. 2004) ("The court, therefore, concludes that the statute

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-12-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**

**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

of limitations defense is a substantial affirmative defense as to which Defendant is entitled to present individualized evidence, *including evidence rebutting any presumption favorable to the putative class members*.") (emphasis added).

### C.    Reliance Cannot Be Presumed For <u>Subsequent Owners</u>.

Plaintiffs argued in their motion for class certification that "[b]ecause, by definition, every member of the class must have bought one of the products and, thus, seen the packaging, Plaintiffs have succeeded in showing that the alleged misrepresentations were made to all class members." (Pls.' Mot. for Class Cert., 16 (quoting *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009))   The Court accepted this argument, relying upon plaintiffs' allegation that Viking "deceptively advertised that the window products were free from defects in order to induce plaintiffs and class members to purchase them."  (Class Cert. Order, 25, 28)  The Court concluded, based upon these allegations, that plaintiffs' statutory and common law fraud claims, even for subsequent purchasers, could be pursued on a classwide basis with a presumption of reliance.

Plaintiffs' argument did not accurately describe either the defined class or the record evidence.   At the threshold, it is logically and factually erroneous to say that, "*by definition*," subsequent owners saw the packaging that allegedly contained the Viking representations.  By definition, subsequent owners were ***not even there*** when the windows were delivered to the homes of the original owners.  The only way they could have learned of the warranty itself is to have heard of it and requested it, or to have received it from the original owner or from Viking or its dealers – all of which facts are individual rather than classwide.  Indeed, plaintiffs do not even allege that any subsequent purchasers actually saw or read any Viking representations when they decided to purchase the Viking windows.

Again, the Court recognized this problem elsewhere in its opinion.  The Court found that there were "individualized issues relating to privity within the broad class" and refused to certify the express or implied warranty claims "beyond those 'original owners.'"  (Class Cert. Order, 22; *see also* Dkt. 129, Thacker Decl., Ex. A, Order on *Deist* Mot. for Summ. Adjud., the results of which are reflected in Ex. 7)  This finding simply cannot be squared with certification of the fraud

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1  claims based upon the same warranty – if privity issues preclude certification of the warranty

2  claims of subsequent owners, the same issues should have the same effect on the fraud claims made

3  by those same owners.

4      And it must be emphasized again that, even if plaintiffs had mustered evidence that some

5  subsequent owner happened to see Viking's lifetime warranty prior to purchasing a home with

6  Viking windows, that could never establish the element of reliance for any subsequent owner.  That

7  is because Viking's express lifetime warranty *only covered the original homeowner*.  (Dkt. 109,

8  Att. 1, Decl. of D. Birka-White in Supp. of Mot. for Class Cert., Ex. F)  Thus, the multiple reasons

9  (set forth above) why *Tobacco II* and *Massachusetts Mutual* do not justify a presumption of

10  reliance by original owners apply *a fortiori* to subsequent owners.  There is no evidence in the

11  record of a broad advertising campaign to subsequent owners.  None.

12      **D.      Evidence Of Actual Reliance Is Inherently Individualized And Does Not
            Present a Classwide Common Issue.**

13

14      For common questions to predominate, the proposed class must be "sufficiently cohesive to

15  warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594

16  (1997); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (concluding

17  the predominance inquiry focuses on "the relationship between the common and individual issues"

18  and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

19  representation").  That is, proof of the essential elements of the class representative's claims must

20  establish other plaintiffs' claims as well.  *Amchem Prods.*, 521 U.S. at 623; *Hewitt v. Joyce*

21  *Beverages of Wisconsin, Inc.*, 721 F.2d 625, 628-29 (7th Cir. 1983).  To determine whether this

22  standard is met, "a district court must formulate some prediction as to how specific issues will play

23  out in order to determine whether common or individual issues predominate in a given case."  *In re*

24  *New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) (internal

25  quotation marks omitted).  Reliance cannot predominate here.

