1   Robert J. Nelson (State Bar No. 132797)
    Steve Swerdlow (State Bar No. 250344)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
3   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
4   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
5

6   David M. Birka-White (State Bar No. 85721)
    BIRKA-WHITE LAW OFFICES
7   411 Hartz Avenue, Suite 200
    Danville, CA  94526
8   Telephone:  (415) 616-9999
    Facsimile:  (415) 616-9494

9   *Attorneys for Plaintiffs Lynda and Lloyd Cartwright*

10

11                    **UNITED STATES DISTRICT COURT**

12                    **EASTERN DISTRICT OF CALIFORNIA**

13                        **SACRAMENTO DIVISION**

14

15  LYNDA CARTWRIGHT and LLOYD          Case No.  2:07-cv-2159-FCD-EFB
16  CARTWRIGHT, on behalf of themselves
    and all others similarly situated,      **MEMORANDUM OF POINTS AND**
17                                           **AUTHORITIES IN OPPOSITION TO**
                    Plaintiffs,              **MOTION OF DEFENDANT VIKING**
18                                           **INDUSTRIES, INC. FOR**
    v.                                       **RECONSIDERATION OF CLASS**
19                                           **CERTIFICATION ORDER**
    VIKING INDUSTRIES, INC., an Oregon
20  Corporation, and DOES 1-100, inclusive,
                                             Date:        November 13, 2009
21                  Defendants.              Time:        10:00 a.m.
                                             Courtroom:  2
22                                           Honorable Frank C. Damrell, Jr.

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ............................................................................. 1

4

II.     LEGAL STANDARD....................................................................... 2

III.    ARGUMENT .................................................................................... 4

5

        A.    Viking Has Not Met The Showing for Reconsideration Required
6             By Fed.R.Civ.P 59(e) and Local Rule 78-230(k) ...................................... 4

7       B.    It Was Not Clear Error for the Court to Apply A Presumption of
              Reliance on Plaintiffs' CLRA, UCL, and Fraudulent Omission
              Claims ........................................................................................ 5

8             1.    The Court Did Not Err in Applying a Presumption of
9                   Reliance to Original Owners ............................................ 6

10                  a.    The Court May Apply a Presumption of Reliance
                          Where Plaintiffs Allege Viking Fraudulently
                          Concealed Material Information ......................................... 7

11                  b.    Plaintiffs' Have Alleged and Proffered Classwide
12                        Evidence That Viking Fraudulently Concealed
                          Material Information Regarding the Defective
13                        Nature of the Windows ..................................................... 10

14                  c.    Viking Misunderstands the Role of Reliance in the
                          Certification of Consumer Fraud Actions........................ 13

15            2.    The Court Did Not Err in Applying a Presumption of
                    Reliance to Subsequent Owners................................... 15

16            3.    Common Questions Predominate For The Fraud, UCL And
                    CLRA Claims and Are Amenable to Classwide Treatment.......... 18

17      C.    Plaintiffs Need Not Show Individual Proof That Every Window
18            Product Has Failed to Maintain Warranty or Fraud Claims .................... 20

19            1.    Classwide Proof of Manifestation of a Defect is Not
                    Necessary in Fraud and Warranty Cases....................... 21

20            2.    Viking's Additional Cases Do Not Merit Reconsideration of
                    the Predominance Inquiry on Any of Plaintiffs' Claims.............. 25

21      D.    The Court Did Not Err in Finding that the Superiority Requirement
              Had Been Met in Light of *Deist*............................................... 27

22

IV.     CONCLUSION ............................................................................... 29

23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*389 Orange Street Partners v. Arnold,*
   179 F.3d 656 (9th Cir. 1999) ............................................................... 2, 4

5

6

*Acree v. Gen. Motors,*
   92 Cal.App.4th 385 (2001) ....................................................................... 6

7

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................... 19

8

9

*American Ironworks & Erectors, Inc. v. North American Const. Corp.,*
   248 F.3d 892 (9th Cir. 2001) .................................................................... 2

10

*American Suzuki Motor Corp. v. Superior Court,*
   37 Cal. App. 4th 1291 (1995) ................................................. 20, 22, 23

11

12

*Anthony v. General Motors,*
   33 Cal.App.3d 699 (1973) ................................................................ 22, 28

13

*Arabian v. Sony Electronics, Inc.,*
   No. 05-CV-14741, 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...... 21, 22

14

15

*Arthur v. King,*
   500 F.3d 1335 (11th Cir. 2007),
   *cert. denied,* 128 S.Ct. 660, 169 L.Ed.2d 511 (2007) ............................ 3

16

17

*Bank of St. Helena v. Lilienthal-Brayton Co.,*
   89 Cal.App. 258 (1928) ........................................................................... 9

18

*Bank of the West v. Super. Ct.,*
   2 Cal.4th 1254 (1992) ............................................................................. 6

19

20

*Bhatnagar v. Surrendra Overseas Ltd.,*
   52 F.3d 1220 (3d. Cir. 1995) ............................................................... 3, 4

21

*Binder v. Gillespie,*
   184 F.3d 1059 (9th Cir. 1999) ........................................................... 7, 15

22

23

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ........................................................... 10, 19

24

*Boeken v. Philip Morris Inc.,*
   127 Cal.App.4th 1640 (2005) ............................................................... 14

25

26

*Briehl v. Gen. Motors. Corp.,*
   172 F.3d 623 (8th Cir. 1999) ............................................................... 25

27

*Carlson v. Gen. Motors Corp.,*
   883 F.2d 287 (4th Cir. 1989) ............................................................... 25

28

- ii -

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3    *Caro v. Procter & Gamble Co.*,
         18 Cal.App.4th 644 (1993) ...................................................................................... 10

4

      *Cartwright v. Viking Indus., Inc.*,
5         249 F.R.D. 351 (E.D. Cal. 2008) ............................................................................... 5

6    *Cartwright v. Viking Indus., Inc.*,
         No. 2:07-CV-02159, 2009 WL 2982887 (E.D. Cal. Sep. 14, 2009)................................. passim

7

      *Chamberlan v. Ford Motor Corp.*,
8         223 F.R.D. 524 (N.D. Cal. 2004),
         *aff'd*, 402 F.3d 952 (9th Cir. 2005)................................................................... 7, 17, 20

9

      *Circuit City Stores, Inc. v. Mantor*,
10        417 F.3d 1060 (9th Cir. 2005).................................................................................... 2

11   *Clothesrigger, Inc. v. GTE Corp.*,
         191 Cal.App.3d 605 (1987)....................................................................................... 19

12

      *Cochran v. Quest Software, Inc.*,
13        328 F.3d 1 (1st Cir. 2003) ............................................................................... 3, 5, 24

14   *Corbett v. Super. Ct.*,
         101 Cal.App.4th 649 (1st Dist. 2002) .......................................................................... 6

15

      *Daffin v. Ford Motor Co.*,
16        458 F.3d 549 (6th Cir. 2006)..................................................................................... 23

17   *Danzig v. Super. Ct.*,
         87 Cal.App.3d 604 (1978)......................................................................................... 9

18

      *Daugherty v. American Honda Motor Co.*,
19        144 Cal.App.4th 824 (2006) ..................................................................................... 25

20   *Day v. AT&T Corp.*,
         63 Cal.App.4th 325 (1998) ........................................................................................ 7

21

      *Deitz v. Comcast*,
22        No. C 06-06352, 2007 WL 2015440 (N.D. Cal. Jul. 11, 2007)...................................... 15

23   *Ellenburg v. Spartan Motors Chassis, Inc.*,
         519 F.3d 192 (4th Cir. 2008)....................................................................................... 3

24

      *Ellis v. Costco Wholesale Corp.*,
25        240 F.R.D. 627 (N.D. Cal. 2007).............................................................................. 11

26   *Engalla v. Permanente Med. Group, Inc.*,
         15 Cal.4th 951 (1997) ............................................................................................... 9

27

      *Falk v. Gen. Motors Corp.*,
28        496 F. Supp. 2d 1088 (N.D. Cal. 2008) ..................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Feinstein v. Firestone Tire and Rubber Co.*,
535 F. Supp. 595 (S.D.N.Y. 1982) ........................................................................ 25

*Fletcher v. Sec. Pac. Nat'l Bank*,
23 Cal.3d 442 (1979) ............................................................................................. 6

*Gartin v. S & M Nutec, LLC*,
245 F.R.D. 429 (C.D. Cal. 2007) ......................................................................... 19

*Gonzalez v. Proctor and Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) .......................................................................... 15

*Gormly v. Dickinson*,
178 Cal.App.2d 92 (1960) ...................................................................................... 9

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) ............................................................. passim

*Gregory v. Finova Capital Corp.*,
442 F.3d 188 (4th Cir. 2006) ............................................................................... 28

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 19, 27

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................................. 9

*Hicks v. Kaufman & Broad*,
89 Cal.App.4th 908 (2001) ........................................................................... passim

*Hogya v. Super. Ct.*,
75 Cal.App.3d 122 (1977) .................................................................................... 19

*Hunter v. McKenzie*,
197 Cal. 176 (1925) ............................................................................................... 8

*In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*,
No. 03-4558, MDL No. 1687, 2008 WL 4126264 (D. N.J. Sep. 2, 2008) ............... 22

*In re Tobacco Cases II*,
46 Cal.4th 298 (2009) .................................................................................... passim

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
527 F. Supp. 2d 1053 (N.D. Cal. 2007) ............................................................... 28

*K.C.1986 Ltd. P'ship v. Reade Mfg.*,
472 F.3d 1009 (8th Cir, 2007) ............................................................................... 3

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ............................................................................... 28

**TABLE OF AUTHORITIES**
(continued)

Page

*Keilholtz v. Superior Fireplace, Co.*,
C 08-00836, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009)................................................. 17, 18

*Kern-Tulare Water Dist. v. City of Bakersfield*,
634 F. Supp. 656 (E.D. Cal. 1986),
*aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987) ........................ 3

*Khan v. Shiley Inc.*,
217 Cal.App.3d 848 (1990)........................................................................................................ 21

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005)................................................................................. 14, 15

*Lazar v. Hertz Corp.*,
143 Cal.App.3d 128 (1983)......................................................................................................... 9, 19

*Lovejoy v. AT&T Corp.*,
92 Cal.App.4th 85 (2001) ........................................................................................................ 14

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
97 Cal.App.4th 1282 (4th Dist. 2002)................................................................................... passim

*Mazza v. American Honda Motor Corp.*,
254 F.R.D. 610 (C.D. Cal. 2008) .......................................................................... 7, 13, 14, 20

*McDowell v. Calderon*,
197 F.3d 1253 (9th Cir. 1999),
*cert. denied*, 529 U.S. 1082 120 S.Ct. 1708, 146 L. Ed. 2d 511 (2000) .................................... 2

*Metowski v. Traid Corp.*,
28 Cal.App.3d 332 (1972)............................................................................................................ 9

*Mirkin v. Wasserman*,
5 Cal.4th 1082 (1993) ............................................................................................................... 14

*Mktg. West, Inc. v. Sanyo Fisher Corp.*,
6 Cal.App.4th 603 (1992) ........................................................................................................ 14