26      The Court correctly recognized that "class certification under Rule 23(b)(3) is generally

27  inappropriate where reliance is an issue."  (Class Cert. Order, 26).  In this case, because there can

28  be no presumption of reliance, proof of actual reliance will be highly variable among class

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-14-

members.  Each plaintiff must prove that he or she relied upon each of the alleged representations in the decision to purchase the window, if an original owner, or to purchase a home in which the windows were already installed, if a subsequent purchaser.  Therefore, each class member must establish by individualized proof that he or she was aware of such representations, and that such representations were a significant factor in his or her decision to purchase the windows.  As such, class certification under Rule 23(b)(3) is inappropriate because individual evidence of reliance will overwhelm any common questions.

**III.    IT IS CLEAR ERROR TO ACCEPT PLAINTIFFS' THEORY OF "DEFECT" AS A SUFFICIENT BASIS TO CERTIFY WARRANTY, STATUTORY, AND LEGAL COMMON LAW FRAUD CLAIMS.**

**A.    Express And Implied Warranty Claims, And Any Fraud Based Upon Such Claims, All Turn Upon <u>Actual Performance</u>.**

Whether (1) express or implied warranties were breached and (2) any statutory or common law misrepresentations caused an injury to any plaintiff or any absent class member both turn necessarily on the ***actual performance*** of the windows.

The centrality of performance to the express warranty and fraud claims is established definitively in this case by the language of the warranty itself.  Of course, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Leggett Group, Inc.*, 505 U.S. 504, 525 (1992); Cal. Com. Code §2313, comment 1; *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975).  Here, the express warranty represents only that "Viking windows and doors will be free of defects in material or workmanship that ***significantly impairs their operation and proper usage.***"   (Dkt. 109, Att. 1, Decl. of D. Birka-White In Support of Mot. For Class. Cert., Ex. F (emphasis added)); Ex. 8)  Further, the warranty only applies to window products that have been "installed and maintained in accordance with the manufacturer's instructions and good construction practice."  It expressly excludes, *inter alia*, failures caused by "high moisture environments."  (*Id.*)  Finally, the warranty provides that ***if*** a window proved defective, Viking would repair or replace it.

Thus, whether Viking has breached its express warranty obligations turns on whether ***each*** window (1) has a defect not caused by improper installation or maintenance or by excluded

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-15-

1  environmental conditions and (2) that defect, rather than some other cause, significantly impairs the
2  operation and proper usage of the window.  Moreover, the owner must comply with the other terms
3  of the warranty in presenting a claim to Viking.  In essence, the warranty and all claims based upon
4  it **speak only in the very specific circumstances** where the windows actually fail to perform in the
5  field solely for reasons emanating from a defect in the window itself.  This applies not only to the
6  express warranty claims, but also to the statutory and common law fraud claims which are based
7  upon the same representations.

8      Plaintiffs' repeated allegations of design or manufacturing "defect" and the Court's reliance
9  on this defect theory in the certification order are insufficient as a matter of fact and law to establish
10 breach of warranty, fraud, and causation of injury from them.  By its very terms, the warranty is not
11 triggered by "defect" alone.  The defect must cause the specified "significant impairment" of
12 "operation" and "usage."  Defects that do not have such real world consequences are simply **not**
13 **breaches**.  **Nor** are they **actionable fraud**.  Adopting the "defect" theory does nothing less than re-
14 write the warranty and representation that is the heart of the express warranty and fraud claims.

15     Nor does the implied warranty claim change the result.  The implied warranty is a warranty
16 of merchantability.  That warranty is not breached where the product actually performs in
17 accordance with its ordinary purpose.  It is breached only where the product is unfit for its ordinary
18 purpose, a "minimum level of quality."  *See American Suzuki Motor Corp. v. Super. Ct.*, 37 Cal.
19 App. 4th 1291, 1296-99, (1995), discussed further below.

20     Failure of the windows to perform in the field is a *sine qua non* for liability under all claims
21 for the second, independent reason that all of those claims require causation of some injury in fact.
22 A product that performs as it is supposed to in the field entails no injury.  The law does not allow
23 recovery without injury.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1067 (9th Cir. 2009) ("In
24 both contract and tort claims for damages, the common law always required a showing of damages
25 proximately caused by the wrong as an element of the claim.") (Gould, J. concurring).