*Moran Vega v. Cruz Burgos*,
537 F.3d 14 (1st Cir. 2008)........................................................................................................ 3

*Nat'l Solar Equip. Owners' Assn. v. Grumman Corp.*,
235 Cal.App.3d 1273 (1992)...................................................................................................... 9

*Occidental Land, Inc. v. Super. Ct.*,
18 Cal.3d 355 (1976) .............................................................................................................. 9, 10

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004)..................................................................................................... 13

*Prata v. Super. Ct.*,
91 Cal.App.4th 1128 (2001) ....................................................................................................... 6

- v -

**TABLE OF AUTHORITIES**
(continued)

Page

*Real Estate Alliance, Ltd. v. Sarkisian,*
   No. 05-cv-3573, 2007 WL 2814591 (E.D. Pa. Sept. 24, 2007) ................................................ 28

*Romero v. Producers Dairy Food, Inc.,*
   235 F.R.D. 474 (E.D. Cal. 2006) ...................................................................................... 28

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,*
   37 Cal.App.4th 1318 (1995) ............................................................................................. 21

*Sanchez v. WalMart Stores, Inc.,*
   No. Civ. 2:06-CV-02573, 2009 WL 1514435 (E.D. Cal. May 28, 2009).......................... 21, 22

*Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 1993)................................................................................................. 2

*Schwartz v. Visa Intern. Corp.,*
   No. 822404-4, 2003 WL 1870370 (Cal. Sup. Ct. Apr. 7, 2003)............................................ 6

*Senza-Gel Corp. v. Seiffhart,*
   803 F.2d 661 (Fed. Cir. 1986)......................................................................................... 3, 4

*Sequa Corp. v. GBJ Corp.,*
   156 F.3d 136 (2d Cir. 1998) ............................................................................................ 3, 4

*Sherman v. Brown,*
   No. 2:06-cv-00911, 2009 WL 2486192 (E.D. Cal. Aug. 12, 2009)................................... 3, 4, 5

*Sigsworth v. City of Aurora, Ill.,*
   487 F.3d 506 (7th Cir. 2007).............................................................................................. 3

*Suguri v. Wells Fargo Bank,*
   2009 WL 2486546 (C.D. Cal. Aug. 7, 2009) ..................................................................... 15

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.,*
   305 F.3d 284 (4th Cir. 2002),
   *cert. denied*, 538 U.S. 1012, 123 S.Ct. 1929, 155 L.Ed.2d 848 (2003) ...................................... 2

*United States v. Nutricology, Inc.,*
   982 F.2d 394 (9th Cir. 1992)............................................................................................... 2

*Vasapoli v. Rostoff,*
   39 F.3d 27 (1st Cir. 1994) ................................................................................................... 5

*Vasquez v. Super. Ct.,*
   4 Cal.3d 800 (1971) .............................................................................................. 9, 10, 19

*Wiener v. Dannon Co., Inc.,*
   255 F.R.D. 658 (C.D. Cal. 2009) ...................................................................................... 19

*Wilner v. Sunset Life Ins. Co.,*
   78 Cal.App.4th 952 (2000) ................................................................................................. 9

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3    *Yost v. Gen. Motors Corp.*,
        651 F. Supp. 656 (S.D.N.Y. 1986)......................................................................... 25, 26
4
     *Zamora v. Shell Oil Co.*,
5        55 Cal.App.4th 204 (4th Dist. 1997)................................................................... 21, 26

6

**STATUTES**

7    Cal Civ. Code
        § 1770(a) .................................................................................................................. 17

8

**RULES**

9    Fed.R.Civ.P.
        12(b)(6) ................................................................................................................. 5, 25
10       23............................................................................................................. 11, 15, 27
         23(b)(3) ............................................................................................. 1, 27, 28, 29
11
     L.R.
12       78-230(k)............................................................................................... 1, 3, 4, 6

13

**TREATISES**

14   *1 Newberg On Class Actions, Common Challenges to Predominance Satisfaction*
        § 4.26........................................................................................................................... 9
15
     *2 Newberg on Class Actions, Defining the Class*
16      § 6.14......................................................................................................................... 27

     Charles A. Wright, et al., *Federal Practice and Procedure: Civil 3d*
17      § 1760......................................................................................................................... 27
18
     *Manual for Complex Litigation 4th* (2004)
19      § 21.222...................................................................................................................... 27
        § 22.222...................................................................................................................... 27

20
21
22
23
24
25
26
27
28

I. **INTRODUCTION**

In a 36-page Memorandum and Order ("Order"), this Court granted in part and denied in part Plaintiffs' Motion for Class Certification. *Cartwright v. Viking Indus., Inc.,* No. 2:07-CV-02159, 2009 WL 2982887 (E.D. Cal. Sep. 14, 2009). Defendant Viking Industries, Inc. ("Viking") now moves this Court to reconsider its comprehensive and well-reasoned analysis and thereby decertify Plaintiffs' class claims. Viking has an extraordinarily high burden in connection with its motion, as it must convincingly demonstrate that the Order is clearly erroneous. Fed.R.Civ.P. 59(e). It also must demonstrate new facts or circumstances that did not exist just two months ago when the motion for class certification was first heard. L.R. 78-230(k). Quite simply, Viking does not come close to demonstrating any error, much less clear error, and Viking does not even attempt to address any new facts or circumstances that would warrant reconsideration of the Order.

By its motion, Viking is attempting to do nothing more than press the "reset" button, re-introducing in slightly altered fashion the positions it argued earlier, and which the Court well considered and rejected. Such an attempt to take a "second bite at the apple" is both an improper ground upon which to base a motion for reconsideration and a waste of the Court's and the parties' resources. Nothing in Viking's motion calls the Court's conclusions into reasonable question, let alone establishes "clear error." As set forth below, each of Viking's arguments in favor of reconsideration is without merit:

- *First*, a presumption of reliance under UCL, CLRA, and fraudulent concealment/nondisclosure claims is appropriate where Plaintiffs primarily allege Viking fraudulently concealed material information about the defective nature of the Series 3000 windows ("Window Products") that a reasonable consumer would expect to know.

- *Second*, the materiality of the concealed information, coupled with Viking's material and uniform misstatements about the Window Products' quality, establishes a presumption of reliance equally applicable to both original and subsequent owners.

- *Third,* UCL, CLRA, fraudulent concealment, restitution, and warranty claims do not require individual proof that every Window Product has failed.

- *Fourth*, Viking's tortured interpretation of the language of its lifetime warranty does not support its theory that proof of actual failure is necessary.

- *Fifth*, the existence of the *Deist* action does not defeat Rule 23(b)(3)'s superiority requirement, as the *Deist* class only overlaps with a small portion of the Warranty Subclass, and even those Subclass members will have additional claims in this action.

1   In addition to making false legal assertions, Viking's motion also fundamentally

2   misconstrues Plaintiffs' allegations and proffered evidence. For instance, Viking ignores that every

3   Window Product contained a sticker label that stated "LIFETIME WARRANTY" and another

4   sticker asserting the window qualified for "R-20" certification. The sticker representing the "R-20"

5   certification was visible to *both original and subsequent owners* as it remains on windows during

6   use.  This sticker falsely represents that the windows meet American Architectural Manufacturers

7   Association ("AAMA") standards and are watertight.  Viking further ignores the testimony of

8   Plaintiff Lynda Cartwright, who testified that she and her husband decided to purchase Viking's

9   windows on the basis of sales literature produced by Viking that promoted the windows as having a

10  "lifetime" warranty. *See* DE# 109 (Declaration of Lynda Cartwright ("Cartwright Decl.") ¶¶ 3, 5).

11      For these reasons, and as fully set forth below, Plaintiffs respectfully request that the Court

12  deny Viking's motion for reconsideration.

13  **II.  LEGAL STANDARD**

14      Under the Federal Rules of Civil Procedure, motions for reconsideration are treated as

15  motions to alter or amend a judgment under Rule 59(e).  *American Ironworks & Erectors, Inc. v.*

16  *North American Const. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001); *United States v. Nutricology,*

17  *Inc.*, 982 F.2d 394, 397 (9th Cir. 1992).  Motions for reconsideration will not be granted absent

18  "highly unusual circumstances."  *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999), *cert*.

19  *denied*, 529 U.S. 1082, 120 S.Ct. 1708, 146 L. Ed. 2d 511 (2000); *U.S. ex rel. Becker v.*

20  *Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), *cert. denied*, 538 U.S. 1012,

21  123 S.Ct. 1929, 155 L.Ed.2d 848 (2003) (simple disagreement with the court's ruling will not

22  support Rule 59(e) relief).

23      A Rule 59(e) motion is appropriate only "if the district court: (1) is presented with newly

24  discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if

25  there is an intervening change in controlling law." *Circuit City Stores, Inc. v. Mantor*, 417 F.3d

26  1060, 1064, n. 1 (9th Cir. 2005); *see, e.g., Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*,

27  5 F.3d 1255, 1263 (9th Cir. 1993); *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th

28  Cir. 1999) ("Raising the argument that the cross-claims should have been redesignated as

1   affirmative defenses in his motion for reconsideration was simply too little, too late. Under Rule

2   59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances,

3   unless the district court is presented with newly discovered evidence, committed clear error, or if

4   there is an intervening change in the controlling law.")

5          Such motions decidedly are not meant to provide litigants with an opportunity for a "second

6   bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998); *Bhatnagar v. Surrendra*

7   *Overseas Ltd.*, 52 F.3d 1220, 1231 (3d. Cir. 1995); *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 664

8   (Fed. Cir. 1986).  Likewise, a motion for reconsideration does not license a litigation "game of

9   hopscotch," in which parties switch from one legal argument to a new one "like a bee in search of

10  honey."  *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003) (noting that litigants

11  "frame the issues in a case before the trial court rules" and, once framed, should not be permitted to

12  jump from theory to theory thereafter).[1]

13         Moreover, when filing a motion for reconsideration in this Court, Local Rule 78-230(k)

14  requires the moving party to show "what new or different facts or circumstances are claimed to

15  exist which did not exist or were not shown upon such prior motion, or what other grounds exist for

16  the motion, and why the facts or circumstances were not shown at the time of the prior motion."

17  L.R. 78-230(k).  To succeed, a party must set forth facts or law of a strongly convincing nature to

18  induce the court to reverse its prior decision.  *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.

19  Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th

20  Cir. 1987).  Viking has simply not met this burden.  Indeed, it has not even tried to justify its motion

21  based on new facts or different circumstances, and, as such, its motion does not comply with the

22  Local Rules.

23         Instead, Viking cites *Sherman v. Brown*, No. 2:06-cv-00911, 2009 WL 2486192, at *1 (E.D.

24  Cal. Aug. 12, 2009), as the controlling legal standard.  However, *Sherman* instructs that courts

25  ────────────────

26  [1] As in the Ninth Circuit, district courts in other circuits properly decline to consider new arguments or
    evidence on reconsideration where they were available to be raised earlier.  *E.g.*, *Moran Vega v. Cruz*
    *Burgos*, 537 F.3d 14, 18, n.2 (1st Cir. 2008); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 195

27  (4th Cir. 2008); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007), *cert. denied*, 128 S.Ct. 660, 169
    L.Ed.2d 511 (2007); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007); *K.C.1986 Ltd.*

28  *P'ship v. Reade Mfg.*, 472 F.3d 1009, 1016 (8th Cir, 2007).