26     The Court's September 14 opinion attempts to address this problem in its definition of the
27 injury suffered as "the purchase of allegedly defective windows that failed to protect against water
28 intrusion and damage."  (Class Cert. Order, 13)  But, while this definition purports to move injury

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1  up to the point of purchase, the injury at purchase (**mis**spent money) only occurs if the "failure to

2  protect" is in fact established.  If there is no actionable leakage occasioned by the window, there is

3  no failure to protect.  All roads lead to performance as the test of breach, fraud and causation of

4  injury.

     **B.**    **Plaintiffs And The Court Conflated Manufacturing Defect With Actual**
               **Failure To Perform In the Field, An Error of Law and Fact.**

7        The Court correctly found that "[c]lass treatment does not in any way alter the substantive

8  proof required to prove up a claim for relief."  (Class Cert. Order, 15 (citing *Alabama v. Blue Bird*

9  *Body Co., Inc.*, 573 F.2d 309, 327 (5th Cir. 1978))  However, because the class as defined here does

10  not require actual, actionable failure or causation of injury, the Court's ruling has improperly

11  altered the substantive proof of plaintiffs' claims.  Allowing the concept of "inherent defect" to

12  substitute for breach of a performance-driven warranty is erroneous both in fact and law.

13        It was an error in fact because the express warranty (and the fraud allegations based upon

14  it), contradicts the "defect" theory.  By its very terms, the express warranty is triggered, not merely

15  where there is a defect, but where the defect causes the window to malfunction in a way that

16  "significantly impairs [its] operation."  "Defect" without consequence is simply not a breach.  Nor

17  can it support a fraud allegation based upon the same warranty.  Again, allowing the case to

18  proceed based upon proof of defect alone simply re-writes the warranty.

19        Conflating defect and failure to perform is legally erroneous as well.  First, it imports to

20  commercial loss cases the high standard of "strict" liability that applies only in tort.  In tort cases,

21  strict liability allows for recovery under a standard that favors the injured party over the

22  manufacturer when it comes to actual injuries inflicted by the products.  Strict liability does not

23  apply in economic loss cases and warranty law.  Use of the doctrine of implied warranty to make it

24  applicable is wrong.

25        This issue was addressed squarely in *American Suzuki*, 37 Cal. App. 4th at 1293, where

26  plaintiffs sought to use "inherent defect" to establish implied warranty class claims.  In *American*

27  *Suzuki*, the trial court certified a class consisting of all purchasers of a particular model of motor

28  vehicle over a seven-year period under a theory of "inherent defect."  *Id*.  The appellate court issued

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-17-
**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

a writ of mandate reversing, concluding that the implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a ***minimum*** level of quality." *Id.* at 1296 (quotation omitted) (emphasis added); *see also Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603-04 (S.D.N.Y. 1982) (rejecting class treatment of tire defects, holding that, "[w]ithin the context of a suit for breach of implied warranty a 'defect' is of legal significance only if it renders a tire unfit for its ordinary purpose; and the undisputed evidence of actual performance is that the majority of the Firestone tires, whatever their imperfections may have been, did not have defects making them unfit for their intended use.")   "Minimum," on its face, brings to bear actual performance – whether the windows work as windows, not perfectly but minimally.

Second, plaintiffs' "defect" theory effectively dispenses with the need to prove actual breach and causation of injury. Again, *American Suzuki* addressed and precluded this corrosion of basic principles of common law jurisprudence. There must be a failure to perform. The appellate court held:

> Because the vast majority of the Samuraris sold to the putative class "did what they were supposed to do for as long as they were supposed to do it" [citation omitted], we conclude that these vehicles remained fit for their ordinary purpose. This being so, their owners are not entitled to assert a breach of implied warranty action against Suzuki, and it was, therefore, error to conclude, as did the trial court, that an ascertainable class existed, and that plaintiffs' implied warranty claims should be certified for class treatment. ***To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized. And, compensation would have to be paid for a product "defect" that was never made manifest, in a product that for the life of any warranty actually performed as Suzuki guaranteed it would.***