1  "may grant relief under Rule 59(e) under limited circumstances: an intervening change of

2  controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous

3  and, if uncorrected, would work a manifest injustice." *Id.* (denying motion for reconsideration

4  because movant set forth no new evidence, nor had there been an intervening change in controlling

5  authority, nor was previous disposition clearly erroneous where "Sherman's arguments are

6  essentially a rehash of the arguments he presented in his petition. The Court finds those arguments

7  to be as unpersuasive as re-presented in the instant motion as they were initially."). Viking's

8  motion must fail for precisely the same reasons.

9  **III.  ARGUMENT**

10      **A.  Viking Has Not Met The Showing for Reconsideration Required By Fed.R.Civ.P
            59(e) and Local Rule 78-230(k)**

11

12      Viking has not come close to meeting its considerable burden under either Federal Rule

13  59(e) or Local Rule 78-230(k). Viking appears to argue that the Court should reconsider its opinion

14  and decertify the Class on the purported basis that the Court committed "clear error." But merely

15  attaching the words "clear error" to an argument is insufficient to support a motion for

16  reconsideration.

17      Literally *all* of the arguments Viking raises here are reincarnations of those it made in its

18  Opposition to Class Certification ("Opp'n") and at the September 4, 2009 oral argument on

19  Plaintiffs' Motion for Class Certification. For example, Viking resuscitates its earlier "inferred

20  reliance" argument, *see* Opp'n at 22, as a "presumption of reliance" argument. *See* Defendant's

21  Motion for Reconsideration ("Mot.") at 4-15. Viking then expands upon its earlier argument on

22  "manifestation of injury," *see* Opp'n at 24-26, calling it here a discussion of the need to show

23  "proof of malfunction." *See* Mot. at 15-24. However, these renewed arguments and the additional

24  cases upon which Viking relies —none of which post-dates the Court's September 14, 2009

25  Order—constitute nothing more than Viking's attempt to take the "second bite at the apple" that

26  courts expressly prohibit on Rule 59(e) motions. *See Sequa Corp.,* 156 F.3d at 136; *Bhatnagar*, 52

27  F.3d at 1231; *Seiffhart*, 803 F.2d at 664. Viking's motion for reconsideration should be rejected on

28  this basis alone. *See 389 Orange Street* Partner, 179 F.3d at 665 ("Raising the argument that the

- 4 -

1    cross-claims should have been redesignated as affirmative defenses in his motion for

2    reconsideration was simply too little, too late."); *Sherman,* 2009 WL 2486192, at *1 ("Sherman's

3    arguments are essentially a rehash of the arguments he presented in his petition.  The Court finds

4    those arguments to be as unpersuasive as re-presented in the instant motion as they were initially.")

5           In addition, Viking's erroneous assertion at this stage of the litigation that the language of

6    the warranty precludes *all* of Plaintiffs' claims, *see* Mot. at 3-4, is exactly the type of litigation

7    "hopscotch" that courts routinely dismiss on motions for reconsideration.  *See Cochran*, 328 F.3d at

8    11.  Indeed, this argument is more appropriate on a Rule 12(b)(6) motion and was clearly available

9    to be raised over a year ago when the Court considered Viking's unsuccessful motion to dismiss

10   Plaintiffs' CLRA and warranty claims.  *See Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 355-

11   56 (E.D. Cal. 2008).  At the least, Viking should have made this argument when it initially opposed

12   class certification.  Plaintiffs will show that Viking's argument is wrong.  However, with respect to

13   this argument in particular, Viking should not be permitted, like Emperor Nero, to "fiddle as Rome

14   burns."  *See Vasapoli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994) ("Unlike the Emperor Nero, litigants

15   cannot fiddle as Rome burns.  A party who sits in silence, withholds potentially relevant

16   information, allows his opponent to configure the summary judgment record, and acquiesces in a

17   particular choice of law does so at his peril.").  This motion should be recognized for what it is:

18   Viking's latest effort to delay these proceedings and presumably create a larger record it may use on

19   appeal.

20          Finally, as demonstrated below, nothing in Viking's motion calls this Court's analysis into

21   reasonable question, let alone establishes that it was clearly erroneous, contrary to law, or would

22   work a manifest injustice.  To the contrary, Viking's proposed interpretations of Plaintiffs' UCL,

23   CLRA, fraudulent concealment/nondisclosure, and warranty claims are clearly erroneous and

24   ignore decades-old California and Ninth Circuit jurisprudence on the certification of consumer class

25   actions.

26       **B.  It Was Not Clear Error for the Court to Apply A Presumption of Reliance on
             Plaintiffs' CLRA, UCL, and Fraudulent Omission Claims**

27

28          This Court previously considered and rejected Viking's assertion in its briefing and at oral

1  argument that individual factual issues with respect to reliance would preclude certification of

2  Plaintiffs' UCL, CLRA, and fraudulent concealment/nondisclosure claims. *See Cartwright*, 2009

3  WL 2982887, at *11-*12. Now Viking spends ten pages, *see* Mot. at 4-14, rearguing this same

4  position. *See* Opp'n at 22. Each of Viking's renewed assertions is without merit.

5      **1.  The Court Did Not Err in Applying a Presumption of Reliance to Original Owners**

6      Viking's argument suffers from a fundamentally erroneous legal premise: that reliance

7  must be an individual issue because it can only be proven through individual direct testimony.

8  Falling far short of its burden under Rule 59(e) or L.R. 78-230(k), Viking ignores the elements of

9  claims brought under the UCL, CLRA, and fraudulent concealment/nondisclosure and repeatedly

10  misconstrues Plaintiffs' allegations and proffered evidence.

11      With respect to the UCL, the Court correctly noted that California courts have repeatedly

12  held that "relief is available without individualized proof of deception, *reliance*, and injury."

13  *Cartwright*, 2009 WL 2982887, at *11 (emphasis added). Numerous cases support this finding.

14  *See, e.g., Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal.3d 442, 451 (1979); *Mass. Mut. Life Ins. Co. v.*

15  *Super. Ct.*, 97 Cal.App.4th 1282, 1288-95 (4th Dist. 2002); *Corbett v. Super. Ct.*, 101 Cal.App.4th

16  649, 672 (1st Dist. 2002). To prove liability under the UCL, one need only show that members of

17  the public are likely to be deceived by the unfair business practice. *Prata v. Super. Ct.*, 91

18  Cal.App.4th 1128, 1136 (2001). "[A] section 17200 violation, unlike common law fraud, can be

19  shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any

20  damage." *Id.* at 1146; *see also In re Tobacco Cases II,* 46 Cal.4th 298, 312 (2009) "Indeed,

21  business practices may be found unfair based upon the mere likelihood of public deception, and

22  nothing more." *Schwartz v. Visa Intern. Corp.*, No. 822404-4, 2003 WL 1870370, at *50 (Cal. Sup.

23  Ct. Apr. 7, 2003) (*citing Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1267 (1992) and *Acree v.*

24  *Gen. Motors*, 92 Cal.App.4th 385 (2001)). Viking cites *In re Tobacco Cases II,* 46 Cal.4th 298

25  (2009), for the proposition that reliance is "an essential element" of a UCL claim. However, the

26  California Supreme Court explicitly held that *only class representatives*, as distinct from class

27  members, must satisfy the standing requirement, and therefore only the class representatives had to

28  plead and prove injury. *See In re Tobacco Cases II,* 46 Cal.4th at 315-16. The California Supreme

1    Court reversed the trial court's decertification of the class on precisely these grounds.[2]

2           In claims brought under the CLRA or that sound in fraud, a presumption of reliance may

3    arise that overcomes the individual nature of the reliance inquiry. *Cartwright*, 2009 WL 2982887, at

4    *11; *see, e.g., Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999); *Grays Harbor Adventist*

5    *Christian Sch. v. Carrier Corp*., 242 F.R.D. 568, 573 (W.D. Wash. 2007) (holding presumption of

6    reliance appropriate on warranty, statutory and common law consumer protection fraud claims);

7    *Mazza v. American Honda Motor Corp.*, 254 F.R.D. 610, 625-27 (C.D. Cal. 2008) (holding, on

8    CLRA claim, that plaintiffs were entitled to inference of reliance and, on UCL claim, question of

9    materiality was common and could be determined on classwide basis); *Chamberlan v. Ford Motor*

10   *Corp.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), *aff'd*, 402 F.3d 952, 962 (9th Cir. 2005); *Mass.*

11   *Mut.*, 97 Cal.App.4th at 1292 (noting that plaintiffs pursuing CLRA claim "satisfy their burden of

12   showing causation as to each by showing materiality as to all" without individual direct testimony);

13   *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332 (1998) (no reliance element *per se* for claims brought

14   under CLRA).  These cases upon which this Court properly relied plainly demonstrate that the

15   Court's Order is not clearly erroneous.

16          a.   **The Court May Apply a Presumption of Reliance Where Plaintiffs Allege Viking**
               **Fraudulently Concealed Material Information**
17

18          "A presumption of reliance is appropriate in cases sounding in fraud where the plaintiffs

19   'have *primarily* alleged omissions, even though the [p]laintiffs allege a mix of misstatements and

20   omissions.'"  *Cartwright*, 2009 WL 2982887, at *12, *quoting Grays Harbor,* 242 F.R.D. at 573

21   (*citing Binder*, 184 F.3d at 1064) (emphasis in original).  The Court properly found the instant case

22   to be such a case because "plaintiffs allege that defendant fraudulently concealed the defective

23   nature of the window products and deceptively advertised that the window products were free from

24   defects in order to induce plaintiffs and class members to purchase them."  *Cartwright*, 2009 WL

25   _____
     [2] Furthermore, contrary to Viking's claims, *Tobacco Cases II* did not confirm that an inference of reliance
     is improper without evidence of "'an extensive and long-term advertising campaign of the sort not alleged
26   in this case.'"  Mot. at 9, n. 2.  Because the case at issue involved "an extensive, long-term advertising
     campaign," the California Supreme Court held that the individual plaintiff satisfied the reliance element of
27   standing. *Tobacco Cases II*, 15 Cal. 3d at 328.  The California Supreme Court clearly did not state that
     such a campaign was required for class representatives to show standing.  Nor did it state that such a
28   campaign was necessary to show actual reliance by, or harm to, absent class members.

2982887, at *12 (emphasis added).[3]  In finding the presumption appropriate, the Court examined the reasoning supporting class certification in *Grays Harbor*.  In that case, the court reasoned that in consumer protection actions primarily alleging material omissions, plaintiffs may sufficiently demonstrate the predominance of common questions on fraud claims, thus benefiting from a presumption of reliance, because the primary issue is not the information that each class member received, but what information the defendant "allegedly concealed in light of what consumers reasonably expect."  *See Cartwright*, 2009 WL 2982887, at *12 (*citing Grays Harbor*, 242 F.R.D. at 573).  The reasoning of *Grays Harbor* applies here.  Indeed, Viking cannot reasonably argue that the concealed information about the defective nature of the Window Products was immaterial in light of what an original or subsequent owner in the Class would reasonably expect.[4]

The common sense approach with respect to reliance that *Grays Harbor* reaffirmed, however, has long been applied in fraud actions by California state and federal courts.  For example,

> it [is] not essential to a [fraud] cause of action…to produce direct evidence that [plaintiff] relied upon such false representations. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect.