*Id.* at 1298-99 (*quoting Feinstein*, 535 F. Supp. at 603) (emphasis added).[4] This holding is consistent with the long line of cases that preclude recovery for defects that do not manifest themselves and cause harm. *See, e.g.*, *Briehl v. General Motors Corp.*, 172 F.3d 623, 626 (8th Cir. 1999) (affirming dismissal of claim because plaintiffs had "failed to allege that any defect had

---

[4]   *See also Daugherty v. American Honda Motor Company,* 144 Cal. App. 4th 824, 828 (2006) (in dismissing breach of express warranty claim based on failure to disclose latent defect that did not become apparent until after warranty had expired, the court stated that if a "failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself").

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-18-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

actually manifested itself in their vehicles, [thus,] their allegations of damages failed to meet the pleading requirements for defective products."); *Carlson v. General Motors Corp.*, 883 F.2d 287, 297-98 (4th Cir. 1989) (denying certification of class claim alleging diminution of value of vehicles when no malfunction had manifested itself and that vehicles "ha[d] serve the traditionally recognized 'purpose' for which automobiles are used."); *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657-58 (D.N.J. 1986) (holding that complaint alleged design defect that was merely "likely to cause" damage failed to state a claim when "plaintiff Yost has not alleged that he has suffered any damages."); *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 208 (1997) (holding that plaintiff could not established the breach of any duty owed in the absence of product malfunction).

The very issues debated in this case make clear that plaintiffs' "defect" theory cannot be pursued (under the guise of a breach of implied warranty) in order to avoid proof of failure to perform.  And, because actual performance is an individual issue, certification based upon implied warranty is clearly erroneous.

–  **First**, there is the language of the express warranty in this case.  By its terms, the warranty supports rather exceeds the "minimum level of quality" standard articulated in *American Suzuki*.  Not only does the promise set out in the warranty turn on performance  rather than the existence of a "defect" alone, but the promise is limited to performance problems that rise to a "significant" level and do not emanate from installation, maintenance and other problems not caused by the windows themselves.

–  **Second**, while plaintiffs here assert that the poor seals are frequent and are due to design error, they never assert that Viking windows are unmerchantable if less than 100% of the seals are sound.  Thus, even in their view, the issue becomes "how often."  That issue, in turn, requires scrutiny of conditions in the field, a matter that is hotly-debated and driven by individual facts.  Plaintiffs themselves are at pains to assert that there is a high level of failure in the field.

–  **Third**, the plaintiffs' experts themselves distinguish between the defect alleged (poor seals) and failure of performance (leakage caused by poor seals).  (Ex. 9, Chamsi Dep. at 80 (stating that even for the Cartwright windows that allegedly have poor sealant, there is no knowledge that the windows have leaked, only that "[t]hey have the potential to leak at any minute.

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1    I don't know whether they have leaked or not or they have shown any stains enough that are

2    visible."); Ex. 14)

3    And this admission comes as a result of a basic, physical, indisputable fact: a poor seal may never

4    leak and a window with a poor seal may leak for totally unrelated reasons. Poor seal just does not

5    equal leakage. Any linkage between the two is multifactorial and is uncertain absent knowledge of

6    individual circumstances.

7           – **Fourth**, plaintiffs' assertion that the windows will not last the "lifetime" of 30+ years

8    also comes down to field performance. Of course, the asserted lifetime test of 30+ years is

9    contested (plaintiffs' experts admit that they can cite no basis for it). (*See* Ex. 16; Ex. 17, Cassell

10   Dep. at 283) As well, the empirical evidence both sides bring to bear **comes from the field**

11   (plaintiffs experts provide anecdotal examples from homes, thereby raising individual issues;

12   Viking demonstrates through data the key fact that there is no trend of failure over time). (Dkt.

13   121, Sullivan Decl. ¶ 34; Ex. 10) But **no one** can dispute the fact (1) the plaintiffs attack on

14   longevity goes only to the issue of defect (poor seal) and not directly to the failure of performance

15   and (2), as described above, poor seal does not equal leakage. As a result, windows with poor seals

16   still have not shown leakage problems 20 years later and may never show such problems. Put

17   simply, longevity of seal has not been shown to have affected the "minimal" performance of Viking

18   windows so far and has not been shown to affect their performance in the future.