*Hunter v. McKenzie*, 197 Cal. 176, 185 (1925) (recognizing that proof of materiality plus action constitutes sufficient circumstantial evidence to satisfy the reliance element of a claim for fraud).  Although *Hunter* arose in the context of affirmative misrepresentations, subsequent cases have applied this rule to fraud by nondisclosure and concealment.  *See, e.g., Bank of St. Helena v.*

---

[3] Contrary to Viking's mischaracterization that Plaintiffs have "glossed over any omissions claims" and only allege misstatements, *see* Mot. at 11, n. 3, the Court correctly found that "the gravamen of plaintiffs' allegations is that defendant fraudulently and deceptively concealed material information about the defective nature of the window products."  *Cartwright*, 2009 WL 2982887, at *12; see Pls.' Cmplt., ¶ 16 ("Viking concealed and failed to disclose to Plaintiffs and Class Members, *inter alia*, that the Window Products were defective, would fail prematurely, were unsuitable for their advertised use and would not satisfy or pass relevant AAMA standards."); ¶ 93 ("Viking intentionally concealed and failed to disclose the true facts about the Window Products for the purpose of inducing Plaintiffs and the Class to purchase the Window Products.")

[4] Viking's attempt to discount the persuasive reasoning of *Grays Harbor* is misplaced.  While *Grays Harbor* does not construe California law, the statutory fraud claim on which it upheld certification, Washington's Consumer Protection Act, is Washington's equivalent to California's UCL claim.

- 8 -

1    *Lilienthal-Brayton Co.*, 89 Cal.App. 258, 262 (1928); *Nat'l Solar Equip. Owners' Assn. v.*

2    *Grumman Corp.*, 235 Cal.App.3d 1273, 1283 (1992); *Gormly v. Dickinson*, 178 Cal.App.2d 92,

3    105 (1960); *Mass. Mut.,* 97 Cal.App.4th at 1282.  Thus, as the Ninth Circuit has held, "the defense

4    of non-reliance is not a basis for denial of class certification."  *Hanon v. Dataproducts Corp.*, 976

5    F.2d 497, 509 (9th Cir. 1992); *see also Metowski v. Traid Corp.*, 28 Cal.App.3d 332 (1972)

6    (applying inference of reliance to class members and reversing trial court's refusal to certify class of

7    camera purchasers pursuing fraud and express warranty claims in connection with alleged uniform

8    misrepresentations about the cameras' capabilities); *Lazar v. Hertz Corp.*, 143 Cal.App.3d 128

9    (1983) (reversing trial court's order refusing certification of a consumer class alleging damages

10   caused by defendant's alleged policy of concealment and misrepresentation in connection with

11   refueling charges); *1 Newberg On Class Actions, Common Challenges to Predominance*

12   *Satisfaction* § 4.26, p. 241 ("challenges based on … fraudulent concealment … or reliance have

13   usually been rejected and will not bar predominance satisfaction because those issues go to the right

14   of a class member to recover, in contrast to underlying common issues of the defendant's liability").

15        As this Court properly concluded here, individual testimony of reliance is unnecessary.

16   Reliance may be inferred from the materiality of uniformly misrepresented or concealed

17   information (e.g., the importance it would have to a reasonable consumer), and the plaintiffs'

18   actions consistent therewith (e.g., purchase of the goods or services at issue).  *See Wilner v. Sunset*

19   *Life Ins. Co.*, 78 Cal.App.4th 952, 962–63 (2000) (reversing dismissal of class allegations in action

20   involving material misrepresentations and concealment, holding that materiality of

21   misrepresentations would give rise to classwide inference of justifiable reliance).  As the California

22   Supreme Court has repeatedly stated, "a presumption, or at least an inference, of reliance arises

23   wherever there is a showing that a misrepresentation was material." *Engalla v. Permanente Med.*

24   *Group, Inc.*, 15 Cal.4th 951, 977 (1997); *accord Vasquez v. Super. Ct.*, 4 Cal.3d 800, 812–14

25   (1971); *Danzig v. Super. Ct.*, 87 Cal.App.3d 604, 613 (1978); *Occidental Land, Inc. v. Super. Ct.*,

26   18 Cal.3d 355, 361–62 (1976).

27        The propriety of inferring common reliance from the materiality of an omission or

28   misrepresentation was also recently reaffirmed both in *In re Tobacco Cases II* and *Mass. Mutual.*

1   In *In re Tobacco Cases II,* the California Supreme Court affirmed that "a presumption, or at least,

2   an inference, of reliance arises whenever there is a showing that a misrepresentation is material"

3   and "[a] misrepresentation is judged to be material if a reasonable man would attach importance to

4   its existence or nonexistence in determining his choice of action in the transaction in question[.]" *In*

5   *re Tobacco Cases II*, 46 Cal.4th at 326-27 (internal citations and quotations omitted).  "Nor does a

6   [named] plaintiff need to demonstrate individualized reliance on specific misrepresentations….").[5]

7         Furthermore, under both the UCL and CLRA, "'[t]hat showing [of materiality] will

8   undoubtedly be conclusive as to most of the class.'"  *Mass. Mut.*, 97 Cal.App.4th at 1293 (*quoting*

9   *Blackie v. Barrack*, 524 F.2d 891, 907, n.22 (9th Cir. 1975)).  In addition, to the extent reliance is an

10  element of fraud claims, it can be established by objective evidence on a classwide basis.

11  Reaffirming a long line of class action precedent, the *Mass. Mutual* court held:

12         The fact a defendant may be able to defeat the showing of causation as to a few individual
           class members does not transform the common question into a multitude of individual
13         ones; plaintiffs satisfy their burden of showing causation as to each by showing
           materiality as to all.
14

15  *Mass. Mut*., 97 Cal.App.4th at 1293 (*quoting Vasquez*, 4 Cal. 3d at 814 and *citing Occidental Land,*

16  *Inc. v. Super. Ct*., 18 Cal. 3d 355, 363 (1976)); *see also Falk v. Gen. Motors Corp*., 496 F. Supp. 2d

17  1088, 1095 (N.D. Cal. 2008) ("Materiality, for CLRA claims, is judged by the effect on a

18  'reasonable consumer'").  However, "such an inference will not arise where the record will not

19  permit it." *Mass. Mut.*, 97 Cal.App.4th at 1294 (distinguishing the court's refusal to infer reliance

20  in *Caro v. Procter & Gamble Co*., 18 Cal.App.4th 644 (1993)).

21      **b.  Plaintiffs' Have Alleged and Proffered Classwide Evidence That Viking**
            **Fraudulently Concealed Material Information Regarding the Defective Nature of the**
22          **Windows**

23         This Court properly found that Plaintiffs have alleged and presented evidence that Viking

24  uniformly withheld and concealed information from, and made uniform misrepresentations to, the

25  _____

[5] *In re Tobacco Cases II* makes clear that Prop. 64 has not fundamentally changed the elements of a UCL
26  "fraudulent" prong claim.  Contrary to Viking's claim, actual reliance is not an element but something the
    class representative ("the claimant"  under § 17203) must prove to establish *standing*.  *Tobacco Cases II*,
    15 Cal. 3d at 328.  Hence, once the class representative's standing is proven, actual reliance becomes
27  wholly irrelevant.  Actual reliance of each class member has nothing to do with the class certification
    analysis, because once standing is shown, actual reliance is not part of what either the class representative
28  or the class members must prove to establish liability.

1   Class as a whole.  *Cartwright*, 2009 WL 2982887, at \*12. Viking's motion does not disprove

2   Plaintiffs' ability to present classwide proof in support of their claims.  Instead, Viking attempts to

3   raise issues of disputed fact as to evidence of the defective nature of the Window Products, the

4   testing conducted by the parties' experts, and the extent of Viking's marketing and representations

5   to the Class.  These are issues on which Plaintiffs are entitled to proceed to trial, and which,

6   Plaintiffs are confident, will be resolved by the trier of fact in Plaintiffs' favor when the merits are

7   presented.  But this is not a motion for summary judgment.  As the Court found, "in adjudicating a

8   motion for class certification, the Court accepts the allegations in the complaint as true so long as

9   those allegations are sufficiently specific to perform an assessment as to whether the requirements

10  of Rule 23 have been satisfied."  *Cartwright*, 2009 WL 2982887, at \*4 (*citing Ellis v. Costco*

11  *Wholesale Corp*., 240 F.R.D. 627, 635 (N.D. Cal. 2007)).

12      Viking attempts to distinguish *Mass. Mutual* on the ground that that case involved uniform,

13  widely-disseminated misrepresentations.  *See* Mot. at 9.  However, this action also involves highly

14  consistent and widely-disseminated misrepresentations that accompanied material omissions

15  regarding the defective nature of the Window Products.

16      For example, Viking placed a sticker on *all* Series 3000 windows asserting that they met the

17  "R-20" certification—a marketing message visible to original and subsequent owners alike as these

18  stickers typically remain on the windows through the life of the product.  The R-20 certification

19  constitutes a representation to consumers, building professionals, and trades that the windows meet

20  AAMA standards and that the windows are watertight.  In fact, the windows neither meet the "R-

21  20" certification nor are watertight.  *See* DE# 110 (Declaration of James Cassell ("Cassell Decl.")

22  ¶ 41).  In addition, starting in March 1991, Viking amended its 3000 Series warranty to offer a

23  "Lifetime Warranty."  The warranty claimed that the Window Products would be "free from defects

24  in material and workmanship...."  *See* DE#  109 (Declaration of Keegan ("Keegan Decl.") ¶ 18).

25  Viking consistently and prominently advertised the Lifetime Warranty on the Window Products and

26  in marketing materials for the 3000 Series.  *Id.* (Keegan Decl. ¶ 20).

27      The warranty provided as follows:

28      Viking Industries, Inc., warrants that its Viking windows and doors will be free of defects

1

2

in material and workmanship that significantly impairs their operation and proper usage and applies for as long as you own them.

3

4

5

6

7

8

Viking also affixed a large 8" x 10" sticker label on each window that stated "LIFETIME WARRANTY."  The "LIFETIME WARRANTY" language faced the front of the window.  The backside of the label stated "[t]he window is warranted to be free from defects in material and workmanship" for as long as you own them.  *See* DE# 109 (Declaration of David Birka-White ("Birka-White Decl."), Exhs. F and G).  These stickers would have been viewed by all members of the Warranty Subclass.