19          Plaintiffs' only hope is that the Court will continue to find in *Hicks* a case for altering

20   fundamentally the landscape of California warranty jurisprudence. *Hicks* does not do any such

21   thing.

22          *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001) was a case of

23   failure to perform – in each and every sale. *Hicks* involved a claim brought against home

24   developers for selling homes with concrete foundations that were alleged to be failing. **All** concrete

25   foundations are subject to cracking. That was a given. The "Fibermesh" used in the homes in

26   *Hicks* was designed specifically to mitigate this inherent problem by restricting the size of the

27   cracks when they occurred. The alleged defect in Fibermesh was that it was not as good as wire

28   mesh. That was a **performance** problem and one that would exist **in each and every** foundation –

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

because *all* were subject to cracking, *all* contained the same material (Fibermesh), and all Fibermesh did not hold the way the wire did.  The defect at issue *could not* exist *without affecting performance*.  The use of the wrong material meant failure to perform – failure to mitigate cracking – in every case.  It also meant material injury in every case – cracking affected the core purpose of the foundation.  A foundation with Fibermesh would not work, and Fibermesh therefore did not meet the "minimal" standard of merchantability.  *Id.* at 918.

While the court in *Hicks* used language easily parroted by aggressive pleadings and experts (*i.e.,* breach of implied warranty can be proven where a product contains an "inherent defect which is substantially certain to result in malfunction during the useful life of the product"), the facts presented were very unique, would have driven the same result under prior law, and have no application here:

- The product at issue (a concrete foundation) was designed for "indefinite" use.  The *Hicks* court used this fact to distinguish *American Suzuki*.  It also distinguishes the windows here.

- There was an undisputed history of failure already.  The only remaining issue was "manifestation" of damage in other foundations.  This too was used to distinguish *American Suzuki* and distinguishes present case, where historical performance is very much at issue.

- The defect at issue was the same as failure to perform.  Cracks were inherent in concrete foundations.  That was the entire purpose of the mesh, to control cracks. The inadequacy of the Fibermesh compared to wire meant that the inevitable cracking would lead to larger cracks in each and every case.  No such uniform and inevitable tie is present here between the alleged defect (poor seals) and performance (leakage).  Many other factors influence and cause leakage.  (Class Cert. Op., 17-18)

*American Suzuki* was not criticized in *Hicks* and remains good law in California.  And the decades-old legal principle it relied upon (*see Feinstein, Carlson, Yost, Briehl,* and *Zamora* above)

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1  – that breach of implied warranty cannot support recovery of economic loss unless the buyer does

2  not receive in actual performance a merchantable product – controls this case.

3  **C.**   **Here, Actionable Failure to Perform Turns Upon Intensely Individual**
        **Issues**

4

5  The performance issue in this case is water intrusion – leakage – through poor seals.  Thus,

6  under the terms of the warranty, the warranty is breached and actionable if (a) there are poor seals,

7  (b) they do not arise from installation or poor maintenance or some cause other than Viking, and (c)

8  they cause leakage that "significantly impairs operation" of the windows.  The owner also must

9  comply with the other terms of the warranty.

10  That the evidence relevant to breach will be individual rather than common is evident on the

11  face of these basic requirements of the warranty – they reflect a multi-factorial environment,

12  including the condition of the seals in each window, the facts relating to installation, the facts

13  relating to maintenance, the facts relating to cause of leakage and the extent of the leakage, etc.