9

10

11

12

13

14

15

16

17

18

19

Aside from the stickers on every window, Viking itself created the message presented in advertisements paid for by its partners, and utilized widely-disseminated tear sheets.  This uniform message remained unchanged for the entire relevant period.  *See* DE #109 (Keegan Decl. ¶¶ 20-25).  Viking also created marketing materials for distribution by Viking's resellers.  *Id.* (Keegan Decl. ¶ 22).  The brochures also delivered the single, uniform message that the windows would last for the life of the building, although Viking knew the sealant would not perform even half as long as the expected life of a window.  That message was consistently delivered through the marketing materials.  *Id.* (Keegan Decl. ¶ 25).  Plaintiffs alleged that none of this material information was ever disclosed to the class.  Pls.' Cmplt. ¶¶ 16, 93.  Here, Plaintiffs' marketing expert has testified that these omissions and misstatements representing the product's purported characteristics were material and had a significant effect on consumers' purchase decisions and expectations.[6]

20

21

22

23

24

These facts are not dissimilar to *Mass. Mutual*, where the court found "no evidence any significant part of the class had access to all the information the plaintiffs believe they needed before purchasing N-Pay premium payment plans.  Indeed, there is nothing in the record which shows that Mass Mutual's own assessment of the discretionary dividends was disclosed to any class member.  *If the undisclosed assessment was material, an inference of reliance as to the entire class*

25

26

27

28

---

[6] As Dr. Keegan testified, warranties are a tool used by marketers to gain an edge on competitors who are not offering warranties on similar products, or to establish an equal footing in the marketplace with competitors who are offering similar warranties.  (Keegan Decl. ¶ 29).  This is because customers expect to perceive greater value and less risk when considering a product with a lifetime warranty as compared to a product with a warranty lasting only several years or a product with no warranty at all.  (Keegan Decl. ¶ 27).

1    *would arise, subject to any rebuttal evidence Mass Mutual might offer.*"  *Mass. Mut.*,

2    97 Cal.App.4th at 1295. (emphasis added).  This scenario is also similar to *Mazza*, as this Court

3    recognized, *see Cartwright*, 2009 WL 2982887, at *12, where the court applied a presumption of

4    reliance, finding that "there is little-to-no evidence that [material] information was available or

5    reached consumers prior to their purchase of the [defective product]."  *See Mazza*, 254 F.R.D. at

6    626.

7         **c.    Viking Misunderstands the Role of Reliance in the Certification of Consumer Fraud
               Actions**

8

9         Viking ignores the basic principle that the reliance inquiry is not individualized when

10   established classwide by the materiality of omitted information.  Instead, it launches into an

11   unnecessary meditation on federal securities law, painting this Court's conclusion as a "dramatic

12   and unwarranted extension of a securities law principle to other commercial, consumer

13   transactions."  Mot. at 7.  It is not.

14        Viking appears to assert that a "presumption of reliance" only applies in securities law cases

15   involving omissions.  In support, Viking relies on *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666

16   (9th Cir. 2004).  *Poulos*, however, is entirely distinguishable as the issue before the court was not a

17   UCL, CLRA, or fraud claim, but "the extent to which a class action plaintiff must establish

18   individualized reliance to meet the causation requirement of a civil Racketeer Influenced and

19   Corrupt Organizations Act ("RICO") predicated on mail fraud."  *Poulos*, 379 F.3d at 658.  Further,

20   the Ninth Circuit took great pains to emphasize its holding was "both narrow and case-specific" and

21   was "careful to frame the controlling issue in terms of causation, *not reliance*."  *Id*. at 666

22   (emphasis added).  *Poulos* also importantly distinguished between the expectations of the unique

23   plaintiffs in the case—gamblers—from those of the reasonable consumer.  *Id.* at 665 ("Due to the

24   unique nature of gambling transactions and the allegations underlying the class claims, this is not a

25   case in which there is an obvious link between the alleged misconduct and harm.... Gamblers do not

26   share a common universe of knowledge and expectations—one motivation does not 'fit all.'").

27   Finally, the Ninth Circuit reiterated the applicability of a presumption of reliance in cases involving

28   a "failure to disclose," *see id*. at 666, which is what Plaintiffs allege here.

1    Viking's reliance on *Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993) is misplaced.  *Mirkin* pre-

2    dates *In re Tobacco Cases II, Mass. Mutual,* and *Mazza*, and merely held that the "fraud-on-the-

3    market" doctrine did not apply to common law claims for deceit and negligent misrepresentation.

4    *Mirkin*, 5 Cal.4th at 1089.  Viking argues that *Mirkin* requires proof of "actual reliance" to sustain a

5    claim for fraudulent concealment.  But this notion was put to rest in *Lovejoy v. AT&T Corp.*, 92

6    Cal.App.4th 85 (2001).  There, the court held that a plaintiff who alleged that he had been unaware

7    of the defendant's fraud nevertheless properly alleged a fraudulent concealment claim, stating:

8    "[t]here is no problem with reliance, since the only type of reliance required is that `the plaintiff

9    must have been unaware of the fact and would not have acted as he did if he had known of the

10   concealed or suppressed fact'."  *Lovejoy*, 92 Cal.App.4th at 97, *quoting Mktg. West, Inc. v. Sanyo*

11   *Fisher Corp.*, 6 Cal.App.4th 603, 613 (1992); *see also Boeken v. Philip Morris Inc.*, 127

12   Cal.App.4th 1640, 1660 (2005) ("Relying on *Mirkin*… Philip Morris suggests that in order to show

13   reliance, Boeken was required to prove that the false or misleading representations were made

14   directly to him[...] We find no such requirements in *Mirkin*.").

15   *Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181 (S.D. Cal. 2005), similarly lends no

16   support to Viking's argument.  In *Laster*, the plaintiffs thought they were getting a free or

17   substantially discounted phone, but were charged sales tax on the full retail value of the phone.

18   *Laster*, 407 F. Supp. 2d at 1194.  The court found the assertions concerning the shifted tax burden

19   sufficient to allege injury in fact because the plaintiffs did not get the benefit of their bargain and

20   paid more taxes than promised.  *Id.* at 1194.  However, the court dismissed the plaintiffs' claims

21   because they "had not alleged they saw, read, or *in any way relied* on Defendants in entering into

22   the transactions."  *Id.* at 1194. (emphasis added).  This is clearly distinguishable from the present

23   case.  The Cartwrights testified that they decided to purchase Viking's windows on the basis of

24   sales literature produced by Viking that promoted the windows as having a "lifetime" warranty.

25   *See* DE# 109 (Cartwright Decl. ¶¶ 3, 5).  Further, their decision was made on the basis of the

26   brochures, a form of warranty, promotional materials, and other written information prepared by

27   Viking which advertised these as "high-quality window product[s] which would last as long as our

28

1    home." *See id.*[7]

2            In short, there is no question that Viking's fraudulent concealment of the defective nature of

3    the Window Products, coupled with deceptive advertising, was material information sufficient to

4    give rise to an objective inference of reliance.  This can be proven classwide.  At its core, Viking's

5    claim that the Cartwrights' testimony somehow defeats this presumption is simply an attempt to re-

6    litigate whether the Cartwrights meet the typicality and adequacy of representation requirements of

7    Rule 23, which the Court here has concluded are satisfied.

8        **2.   The Court Did Not Err in Applying a Presumption of Reliance to Subsequent
             Owners**[8]

9

10           Viking previously argued that "[s]ubsequent purchasers are not likely to be able to prove

11   reliance to assert a UCL, CLRA, or fraud claim." *See* Opp'n at 28.  It adds nothing new here.

12   Viking repeatedly mischaracterizes Plaintiffs' UCL, CLRA, and fraudulent concealment claims as

13   _____

14   [7] Viking similarly misreads *Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 624-25 (S.D. Cal.
     2007).  In *Gonzalez*, the plaintiff sought to represent a class of purchasers of 28 various hair care products,

15   each of which was the specific subject of various allegedly false "hair strengthening" claims that appeared
     in a variety of television commercials on different products.  Based in part on the fact that the plaintiff had
     not seen any of the four commercials she cited as evidence of the defendant's affirmative

16   misrepresentations, the court found that she did not meet Rule 23's typicality requirement.  *Id.* at 622.
     Moreover, *Gonzalez* was a pure affirmative misrepresentation case, and as such, no presumption of

17   reliance was appropriate, as the plaintiff had not primarily alleged omissions.  *See, e.g., Binder*, 184 F.3d
     at 1064; *Grays Harbor*, 242 F.R.D. at 573.  Here, however, unlike in *Gonzalez*, the Cartwrights testified

18   that they purchased the Window Products because of the alleged misrepresentations.  *See infra* at p. 14.

19           Nor do the unpublished decisions, *Deitz v. Comcast*, No. C 06-06352, 2007 WL 2015440, at *4-*5
     (N.D. Cal. Jul. 11, 2007), and *Suguri v. Wells Fargo Bank*, 2009 WL 2486546 (C.D. Cal. Aug. 7, 2009),

20   support Viking's argument.  *Deitz* based its denial of class certification on its finding that the contradictory
     testimony of the named class representative established that the typicality and adequacy of representation

21   requirements were not met.  *Deitz*, 2007 WL 2015440, at *4-*5.  ("This order finds that plaintiff Deitz is
     not typical of the class he seeks to represent.").  As this Court described in this Order, both requirements

22   are clearly met here.  *Cartwright*, 2009 WL 2982887, at *5-*7.  Likewise, *Suguri v. Wells Fargo Bank*,
     2009 WL 2486546, (C.D. Cal. Aug. 7, 2009), a decision on a motion to dismiss, is also inapposite.  In

23   *Suguri*, in its discussion of reliance, the Court found Plaintiff's UCL claim deficient in part because she
     failed "to identify any specific fraudulent statement made" by the defendant.  *Id.* at *7-*8.  As shown,

24   *Suguri* is entirely distinguishable from the Cartwrights' allegations.  Furthermore, the question is not
     whether Plaintiffs have adequately alleged their claim, but whether Plaintiffs can prove their claim with

25   evidence that is predominantly common to the class.  *Suguri* does not address whether, if properly alleged,
     a plaintiff could prove materiality on behalf of a class with common proof.

26   [8] Viking contends twice—both in Section I at 3-4 and Section II.C at 13-14—that the Court erred to the
     extent it relied upon the language of warranty to grant certification on Plaintiffs' UCL, CLRA, and fraud

27   claims on behalf of class members who are subsequent owners of the Window Products.  Because
     Viking's argument on this issue both in general and with respect to reliance is the same, Plaintiffs address

28   both sections here.

1  being entirely "predicated on the language of the warranty." *See* Mot. at 3.  Hence, according to

2  Viking, all such claims are foreclosed to the extent the express warranty is limited to original

3  owners.  Viking's claim is entirely unsupported by law and is highly misleading.  While accusing

4  Plaintiffs and the Court of re-writing the language of the warranty so as to cover subsequent

5  owners—mightily thrashing a straw man argument Plaintiffs never made—Viking actually omits

6  any mention of Plaintiffs' allegations or proffered evidence.  In so doing, Viking repeatedly fails to

7  recognize that Plaintiffs' claims are based on Viking's omission of material information about the

8  defective nature of the windows.  *See Cartwright*, 2009 WL 2982887, at *12.  Moreover, Viking

9  ignores the numerous consumer and warranty decisions certifying classes which included both

10  original and subsequent owners of an alleged defective product.