14  And it gets worse. As the Court recognized in declining to certify the tort claims, the cause

15  of leakage itself is multifactorial.  (Class Cert. Order, 17-18)  Causes include:

16  – Holes for alarm systems

17  – Clogged weeps

18  – Nails in the flashing

19  – Poor fitting with the framing

20  (Ex.11; Dkt. 119 Cruz Decl., ¶¶ 15-17; Dkt No. 123 Wolf Decl., ¶¶ 23-27; Dkt. 125 Tsongas Decl.,

21  ¶¶ 30-33)

22  In the Court's words, there are simply "lots of reasons why these windows could leak,"

23  including sides, installations . . . [and] all kinds of things with a house window," which means there

24  will necessarily be "a lot of individualized determination[s]" into the issue of causation.  (Class

25  Cert. Hr'g Tr., dated September 14, 2009, 11-12)  In fact, it is precisely this Court's recognition

26  that there was "a problem" with causation, (*id.* at 16), which led to its refusal to certify plaintiffs'

27  strict products liability and negligence claims:

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-22-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

> While plaintiffs may be able to present common proof relating to the design and manufacture of defendant's windows, ***the individualized determinations of causation with respect to the alleged class-wide injuries overwhelm these commonalities.*** Defendant is entitled to present its defenses, that damages to the windows may have been caused by unrelated circumstances or by actions post-shipping, though a process which permits a thorough and discrete examination.

(Class Cert. Order, 17-18 (emphasis added))

The *Deist* court too recognized in its summary adjudication ruling that the cause of any leakage requires an individualized inquiry: "water infiltration could have been caused by a myriad of other things, such as faulty construction of the home or installation of the window, etc. . . ." (Dkt. 129, Thacker Decl., Ex. A at 37-38)  And the American Society for Testing and Materials ("ASTM"), whose standards plaintiffs readily endorse, also recognizes that damage in older windows may be attributable to any number of causes.  (*See* Ex. 12, ASTM E1105-00 (2008), "Standard Test Method for Field Determination of Water Penetration of Installed Exterior Windows . . . ." at 2 ("Shipping, handling, installation, acts of subsequent trades, aging, and other environmental conditions all may have an adverse effect upon the performance of the installed product.")) Thus, with respect to the critical issue of causation, an individual examination must be made to determine whether there is any water intrusion, whether the window is the cause of the water intrusion, and whether the specific window's alleged design defect is the cause of the water intrusion.  (Ex. 13)

The evidence concerning the very windows installed in the named plaintiffs' home confirms that the inquiry into the cause of leakage will require a plaintiff-by-plaintiff, window-by-window examination.  Indeed, most of the windows in Mr. and Mrs. Cartwright's home showed ***no*** evidence of any water damage whatsoever and even for those that did, such damage could be attributable to a variety of causes, none of which have anything to do with the theorized defect.  (Dkt. 123, Wolf Decl. ¶ 23); Exs. 14, 15)  For example, while six of the ten windows on the second level of the Cartwright home displayed substantial evidence of prior moisture accumulation on the sills, the experts concluded, based on the pattern of staining and on test results of the windows showing that none of the windows tested leaked, that the moisture at the sills was due to condensation, not leakage from the windows.  (Dkt. 123, Wolf Decl. ¶ 23)  This test result supports the conclusion of

LAW OFFICES
Ropers, Majeski, Kohn & Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA 94063
(650) 364-8200

-23-

1  Viking's expert that "condensation is the source of damage to the finishes are the window." (*Id.*)

2  And it is undisputed that condensation plays no role in plaintiffs' claims.

3  In short, the same analysis that compelled the conclusion that class treatment of the

4  negligence and strict liability claims was inappropriate also precludes certification of plaintiffs'

5  other claims.  Causation and performance will be a critical inquiry for each of those claims and an

6  individual examination must be made to determine (i) whether there is any water intrusion, (ii)

7  whether the window is the cause of the water intrusion, (iii) whether the specific window's alleged

8  design defect is the cause of the water intrusion, and (iv) whether the water intrusion significantly

9  impairs the operation and proper usage of the window.  That individualized, merits-based

10  determination precludes certification as a matter of law.  *See Sanchez v. Wal-Mart*, 2009 WL

11  1514435, *2-4 (E.D. Cal. May 28, 2009) (denying certification when there was no way to prove on