11        First, Viking's argument that it did not make representations to both original and subsequent

12  owners is wrong.  Viking represented on each window that it would last a lifetime.  Viking also

13  affixed a large 8" x 10" sticker label on each window that stated "LIFETIME WARRANTY," the

14  language of which faced the front of the window.  Aside from the stickers on every window, Viking

15  itself created the message that was presented in advertisements paid for by its partners, which were

16  disseminated widely throughout the entire relevant period.  *See* DE #109 (Keegan Decl. ¶¶ 20-25).

17  The marketing materials delivered the single, uniform message that the windows would last for the

18  life of the building, even though Viking knew the sealant would not perform even half as long as

19  the window's expected life.  *Id.* (Keegan Decl. ¶ 22, 25).  That is a material representation by any

20  standard to original owners, stamped on each and every window, not to mention all of its brochures

21  and tear sheets.  It also demonstrates commonality.  Additionally, however, and as mentioned

22  above, Viking placed a sticker on *all* Series 3000 windows asserting that the windows met the "R-

23  20" certification—a marketing message visible to original and subsequent owners alike.  This

24  message represented to consumers, building professionals, and trades that the windows meet

25  AAMA standards and are watertight, neither of which was true.  Further, as discussed above, the

26  materiality of the omissions relating to the quality of the Window Products and sealant

27  demonstrates subsequent purchasers' presumed reliance.

28        Second, the Ninth Circuit and California courts have consistently upheld certification of

1    consumer and warranty classes that include both original and subsequent owners of an alleged

2    defective product.  In *Chamberlan*, an omission case, the Ninth Circuit affirmed the district court's

3    certification of a CLRA class including "[a]ll consumers residing in California *who currently own,*

4    *or paid to repair or replace* the plastic intake manifold" in a series of Ford automobiles.

5    *Chamberlan*, 402 F.3d at 956 (emphasis added).  The Ninth Circuit did not distinguish between

6    original and subsequent owners.  *Id.* at 962.  What mattered was that class members had somehow

7    purchased the product at issue.

8            Similarly, on claims for breach of express and implied warranty, *Hicks v. Kaufman &*

9    *Broad*, 89 Cal.App.4th 908, 918 (2001), held that  certification could be maintained on a class made

10   up of *"[a]ll persons or entities who own one or more homes* [in specified Kaufman developments]

11   which were constructed and marketed by [Kaufman] in which 'Fibermesh,' ... was utilized in the

12   concrete foundation slabs …."  *Hicks*, 89 Cal.App.4th at 916 (emphasis added).  Clearly, the class

13   in *Hicks* included current owners of homes in which the Fibermesh had been utilized and who had

14   not originally purchased them.

15           Likewise, in *Grays Harbor*, the district court certified a class asserting statutory consumer

16   fraud claims on behalf of all individuals and entities in the state of Washington "who *currently own*

17   Carrier 90% high-efficiency condensing furnaces ... and *former owners* of such furnaces ... whose

18   furnaces experienced CHX failure."  *Grays Harbor*, 242 F.R.D. at 571 (emphasis added).

19           These cases show that the Ninth Circuit, and courts within the Ninth Circuit, as well as

20   California courts, have all held that subsequent owners of the Window Products have actionable

21   statutory consumer protection, fraud, and warranty claims.

22           Third, on Plaintiffs' CLRA claim, each member of the class need not have seen

23   representations made by Viking because the critical question is whether Viking's misrepresentation

24   "intended to result or [did result] in the sale or lease of goods or services to any consumer."  *See* Cal

25   Civ. Code § 1770(a); *see also Keilholtz v. Superior Fireplace, Co.*, C 08-00836, 2009 WL 839076,

26   at *3-*4 (N.D. Cal. Mar. 30, 2009) ("Defendants fail to cite any authority to support the proposition

27   that a CLRA claim can be asserted only against defendants who sell goods or services directly to

28   consumers.  Plaintiffs' allegations that Defendants sold the fireplaces to home builders, who

1    installed them in homes, resulting in their sale to Plaintiffs, is sufficient to allege that Defendants

2    entered into a transaction which was 'intended to result or which result[ed] in the sale' of goods to a

3    consumer."). Here, the material omissions and representations of a lifetime warranty themselves

4    were clearly intended to facilitate the sale of the windows.  Thus, concealment of material

5    information and misstatements made to builders, contractors, or previous owners are sufficient to

6    state a CLRA claim and meet the statute's "transaction" requirement, because they were intended to

7    promote the installation of the Window Products in homes now owned by Plaintiffs.  This outcome

8    is also consistent with the CLRA's liberal construction, intended to promote the protection of

9    consumers against unfair and deceptive business practices.  *See Keilholtz*, 2009 WL 839076, at *3.

10          Finally, in its discussion of subsequent owners, Viking continues to conflate the elements of

11   an express warranty claim with those underlying statutory and fraud claims.  To the extent Viking's

12   warranty contains language limiting coverage to original owners, the Court has addressed this

13   concern by certifying Plaintiffs' claims for breach of express and implied warranties as brought on

14   behalf of the sub-class consisting of original owners.  *See Cartwright*, 2009 WL 2982887, at *9-

15   *11.

16          **3.    Common Questions Predominate For The Fraud, UCL And CLRA Claims and Are
                    Amenable to Classwide Treatment**

17

18          Viking repeats its refrain that UCL, CLRA, and fraud claims give rise to individualized

19   inquiries, *see* Opp'n at 18, 27, and contends that reliance does not present a common issue

20   amenable to class treatment.  Viking further insists, in the absence of any authority, that adopting a

21   presumption of reliance "dramatically undercuts Viking's indisputable right to rebut the

22   presumption with claimant-by-claimant proofs."  Mot. at 12.  However, as illustrated above, and as

23   this Court determined, numerous California and federal courts have held that common questions

24   predominate with respect to UCL, CLRA, and fraudulent concealment/nondisclosure claims.

25   Nothing in Viking's motion calls these conclusions into reasonable question, let alone establishes

26   they are clearly erroneous or contrary to law.

27          California courts have also historically recognized the propriety—and moreover, the

28   necessity—of class certification in cases involving common law and statutory consumer fraud

1   claims similar to those certified here.  *See, e.g., Vasquez,* 4 Cal.3d at 808[9]; *Clothesrigger, Inc. v.*

2   *GTE Corp.*, 191 Cal.App.3d 605 (1987) (reversing trial court's denial of certification of nation-wide

3   consumer fraud litigation class); *Lazar,* 143 Cal.App.3d at 128 (reversing trial court's denial of

4   certification of state-wide consumer fraud class); *Hogya v. Super. Ct.*, 75 Cal.App.3d 122 (1977)

5   (reversing trial court's denial of certification of state-wide consumer fraud class).

6         Viking ignores the fact that the common questions of law and fact raised by the proposed

7   Class and sub-Class overwhelm any individual issues.  As the Ninth Circuit has held, "[w]hen

8   common questions present a significant aspect of the case and they can be resolved for all members

9   of the class in a single adjudication, there is clear justification for handling the dispute on a

10  representative rather than on an individual basis."  *See Hanlon*, 150 F.3d at 1022.  Because proof of

11  the claim revolves around the manufacture and marketing of a product—which does not vary across

12  plaintiffs—"[p]redominance is a test readily met in certain cases alleging consumer... fraud...."  *See*

13  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citations omitted); *see, e.g.,*

14  *Blackie,* 524 F.2d at 902 ("the class is united by a common interest in determining whether a

15  defendant's course of conduct is in its broad outlines actionable").  This is true even where some

16  individual issues exist.  "When one or more of the central issues in the action are common to the

17  class and can be said to predominate, [a class action] will be considered proper ... even though other

18  matters will have to be tried separately."  *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 435 (C.D.

19  Cal. 2007) (class action appropriate where "one or more of the central issues in the action are

20  common to the class … even though other matters will have to be tried separately"); *Wiener v.*

21  *Dannon Co., Inc*., 255 F.R.D. 658, 668 (C.D. Cal. 2009).

22  [9] As the California Supreme Court observed decades ago in *Vasquez v. Super. Ct.*:

23      Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the
        utmost priority in contemporary society.…[] Frequently numerous consumers are exposed to the same
24      dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer
        would be proof for all. Individual actions by each of the defrauded consumers is often impracticable
25      because the amount of individual recovery would be insufficient to justify bringing a separate action,
        but an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers
26      produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in
        fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and
27      avoidance to the judicial process of the burden of multiple litigation involving identical claims. The
        benefit to the parties and the courts would, in many circumstances, be substantial.

28  *Vasquez*, 4 Cal.3d at 808.

1    Here, the primary legal and factual questions presented by the class claims are

2    overwhelmingly common.  They involve the design and manufacture of the Window Products,

3    Viking's omissions and representations regarding the Windows' quality, including the lifetime

4    warranty in marketing literature and the stickers placed on every window.  These questions involve

5    Viking's course of conduct and do not vary among class members. *See, e.g., Grays Harbor,* 242

6    F.R.D. at 573 ("Common questions predominate here.  One common question is whether Carrier's

7    furnaces are defective by design, regardless of any individual factors[.]  Another core issue is

8    whether and when Carrier knew about the defect, and whether it had a duty to disclose that fact to

9    consumers."); *Chamberlan,* 223 F.R.D. at 526-27 ("[C]ommon questions include whether the

10   design of the plastic intake manifold was defective, whether Ford was aware of the alleged design

11   defects, whether Ford had a duty to disclose its knowledge, whether it failed to do so, whether the

12   facts that Ford allegedly failed to disclose were material, and whether the alleged failure to disclose

13   violated the CLRA. Common questions thus predominate over individual questions in this case.").

14   As in these cases, the factual and legal issues relevant to reliance and materiality are

15   common and their classwide resolution appropriate.  Indeed, as the *Mass. Mutual* court held, "the

16   ultimate question of whether the undisclosed information was material was a common question of

17   fact suitable for treatment in a class action."  *See Mass. Mut.,* 97 Cal.App.4th at 1294; *see also*

18   *Mazza,* 254 F.R.D. at 626 (concluding that common issues of fact predominate as to the question of

19   materiality under the CLRA).

20   **C.  Plaintiffs Need Not Show Individual Proof That Every Window Product Has Failed
      to Maintain Warranty or Fraud Claims**

21

22   To support the assertion that Plaintiffs' claims are not actionable without individual proof

23   that every Window Product has failed or manifested a defect, Viking makes sweeping and unclear

24   generalizations about the law and the facts.  *See* Mot. at 15-24.  But Viking has been down this road

25   before.  Section III is simply a continuation of Viking's early "proof of malfunction" theory.  *See*

26   Opp'n at 25.  Despite the use of slightly different terminology, Viking's argument does not even

27   come close to approaching its burden on a motion for reconsideration.  Moreover, as the Court

28   properly noted in its Order, it is based upon an incorrect reading of *American Suzuki Motor Corp. v.*

1    *Super. Ct.*, 37 Cal.App.4th 1291, 1296-99 (1995).