12  a classwide basis whether plaintiffs had been injured by allegedly defective strollers); *In re General*

13  *Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 326 (S.D. Ill. 2007) (denying class

14  certification where there was no way to determine without individualized proof whether allegedly

15  defective engine coolant damaged class members' engines); *Arabian v. Sony Elecs. Inc.*, 2007 WL

16  627977, *12-14 (S.D. Cal. Feb. 22, 2007) (denying class certification when the causes of alleged

17  computer malfunction would turn on individualized proof and when, even if the computer had

18  malfunctioned, there would be individualized questions about whether each computer was fit for

19  the ordinary purpose for which it was bought); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d

20  1012, 1018-19 (7th Cir. 2002) (class treatment improper where numerous individual factors,

21  including the causes of vehicle failure, would preclude manageability of class action).

22  **IV.  WITHOUT THE STATUTORY AND COMMON LAW FRAUD CLAIMS, THE**
23  **COURT HAS CERTIFIED A DUPLICATIVE CLASS THAT CANNOT SATISFY THE SUPERIORITY REQUIREMENT.**

24  The Court found that the "superiority requirement of Rule 23(b)(3) requires that plaintiff

25  demonstrate that a class action is 'superior to other available methods for the fair and efficient

26  adjudication of the controversy.'" (Class Cert. Order, 29)  One of the factors cited by the Court for

27  its superiority consideration is the "the extent and nature of any litigation over the same matter

28  already begun by class members."  (*Id.* at 29-30; Fed. R. Civ. P. 23(b)(3)(B))  "This factor is

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-24-

intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits."  7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 568-70 (2d ed.1986).

Parallel warranty claims are pending in the *Deist* class action; however, the Court here certified all of plaintiffs' claims for class treatment, with the notable exception of the negligence and strict liability claims as discussed above.  If the Court concludes, however, that plaintiffs' statutory and common law fraud claims should be decertified for class treatment, Viking respectfully requests decertification of the remaining duplicative warranty class because the superiority requirement cannot be met.

"Under Rule 23(b)(3)(B), a court must consider whether there is any litigation concerning the controversy already commenced by or against members of the class."  *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 680 (N.D. Ohio 1995).  Here, the Court found persuasive the facts that no relief had been accorded the smaller class of *Deist* plaintiffs, which had no certified claims for statutory or common law fraud, and that no public or state agency had brought that action.  (Class Cert. Order, 33-35)  But without the fraud-based claims, the factors relied upon by the Court play no role in the superiority analysis.

First, the class certified in the *Deist* state class action will completely encompass the class certification here with respect to original owners.  (*Compare* Class Cert. Order, 36 ("All original owners of residential property in California who are the first occupant resident owner in which Viking Series 3000 Windows manufactured by Viking Industries, Inc. between approximately March 1, 1991 and 1999 . . . are or have been installed.") *with id.*, 4-5 (noting *Deist* court certified express and implied warranty of merchantability claims for original home purchasers with Window Products "installed in them when [property owners] purchased their home and which windows were manufactured between January 1989 and December 31, 1999")  Without the fraud-based claims, the relief potentially available for the warranty class here and in *Deist* will be the same.  Plaintiffs here would be afforded the very same opportunity to prosecute their claims for breach of express

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-25-

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1  and implied warranties in the pending state action.[5]  And final adjudication in the *Deist* matter will

2  result in a determination of the rights of all the interested parties, including plaintiffs' claims here.

3  *See* Federal Practice and Procedure § 1780.