2        **1.   Classwide Proof of Manifestation of a Defect is Not Necessary in Fraud and**
     **Warranty Cases**
3

4        California law observes a clear distinction between product defect claims sounding in

5    negligence and strict liability on the one hand, *see, e.g., Zamora v. Shell Oil Co.*, 55 Cal.App.4th

6    204 (1997); *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal.App.4th 1318 (1995),

7    and fraud-based claims arising out of a defendant's concealment of, or misrepresentations regarding

8    an inherent product defect that results in a propensity for product failure on the other.  *See Khan v.*

9    *Shiley Inc.*, 217 Cal.App.3d 848, 857–58 (1990).  Although Viking attempts to convince this Court

10   otherwise, plaintiffs are not required under California law to prove that a product is "defective" to

11   prevail on a fraud or consumer protection claim arising out of a defendant's misrepresentation or

12   concealment of material information.  Unlike other tort-based legal theories "in which the safety

13   and efficacy of the product is assailed, [a] fraud claim impugns the defendants' *conduct*," and thus

14   obviates the need for a court to focus on many of the purportedly individualized issues that defeat

15   class certification.  *Khan*, 217 Cal.App.3d at 857 (emphasis in original).  Here, as a result, on class

16   certification, Plaintiffs and class members are not required to prove that each and every one of

17   Viking's Window Products is "defective" or has prematurely failed or will prematurely fail (as

18   Viking repeatedly suggests in opposition to certification).  "For purposes of establishing fraud, it

19   matters not that the [product at issue] is still functioning, arguably as intended."  *Khan*, 217

20   Cal.App.3d at 857.  Instead, fraud claims arising out of defective products merely require proof that

21   the defendant concealed from the proposed class material, adverse information about the product.

22   *Khan*, 217 Cal.App.3d at 857–58.  To establish the requisite causation for a fraud claim, Plaintiffs

23   and the Class need only prove that (1) Viking knowingly concealed or misrepresented material facts

24   regarding the propensity of its product to prematurely fail, and (2) a reasonable person would not

25   have purchased the product had they known such facts.[10]

26   _____

     [10] Viking's reliance on two unpublished decisions to argue that individualized issues are invoked here is
     unavailing.  *See Sanchez v. WalMart Stores, Inc.*, No. Civ. 2:06-CV-02573, 2009 WL 1514435, (E.D. Cal.
27   May 28, 2009) and *Arabian v. Sony Electronics, Inc.*, No. 05-CV-14741, 2007 WL 627977 (S.D. Cal. Feb.
     22, 2007).  *Sanchez* involved allegations that defendant failed to warn that the stroller it sold came
28   equipped with a "dangerous, unguarded and unmitigated pinch point" that created an unreasonable

1    Nor do Plaintiffs' warranty claims require individual proof that a defect has manifested in

2  every Window Product.  That is because a claim for breach of warranty "does not require proof the

3  product has malfunctioned" where the defective product was substantially likely to fail before the

4  end of its expected life.  *See, e.g., Hicks v. Kaufman & Broad*, 89 Cal.App.4th 908, 918 (2001);

5  *Anthony v. Gen. Motors*, 33 Cal.App.3d 699, 702, 704-05 (1973) (holding that it is "unnecessary to

6  produce individualized evidence [of] wheel failure or personal injury or property damage as a result

7  of wheel failure"); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.* (No. II), No. 03-4558, MDL

8  No. 1687, 2008 WL 4126264, at *14 (D.N.J. Sep. 2, 2008) (applying California breach of warranty

9  law in multi-state class action, citing *Hicks* with approval and stating that "[a] California court

10  likely would not find that product malfunction is a necessary element of [plaintiff's] breach of

11  warranty claims.")

12    Notably, Viking does not cite a single decision binding on this Court denying class

13  certification involving claims for express or implied warranty where the manifestation of the defect

14  invoked individual issues.  The only California case it cites is *American Suzuki Motor Corp. v.*

15  *Super. Ct.*, 37 Cal.App.4th 1291 (1995), which this Court correctly found to be inapposite.  *See*

16  *Cartwright*, 2009 WL 2982887, at *11. The plaintiffs in *American Suzuki* alleged the design of the

17  Samurai "'create[d] an unacceptable risk of a deadly roll-over accident when driven under

18  reasonably anticipated and foreseeable driving conditions....'" *American Suzuki*, 37 Cal.App.4th at

19  1293.  The court granted defendant's petition for a writ of mandate decertifying the class because

20  there was insufficient evidence of a defect, in that "nearly all" of the vehicles were not involved in

21

22  potential for harm.  *See Sanchez*, 2009 WL 1514435, at *1.  Denying certification, the court found that the
typicality requirement had not been met because there was no way to determine whether any particular
23  class member could be viewed as having received a "devalued" stroller, or had "replaced" it, as a result of
the non-disclosure of the safety information.  *Id.*  Thus, unlike here, there could be no finding that the
24  information omitted was *material* in light of what a reasonable consumer would expect.  By the same
token, *Arabian* was brought on behalf of a class of nationwide and Canadian consumers who had
25  purchased allegedly defective computers.  *Arabian*, 2007 WL 627977, at *1.  The court denied class
certification on numerous grounds, not the least of which was that the plaintiffs had failed to demonstrate
26  that California law would apply to out-of-state or Canadian class members, *see id.* at *10.  Also, plaintiffs
had not even proffered evidence that the various symptoms the malfunctioning computers were
27  experiencing constituted a defect.  *See id.* at *11-*12.  Here, by contrast, the Court found that Plaintiffs
have alleged and proffered evidence that Viking uniformly withheld and concealed information from and
28  made uniform misrepresentations to a California class as a whole.  *Cartwright*, 2009 WL 2982887, at *12.

1   rollover accidents.  *Id.* at 1298-99.  As the *Hicks* court recognized, the implied warranty claims in

2   *American Suzuki* "were not decided on the ground a defect must have resulted in the product

3   malfunctioning in order to give rise to a suit for breach of warranty. Rather, they were decided on

4   the ground that since there was no history of the products failing they were not, as a matter of law,

5   defective." *Hicks*, 89 Cal.App.4th at 922-23.[11]

6          Here, as the Court rightly observed, Plaintiffs' warranty claims "are based on their

7   allegations and experts' opinions that defendant's windows suffer from an inherent defect that

8   makes it substantially likely that they will fail before the end of their expected, useful life.  The

9   question of whether defendant's window products are inherently defective is the predominate,

10  common question as to all warranty sub-class members." *Cartwright*, 2009 WL 2982887, at *11.

11  But Viking wholly disregards the governing law and Plaintiffs' allegations, referring to the Court's

12  analysis dismissively as the "defect" theory.  *See* Mot. at 17.

13         Through a tortured interpretation of the language of its lifetime warranty, Viking contends

14  that Plaintiffs' claims – even those of original owners – are not actionable.  After over two years

15  since removing this action to this Court, a motion to dismiss, and a motion for class certification,

16  Viking argues that Plaintiffs have not adequately alleged claims unless they can show a Window

17  Product—despite being defective or substantially certain to fail well before the end of its useful

18  life—has already "malfunction[ed] in a way that significantly impairs its operation."  *See* Mot. at

19  17.  As described above, this is simply not the law.  Viking's claim that Plaintiffs and the Court are

20  "re-writing the warranty and representation that is the heart of the express warranty and fraud

21  ───────────────────────────

[11] The Sixth Circuit addressed similar arguments in *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir.

22  2006).  *Daffin* upheld class certification of an express warranty claim against Ford based upon allegedly
    defective throttles.  As the Sixth Circuit explained:

23        Daffin's claim is typical of the class because the class members' theory is that Ford breached its
          express warranty by providing vehicles with defectively designed throttle body assemblies, causing

24        Daffin and other class members to receive vehicles worth less than vehicles that conform to the
          promises allegedly contained in the warranty agreement.... The mere fact that Daffin's throttle body

25        assembly stuck, while other class members' throttles have not stuck, does not render Daffin atypical.
          Daffin and the other class members' claims arise from the same practice (delivery of non-conforming

26        vehicle), the same defect (the allegedly defective throttle body assembly), and are based on the same
          legal theory (breach of express warranty). Typicality is satisfied despite the different factual

27        circumstances regarding the manifestation of the accelerator sticking and Ford's attempts to remedy
          manifested sticking.

28  *Id.* at 552–53 (citations omitted).

1    claims," *see* Mot. at 16, is simply false.  Instead, it is Viking that attempts to re-write Plaintiffs'

2    allegations through a strained parsing of words.

3          A reasonable reading of the language of Viking's warranty assuredly does not support

4    Viking's unfounded claim that the Window Products live up to their warranty if less than 100

5    percent of the seals on them fail.  *See* Mot. at 19 ("[W]hile plaintiffs here assert that the poor seals

6    are frequent and are due to design error, they never assert that Viking windows are unmerchantable

7    if less than 100% of the seals are sound").  While Viking may wish it so, Plaintiffs' claims are not

8    barred by some imaginary "minimum" level of quality that Viking says exists.  Indeed, under

9    Viking's theory, each individual class member would be forced to wait for noticeable water leakage

10   before bringing her claim.  In other words, Viking claims that if the Window Products fail less than

11   100 percent of the time or meet some "minimum" level of quality, then they are *per se* not

12   defective, no claim is actionable, and the class should be decertified.  For good reason, this position

13   has never been adopted by *any* court, and does not justify decertification here.  Not only does it fly

14   in the face of *Hicks*, it ignores the entire purpose of consumer class actions.

15         Viking's rhetoric is particularly disingenuous in light of Viking's own testing which showed

16   an alarmingly high failure rate of 43 percent.  *See* DE #135 (Birka-White Reply Decl. ¶¶ 7-8,

17   Exh. D, Wolf 30:20-25; Exh. E, Tsongas 21:21-24; Cassell Decl. ¶35).  In addition, all Viking

18   windows were represented to have an R-20 rating, a certification which requires that the windows

19   pass the testing methodology as set forth in ASTM 1105 or its equivalent, which many of them

20   clearly do not.  *See* DE #135 (Birka-White Reply Decl. ¶8, Exh. E, Tsongas Depo. at 17:5-25;

21   47:14-25, 48:1-5, Cassell Decl. ¶41).

22         Even were Viking's interpretation of the test for a warranty claim to prevail, this would still

23   be a question common to the class.  More importantly, Viking's attempt now to advance an

24   argument relating to the warranty's language that was clearly available earlier in connection with its

25   motion to dismiss is a prime example of the type of litigation "game of hopscotch" that courts do

26   not countenance on motions for reconsideration.  *See Cochran v. Quest Software, Inc.*, 328 F.3d 1,

27   11 (1st Cir. 2003).