4        Second, whether the pending state class action was brought on behalf of the state or a public

5  agency should not control the superiority analysis.  (*See* Class Cert. Order, 33)  What matters is that

6  the warranty claims certified here and in *Deist* are exactly the same – the same primary right under

7  California law, the same express and implied warranties, the same original owners, the same

8  alleged injuries from the same alleged wrongs, against the same defendant.  *See Kurczi v. Eli Lilly*

9  *& Co.*, 160 F.R.D. at 680 (finding the presence of a parallel state court action, which alleged "the

10  same causes of actions and same injuries against the same defendants," weighed against the

11  superiority of a class action); *Real Estate Alliance, Ltd. v. Sarkisian*, 2007 WL 2814591, at *5-6

12  (E.D. Pa. 2007) (holding plaintiff had not met the superiority requirement where significant related

13  lawsuits were already underway, one of which, although not a parallel action, ensured there would

14  be ongoing litigation between the parties).  In cases such as this, "[a]s long as the class action is not

15  superior to one method, it makes no difference whatsoever that the class action is superior to other

16  methods."  *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191 n.3 (4th Cir. 2006) (holding class

17  action was not a superior method to an existing adversary proceeding).  To hold that the federal

18  action here is superior to the pending *Deist* state action would be to infer a presumption that federal

19  courts are a superior forum to California state courts for resolving matters of California state law,

20  especially in a situation, such as this, where the Court's certification order itself rests on another

21  novel and controversial presumption:  that every member of the class can be presumed to have

22  relied on the representations contained on a window sticker that not even the representative

23  plaintiffs claim to have relied on.  The law finds no such presumption.  *See State Auto. Mut. Ins.*

24  *Co. v. Frazier's Flooring, Inc.*, 2009 WL 693142, *5 (E.D. Tenn. 2009) ("State courts are in a

---

25  [5]  The Court's reliance in its certification order on *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 491
26  (E.D. Cal. 2006) (defendant did not dispute the superiority of the class action treatment and the district court
"[was] aware of no parallel litigation that adjudicates these issues") and *In re Wells Fargo Home Mortg.*
27  *Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1069 (N.D. Cal. 2007) (holding parallel "opt-in" claims under the
collective action provisions of the Federal Labor Standards Act "[do] not alter the desirability of class
treatment of UCL claims," under Rule 23), does not alter the conclusion that the creation of an additional
28  warranty class will *not* produce a superior method than the pending *Deist* action for resolving this dispute.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**

1 superior position to resolve undecided questions of state law.") (citing *Scottsdale Ins. Co. v.*

2 *Flowers*, 513 F.3d 546, 562 (6th Cir. 2008)) (alteration omitted); *Marra v. Burgdorf Realtors, Inc.*,

3 726 F. Supp. 1000, 1006 (E.D. Pa. 1989) ("[S]ince *Erie,* state courts are by definition superior in

4 resolving state law issues."). In short, without plaintiffs' statutory and common-law fraud claims,

5 "[i]t would be inefficient and needlessly duplicative to allow the class action to go forward," when

6 a California state court in the pending *Deist* action will adjudicate these very same claims in the

7 normal course of that litigation. *Gregory*, 442 F.3d at 191.

8   Accordingly, to the extent this class overlaps with the pending *Deist* class action, plaintiffs

9 cannot satisfy the superiority requirement of Rule 23(b)(3).

10 **V. CONCLUSION**

11   For the reasons set forth above, Defendant Viking Industries, Inc. respectfully requests that

12 this Court grant Viking's motion for reconsideration and deny plaintiffs' motion for class

13 certification.[6]

14

15 Dated: September 28, 2009   ROPERS, MAJESKI, KOHN & BENTLEY

16

17

18       By */s/ J. Mark Thacker*

18       Attorney for Defendant VIKING INDUSTRIES, INC.

19

20

21

22

23

24

25 [6] Viking files this motion for reconsideration without waiving its other arguments in opposition to class
26 certification, including: (1) the putative class members cannot establish standing to assert any cause of action without individualized proof and adjudications, (2) Viking's substantial statute of limitations defenses
26 preclude certification, (3) the issues of causation and damages/injury require individualized proof, (4) class
27 members' potential to seek consequential damages counsels against certification, (5) plaintiffs are not typical
27 of the proposed class, (6) the proposed class is unmanageable, and (7) questions about notice are
28 individualized and preclude certification of the warranty subclass. (*See* Dkt. 145, 13-29)

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-27-
**VIKING'S MEMORANDUM OF P&A'S IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER- CASE NO.  07-02159 FCD/EFB**