28

1

2

**2.** **Viking's Additional Cases Do Not Merit Reconsideration of the Predominance Inquiry on Any of Plaintiffs' Claims**

3       Viking selectively cites distinguishable decisions denying certification or granting dismissal

4   for reasons irrelevant to this case.  These cases fail to demonstrate any new evidence or change in

5   the controlling law governing certification.  For example, Viking cites a series of dismissals on

6   Fed.R.Civ.P. 12(b)(6) from outside the Ninth Circuit that involved product liability actions where

7   plaintiffs alleged they would suffer from lost or diminished resale value on their cars.  *See e.g.,*

8   *Briehl v. Gen. Motors. Corp.*, 172 F.3d 623, 628 (8th Cir. 1999) ("While the Plaintiffs affirmatively

9   state that they do not seek damages as a result of actual injury or property damage, they do allege

10  that they have suffered economic harm in the form of lost resale value"); *Yost v. Gen. Motors Corp.*,

11  651 F. Supp. 656, 657 (S.D.N.Y. 1986) (damage alleged is that plaintiff's car lost a portion of its

12  value in the used car market); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)

13  (affirming dismissal of warranty claims "based solely on the 'diminished resale value' of their

14  diesel-equipped cars").  These cases are clearly inapposite, however, as Plaintiffs are not claiming

15  that Viking's Window Products possess a "diminished resale value."  Plaintiffs allege the Window

16  Products are defective and have failed or will likely fail.

17      Viking also cites *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y.

18  1982) which, like *American Suzuki*, denied class claims for breach of implied warranty where radial

19  tires with an alleged defect were deemed to be "fit for [their] ordinary purpose[.]"  *Id.* at 603-04.

20  But *Feinstein,* like *American Suzuki*, was "decided on the ground that since there was no history of

21  the products failing they were not, as a matter of law, defective."  *Hicks*, 89 Cal.App.4th at 923.  As

22  *Hicks* explained:

23          [I]n contrast to the cars and tires in *American Suzuki* and *Feinstein*, plaintiffs in the case at
            bench presented expert testimony based on observations and analysis showing foundations
24          containing Fibermesh "will someday most likely crack badly" and cause problems such as
            insect and vermin infestation, bumps in the floor and premature wearing of carpeting and
25          damage to vinyl floor coverings and ceramic tile.

26  *Id.*

27      Viking also points to *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 828

28  (2006), which affirmed a trial court's dismissal of an express warranty claim based on the failure to

1    disclose a latent defect.  But *Daugherty* dealt with whether warranty claims could stand where the

2    defect manifested itself *after the expiration of the warranty period*.  Clearly, the lifetime warranty at

3    issue here has not expired.  Likewise, the representations in this case were that the Window

4    Products would last at least "as long as you own your home."

5         Viking makes much of the elements to be proven in claims for negligence—duty, breach,

6    causation, and damages—asserting that they need be proven here as to each window.  *See* Mot. at

7    17. ("All roads lead to performance as the test of breach, fraud, and causation of injury.").  But

8    Viking's borrowing of the elements of negligence to analyze Plaintiffs' other claims is unhelpful

9    and would erroneously impose a negligence framework on this Court's treatment of Plaintiffs' other

10   claims.[12]

11        Viking's error is amply demonstrated by the inapposite cases on which it relies.  For

12   example, *Zamora v. Shell Oil Co.*, 55 Cal.App.4th 204 (4th Dist. 1997), a case Viking cites in

13   support of its "proof of malfunction" theory, in fact involved only negligence and strict liability

14   claims.  Thus, *Zamora* is inapplicable to this Court's analysis of Plaintiffs' UCL, CLRA, fraud,

15   warranty, or restitution claims.  Likewise, in *Yost*, "the basic problem in this case is that plaintiff

16   Yost has not alleged that he has suffered any damages.  He has not stated that the engine in his

17   vehicle is defective in any way."  *Yost*, 651 F.Supp at 657-58.  Here, conversely, the Cartwrights

18   have in fact alleged damages and the need for restitution. The windows in their home have failed

19   and will fail, and require replacement.

20        Furthermore, at the class certification stage, it is not appropriate, from an ascertainability,

21   manageability or class definition perspective, to focus on the issue of whether each individual class

22   member has suffered a manifested product failure.  *Hicks*, 89 Cal.App.4th at 908 (manifest damage

23   to a concrete slab was not a "precondition" for class membership). It is axiomatic that a class should

24   be defined, as it is here, according to objective criteria that do not depend on a resolution of the

---

[12] Moreover, throughout its discussion of "causation" and "proof of malfunction," Viking continually
makes reference to disputed issues of fact.  *See* Mot. at 10-12, 19-20, 23.  This constitutes a premature
attempt to hold summary judgment on the issue of whether the Window Products are defective.  And while
Plaintiffs are confident they will prevail on these issues at trial, such an attempt is improper at the class
certification stage.  The Court has not yet made findings of fact.  Instead, as the Court held, "[u]nder the
evidence presented in support of this motion, the court cannot find that defendant's products were, as a
matter of law, not defective." *Cartwright*, 2009 WL 2982887, at *11.

1   merits of the case.  *See Manual for Complex Litigation 4th* § 21.222, p. 270 (2004)

2    ("[class] definitions … should avoid criteria that … depend on the merits. Such definitions frustrate

3   efforts to identify class members, [and] contravene the policy against considering the merits of a

4   claim in deciding whether to certify a class.... "); *2 Newberg on Class Actions, Defining the Class*

5   § 6.14, pp. 614–615 (class should be defined "in objective terms capable of membership

6   ascertainment without regard to the merits of the claim or the seeking of particular relief"); Charles

7   A. Wright, et al., *Federal Practice and Procedure: Civil 3d* § 1760, pp. 136–137 (class should be

8   ascertainable at the outset of litigation). As the *Manual for Complex Litigation* suggests, class

9   plaintiffs should objectively define a proposed class to consist of persons and entities "that

10   purchased specified products from the defendan[t]… during a specified time period." *Manual for*

11   *Complex Litigation 4th* § 22.222, p. 335-336 (2004)

12   . Plaintiffs have tailored their class definition in this case to meet these requirements.

13
   **D.  <u>The Court Did Not Err in Finding that the Superiority Requirement Had Been Met
        in Light of *Deist*</u>**
14

15       The Court has now repeatedly rejected Viking's assertions that the *Deist* action is

16   "identical" to this case and that its existence defeats Rule 23(b)(3)'s superiority requirement.  *See,*

17   *e.g., Cartwright*, 2009 WL 2982887, at *14-*15; June 19, 2008 Order Denying Viking's Motion for

18   Protective Order to Stay Discovery Pending Class Determination in *Deist* at 4.  *Deist* covers at most

19   only 20% of the *Cartwright* Subclass and, as to those Subclass members, *Deist* does not include any

20   UCL, CLRA, fraudulent concealment/nondisclosure, and restitution claims.  While appearing to

21   concede this argument, Viking still wrongly claims that were this Court to decertify the non-

22   warranty claims the existence of *Deist* would defeat superiority.  *See* Opp'n at 24-27.  This is

23   wrong.  First, as already established, Viking has not shown that the Court's certification of any of

24   these claims was clearly erroneous.  Second, Viking fails to cite a *single* case from within the Ninth

25   Circuit to support this argument and bases its position on several mischaracterizations of this

26   Court's Order.

27       As this Court observed, courts often certify concurrent class actions arising from similar

28   facts.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (affirming Rule 23

1   settlement class of a nationwide class where similar Georgia state class action was pending); *In re*

2   *Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1069 (N.D. Cal. 2007)

3   (concurrent FLSA and UCL class actions); *Romero v. Producers Dairy Food, Inc.*, 235 F.R.D. 474,

4   491 (E.D. Cal. 2006); *see Anthony*, 33 Cal.App.3d at 708 ("[T]he pendency of another action,

5   whether in class action cases or otherwise, is not a ground for dismissal."). As the Court correctly

6   recognized, "the claims and purported class in this action are broader than those in the Deist

7   action." *See Cartwright*, 2009 WL 2982887, at *15 (finding that in contrast to *Deist*, which

8   consists only of owners who still remain current owners of window products, plaintiffs' proposed

9   class consists of (1) original owners who are also current owners; (2) current owners who were not

10  original owners; and (3) former owners). Thus, even on the warranty claims alone, the class in this

11  action is significantly broader than the class in *Deist*.

12       Contrary to Viking's mischaracterization, this Court did *not* hold that whether a pending

13  state class action was brought on behalf of the state or a public agency controls the superiority

14  requirement. Rather, in response to Viking counsel's adamant assertions at oral argument that the

15  Ninth Circuit's decision in *Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975),

16  precludes a finding of superiority, this Court pointed out that *Kamm* rested in large part on the fact

17  that "significant relief had been realized through the state court action" brought by the Attorney

18  General and the Real Estate Commissioner of California. *See Cartwright*, 2009 WL 2982887, at

19  *14.[13]

20       Further, nowhere has this Court held that its certification of the Class in this action is

21  tantamount to a finding that "federal courts are a superior forum to California state courts for

---

[13] Viking's reliance on *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 191, n.3 (4th Cir. 2006), and *Real Estate Alliance, Ltd. v. Sarkisian,* No. 05-cv-3573, 2007 WL 2814591, at *5-*6 (E.D. Pa. Sept. 24, 2007), as examples of decisions supporting its Rule 23(b)(3) argument also is misplaced. In *Gregory*, the Fourth Circuit reversed class certification because the trial court had failed even to consider whether a parallel bankruptcy proceeding that dealt with the same controversy rendered a class action superior under Rule 23(b)(3). *Gregory*, 442 F.3d at 191 ("It was an abuse of discretion for the district court to find the class action superior without analyzing whether it was superior to the adversary proceeding…."). Here, by contrast, this Court has thoroughly considered this prong of the superiority requirement. Likewise, *Sarkisian* presents an entirely inapposite substantive and procedural context from the instant case. *Sarkisian* was a defendant patent class action for infringement, and the court determined Rule 23(b)(3) was not met where the same defendant had sued the same plaintiff in another proceeding. *See Sarkisian*, 2007 WL 2814591, at *5.

1   resolving matters of California state law." *See* Mot. at 26.  The Court has *never* taken this position.

2   Viking's attempt to find an *Erie* problem where one does not exist is simply a last-ditch effort to

3   use *Deist* to create an issue that weighs against class certification.  *Deist*, however, does not bar

4   certification here.  Viking has failed to show any error—let alone clear error—in the Court's

5   finding that class treatment is superior under Rule 23(b)(3).

6   **IV. CONCLUSION**

7         For the reasons set forth above, this Court's Order was not clearly erroneous, or erroneous at

8   all.  Plaintiffs respectfully requests that the Court deny Viking's motion for reconsideration.

9

10   Dated: October 30, 2009          Respectfully submitted,

11                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

12

13                         By: _____

14                            Robert J. Nelson

15                         Robert J. Nelson (State Bar No. 132727)
                         Steve M. Swerdlow (State Bar No. 250344)

16                         Embarcadero Center West
                         275 Battery Street, 29th Floor

17                         San Francisco, CA  94111 3339
                         Telephone:  (415) 956 1000

18                         Facsimile:  (415) 956 1008

19                         David M. Birka-White (State Bar No. 85721)
                         BIRKA-WHITE LAW OFFICES

20                         411 Hartz Avenue, Suite 200
                         Danville, CA  94526

21                         Telephone:  (415) 616-9999
                         Facsimile:  (415) 616-9494

22                         *Attorneys for Plaintiffs*

23                         *Lynda Cartwright and Lloyd Cartwright on Behalf of*
                         *Themselves and All Others Similarly Situated*

24

25

26

27

28

CASE NO.  2:07-CV-2159-FCD-EFB
OPPOSITION TO RECONSIDERATION OF CLASS
CERTIFICATION ORDER