1   RICHARD M. WILLIAMS (SBN 68032)
    KEVIN P. CODY (SBN 96355)
2   J. MARK THACKER (SBN 157182)
    **ROPERS, MAJESKI, KOHN & BENTLEY**
3   50 W. San Fernando St., Suite 1400
    San Jose, California  95113
4   Telephone:  (408) 287-6262
    Facsimile:  (408) 918-4501

5
    DAVID M. BERNICK (*Pro hac vice*)
6   **KIRKLAND & ELLIS LLP**
    601 Lexington Avenue
7   New York, New York  10022
    Telephone:  (212) 446-4800
8   Facsimile:  (212) 446-4900

9   Attorneys for Defendant
    VIKING INDUSTRIES, INC., an Oregon
10  corporation.

11              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
12

13

14  LYNDA CARTWRIGHT and LLOYD          | CASE NO.  2:07-cv-2159 FCD/EFB
    CARTWRIGHT on behalf of themselves and all
15  others similarly situated,
                                        **DEFENDANT VIKING INDUSTRIES,
16              Plaintiffs,             INC.'S REPLY IN SUPPORT OF ITS
                                        MOTION FOR RECONSIDERATION OF
17       v.                             THE CLASS CERTIFICATION ORDER**

18  VIKING INDUSTRIES, INC., an Oregon
    corporation, and Does 1 through 100, inclusive,
19                                      **Date:      November 13, 2009**
                Defendants.            **Time:      10:00 a.m.
20                                      Courtroom:  2
                                        Honorable Frank C. Damrell, Jr.**
21
                                        **Complaint filed:  August 16, 2007
22                                      Trial Date:  August 31, 2010**

23

24

25

26

27

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................ii

LEGAL STANDARD ..............................................................................................1

ARGUMENT ..........................................................................................................1

I.      REGARDING ERROR NO. 1:  THE R-20 STICKER DOES NOT
        SOMEHOW COVER OVER THE DISPOSITIVE, LIMITING LANGUAGE
        OF THE LIFETIME WARRANTY. .............................................................1

II.     REGARDING ERROR NO. 2:  THE PRESUMPTION OF RELIANCE IS
        NOT APPROPRIATE FOR PLAINTIFFS' STATUTORY AND COMMON
        LAW FRAUD CLAIMS. ...........................................................................4

III.    REGARDING ERROR NO. 3:  ACTUAL FAILURE IS AT THE HEART
        OF THE WARRANTY INQUIRY. ..............................................................10

IV.     IF THE STATUTORY AND COMMON LAW FRAUD CLAIMS ARE
        NOT CERTIFIED, THE CLASS IS DUPLICATIVE OF THE *DEIST*
        CLASS AND THE SUPERIORITY REQUIREMENT IS NOT SATISFIED. ..............12

CONCLUSION ......................................................................................................12

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................5

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ...................................................3

*Cohen v. DirectTV, Inc.,*
    ___ Cal. App. 4th ___, 2009 WL 3069116 (Cal. Ct. App. Sept. 28, 2009) ...............4, 7, 8, 9

*Cummings v. Connell,*
    402 F.3d 936 (9th Cir. 2005) .....................................................5

*Deitz v. Comcast,*
    2007 WL 2015440 (N.D. Cal. July 11, 2007) ..............................6

*Engalla v. Permanente Med. Group, Inc.,*
    15 Cal. 4th 951 (1997) ...............................................................8

*Feitelberg v. Credit Suisse First Boston, LLC,*
    134 Cal. App. 4th 997 (2005) ....................................................5

*Gonzalez v. Proctor and Gamble Co.,*
    247 F.R.D. 616 (S.D. Cal. 2007) ...............................................6

*Gray's Harbor Adventist Christian School v. Carrier Corp.,*
    242 F.R.D. 568 (W.D. Wash. 2007) ..........................................6

*Hicks v. Kaufman & Broad Home Corp.,*
    89 Cal. App. 4th 908 (2001) ....................................................11

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ......................................................passim

*Kaldenbach v. Mutual of Omaha Life Ins. Co.,*
    ___ Cal. App. 4th ___, 2009 WL 3151813 (Cal. Ct. App. Sept. 30, 2009) .................7, 8, 10

*Khan v. Shiley Inc.,*
    217 Cal. App. 3d 848 (1990) ...................................................11

*Laster v. T-Mobile USA, Inc.,*
    407 F. Supp. 2d 1181 (S.D. Cal. 2005) ......................................3

*Lavie v. Proctor and Gamble Co.,*
    105 Cal. App. 4th 496 (2003) ....................................................3

*Lovejoy v. AT&T Corp.,*
    92 Cal. App. 4th 85 (2001) ........................................................7

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082 (1993) ........................................................4, 7, 8

*Poulos v. Caesars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004) ..................................................6, 7

*Stickrath v. Globalstar, Inc.,*
    527 F. Supp. 2d 992 (N.D. Cal. 2007) .......................................3

*Vasquez v. Superior Court,*
    4 Cal. 3d 800 (1971) .................................................................8

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB

1

*Vuyanich v. Republic Nat'l Bank of Dallas,*
   82 F.R.D. 420 (N.D. Tex. 1979)..................................................................9

2

3

**STATUTES**

28 U.S.C. § 2072(b)....................................................................................5

4

**RULES**

5

Fed. R. Civ. P. 59(e)(2) ..............................................................................1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-iii-

**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO. 07-02159 FCD/EFB**

Plaintiffs' opposition addresses arguments Viking never raised and attempts to defend class certification with a new theory of liability that has no factual support in the record. But Plaintiffs fail to do what they must do -- directly answer the three clear errors clearly identified in Viking's motion.

## LEGAL STANDARD

Plaintiffs' recitation of the legal standard for reconsideration suggests that it is appropriate *only* when there are new or different facts before the Court. (Opp. Mem. at 2-3) The plain language of Rule 59, however, states that reconsideration should also be given on a showing of "clear error." Fed. R. Civ. P. 59(e)(2). That is the ground on which Viking's motion is based. This prong of Rule 59 necessarily implicates a second look at issues previously raised -- it is, after all, a motion for *re*consideration. Local Rule 78-230 is not to the contrary. In addition to permitting reconsideration on the basis of new or different facts, Local Rule 78-230(k) permits reconsideration on a showing of "what other grounds exist for the motion." The "clear error" prong of Rule 59 is exactly one such ground.

## ARGUMENT

I.   **REGARDING ERROR NO. 1:   THE R-20 STICKER DOES NOT SOMEHOW COVER OVER THE DISPOSITIVE, LIMITING LANGUAGE OF THE LIFETIME WARRANTY.**

Fraud, CLRA, UCL, and warranty claims must rest on statements that were actually made, not plaintiffs' counsel's characterizations of them. Viking's motion zeroes in on the plain language of the Lifetime Warranty upon which all of Plaintiffs' claims are predicated. Because the warranty itself recites that it is only "provided to the ***original*** homeowner and may ***not be assigned or transferred***" (Mem. at 4 (emphasis added)), it is clearly error to effectively modify the warranty by certifying a class that includes people that the warranty did not include. Plaintiffs' inability to address this is palpable -- Plaintiffs' brief tracks the structure of Viking's motion, which enumerates the three errors in sequence, but their brief skips the first error.

Looking everywhere but at the Lifetime Warranty that was once the heart of their case, Plaintiffs now take a magnifying glass to read an industrial code on a sticker placed under the top sill, a designation that is akin to the little mark regarding glass type that appears in the corner of car

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1  windows.  This is the "R-20" sticker.  (*See* R-20 sticker, attached as Exhibit D to the declaration of

2  Plaintiffs' expert James Cassell, and reproduced here as Exhibit A to J. Thacker Decl.)

3       Plaintiffs  now  argue  for  the  first  time  that  "[t]he  R-20  certification  constitutes  a

4  representation  to  consumers,  building  professionals,  and  trades  that  the  windows  meet  AAMA

5  standards and that the windows are watertight."  (Opp. Mem. at 11)  But the sticker itself shows

6  otherwise.   First,  the  sticker  is  silent  about  watertightness.   Moreover,  Plaintiffs'  own  expert

7  explains that the sticker merely "asserts that the windows are rated to HS-R20."  (Dkt. 110, Cassell

8  Decl. ¶ 41)  And there is nothing in the record indicating that any Plaintiff knows what that means,

9  let alone that any Plaintiff decided to purchase Viking windows because they were rated to "HS-

10  R20."

11       In fact, the statements of Mr. Cassell, who purports to be a window expert for Plaintiffs,

12  demonstrate  that  even  he  fails  to  have  a  true  grasp  of  the  meaning  of  an  HS-R20  designation.

13  Contrary to Mr. Cassell's assertion, an R-20 rating has nothing to do with either ASTM E1105 or

14  AAMA  502-08.   (Dkt.  119,  Cruz  Decl.  ¶ 19(b),  (i))   These  are  both  *field*  tests  that  might  be

15  conducted  after  the  windows  have  been  in  service,  and  well  after  they  have  received  their  rating

16  based on *laboratory* tests conducted under laboratory conditions.  (*Id.*)

17       The fact that Plaintiffs' own window expert is mistaken as to the significance of the HS-R20

18  rating and how that rating is obtained serves only to underscore Viking's point here about R-20.

19  The point is that lay consumers (the class members), even in the unlikely event they happened to see

20  the AAMA sticker, would have no idea what it means -- in other words, nothing on that sticker

21  "represents" anything to them.

22       Plaintiffs' own record demonstrates further the absurdity of their R-20 gambit:

23   • In all of the pictures taken by the experts who swarmed over the Cartwright home, an R-20
      sticker is nowhere visible.

24

25   • In all of the pictures taken by the same experts of other homes with Viking windows, an R-
      20 sticker is nowhere visible.

26

27   • In all of the testimony by, and briefs about, the Cartwrights themselves, there is not one
      word about R-20.

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-2-
**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**

1   The obvious fact is that the Cartwrights are not even aware of the sticker, and their experts and

2   lawyers did not care about whether it was on their windows.  This, of course, makes sense, because

3   the designation "HS-R20" has no meaning standing on its own.  Absent expert knowledge, it is just

4   a cipher.  Consumer awareness and understanding of HS-R20, much less reliance on it in making a

5   purchasing decision, are nowhere in evidence in this case.  Awareness and reliance become even

6   more implausible in the case of subsequent owners.  They are making a decision about purchasing

7   an entire home, not the windows separately, and certainly would not choose to buy a home based

8   upon a technical sticker tucked under the top sill of a window.

9        Nor can the law give the stickers any greater significance.  First, the opaque technical

10  statement on the R-20 sticker is not a representation that would deceive, and therefore be actionable

11  by, the average consumer.  *See, e.g.*, *Lavie v. Procter and Gamble Co.*, 105 Cal. App. 4th 496, 508

12  (2003) (alleged misrepresentations are only actionable under the UCL if "it is probable that a

13  significant portion of the general consuming public . . . could be misled.");  *Clemens v.*

14  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("Generally, to be actionable under

15  the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable

16  consumer.");  *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007)

17  ("[S]tatements are only actionable under the UCL and CLRA if they are likely to deceive a

18  reasonable consumer.")

19       Nothing in the record supports a contrary conclusion.  If consumers did not read and

20  understand "R-20," no action for deceit of any kind can lie based upon the sticker.  *See, e.g.*,

21  *Stickrath*, 527 F. Supp. 2d at 996 (holding that UCL and CLRA claims failed absent allegations that

22  the plaintiffs read the alleged misrepresentations before purchase and that such misrepresentations

23  were a substantial factor in the purchase decision);  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d

24  1181, 1194 (S.D. Cal. 2005) (holding that the plaintiffs had no UCL claim when they did not allege

25  they saw, read, or relied on the advertisements at issue).

26       Plaintiffs have not and cannot begin to demonstrate that their new R-20 sticker theory can

27  provide any support for class certification.  Certifying a consumer class action here, based upon an

28  industrial sticker that was rarely seen and never understood, would render the commonality and

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-3-

1  predominance requirements meaningless.  Accordingly, California law rejects purported consumer

2  class actions that feature technical specifications.  *See Cohen v. DirectTV, Inc.*, ___ Cal. App. 4th

3  ___, 2009 WL 3069116, *9 (Cal. Ct. App. Sept. 28, 2009) (denying certification of CLRA and UCL

4  claims based upon alleged misrepresentations involving technical terms about a high-definition

5  television because the class would include, among other groups, "subscribers who only saw and/or

6  relied upon advertisements that contained no mention of technical terms regarding bandwidth or

7  pixels").[1]

8           Thus, while they claim that Viking has "tortured" the meaning of the Lifetime Warranty just

9  by quoting it (Opp. Mem. at 23), Plaintiffs have no answer to the first clear error -- that certification

10  effectively alters the limited promise made in the Lifetime Warranty -- and the sticker cannot stand

11  in where the Lifetime Warranty has failed to support certification.

12  **II.     REGARDING ERROR NO. 2:   THE PRESUMPTION OF RELIANCE IS NOT**
    **APPROPRIATE FOR PLAINTIFFS' STATUTORY AND COMMON LAW FRAUD**
13  **CLAIMS.**

14           Plaintiffs' attempt to defend the second error -- the legal presumption that every member of

15  the classes relied on the warranty -- has multiple fatal flaws.

16           ***First***, Plaintiffs make no serious effort to salvage certification of their CLRA or fraudulent

17  concealment claims.  They cite virtually no law for the proposition that reliance may be presumed

18  for their claims under circumstances similar to those in this case.  The cases that refuse to presume

19  reliance for CLRA and fraud claims are clear and plaintiffs cannot credibly distinguish them.  (*See*

20  Mem. at 5-14)   Indeed, the California Supreme Court has expressly rejected pleas to afford a

21  presumption of reliance for common law fraud, which includes fraudulent concealment, and there is

22  no reason to treat any of the other fraud-based claims differently.  *See Mirkin v. Wasserman*, 5 Cal.

23  4th 1082, 1108 (1993).

24           ***Second***, with respect to the UCL claim, Plaintiffs mistakenly insist that reliance is not even

25  a necessary element.  (Opp. Mem. at 6)  The California Supreme Court says otherwise.  *See In re*

26  *Tobacco II Cases*, 46 Cal. 4th 298, 325-29 (2009) (holding that reliance is an "essential element" of

27  _____

28  [1]    This opinion was originally filed without certification for publication in September 2009, but the court
         subsequently ordered this opinion to be certified for publication on October 28, 2009.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**

1  a UCL claim based, as here, on the statute's fraud prong).  Although Plaintiffs appear to believe that

2  class treatment somehow alters the substantive elements of the claims they assert, this is not the

3  case.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements

4  must be interpreted in keeping with . . . the Rules Enabling Act, which instructs that rules of

5  procedure 'shall not abridge, enlarge or modify any substantive right.'") (*citing* 28 U.S.C.

6  § 2072(b)); *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) ("It is axiomatic that Rule 23

7  cannot abridge, enlarge or modify any substantive right of any party to the litigation.") (quotation

8  omitted); *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1018 (2005) (A

9  "class action status does not alter the parties' underlying substantive rights.").  Here, the named

10  class representatives, the Cartwrights, confirmed in their depositions that either (1) they did not

11  receive or see any of the alleged misrepresentations prior to their purchase or (2) they cannot

12  remember whether they did.  (*See* Mem. at 11-12)  Whatever *Tobacco II* stands for, it does not

13  permit an inference of reliance by named plaintiffs when the question of actual reliance has been

14  explored and there is no evidence in the record supporting it.

15  **Third**, plaintiffs ignore that reliance cannot be presumed for subsequent purchasers when (1)

16  the limited warranty expressly excludes subsequent owners and (2) there is no evidence in the

17  record that subsequent purchasers (a) saw, read, and understood the warranty, tear sheets, window

18  stickers, or advertisements that Plaintiffs say told original consumers about the Lifetime Warranty

19  and (b) thereafter acted consistently with detrimental reliance on those materials.  Instead, Plaintiffs

20  simply repeat the complaint's unsubstantiated allegations that, in addition to the warranty itself,

21  Viking also made representations on window stickers, tear sheets, advertising brochures, and now

22  the R-20 stickers mentioned above. (Opp. Mem. at 15-16)  Yet, Viking's opening memorandum set

23  forth the undisputed record facts showing (1) that the dissemination of advertising and tear sheets

24  was ***not uniform***, but varied among distributors and retailers; and (2) that the window stickers did

25  not attach the express warranty, but instead referred readers to the warranty, which could be

26  obtained from a dealer.  (Mem. at 9-11)  Plaintiffs also fail to point to record evidence that any of

27  the alleged misrepresentations about the windows was made to subsequent home purchasers, much

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-5-
**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**

1   less uniformly.[2]  With no named Plaintiff who is a subsequent purchaser, no evidence that these

2   alleged misrepresentations were ever uniformly communicated to subsequent purchasers, and no

3   evidence supporting an inference of subsequent conduct by those persons consistent with reliance

4   on the alleged misrepresentations, it is clearly error to presume reliance by subsequent purchasers

5   and certify a class including them.  (Mem. at 5-6, discussing the only instances in which California

6   courts have presumed reliance)

7        *Fourth*, Plaintiffs argue that this case is primarily an omissions case and, as a consequence,

8   it is a "basic principle" that reliance can be presumed if the omissions are material.  (Opp. Mem. at

9   13)  That principle, however, is the tail of the dog here.  As shown in Viking's first memorandum

10  (Mem. at 7-8), Plaintiffs claim that Viking's warranty misrepresented that the windows would be

11  "free from defect" for the life of the window.   That alleged misrepresentation is inextricably

12  intertwined, or "mixed," with the "omission" allegedly rendering it false: that the windows were, in

13  fact, defective and would eventually leak.   Plaintiffs acknowledge as much: the Cartwrights

14  "purchased the Window Products because of the alleged misrepresentations."  (Opp. Mem. at 15

15  n.7)  Whether this alleged misrepresentation was heard and relied on by each of the class members -

16  - the "dog" -- is both logically and legally prior to the "tail" -- the materiality of the "omission"

17  allegedly rendering those statements misleading.   This case, therefore, could be characterized by

18  Plaintiffs at best as a mixed representation/omission case, and a presumption of class-wide reliance

19  based on the materiality of the alleged omission therefore is error.  *See Poulos v. Caesars World,*

20  *Inc.*, 379 F.3d 654, 666 (9th Cir. 2004); *Gonzalez v. Procter and Gamble Co.*, 247 F.R.D. 616, 624-

21  25 (S.D. Cal. 2007); *Deitz v. Comcast*, 2007 WL 2015440, *5 n.4 (N.D. Cal. July 11, 2007).

22  Inevitably, by citing *Gray's Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568,

23  573 (W.D. Wash. 2007) to support the presumption of reliance, Plaintiffs urge the Court just to

24  ignore the Ninth Circuit's controlling precedent on the presumption of reliance (*Poulos*), set aside a

25  California federal court that applied this precedent to CLRA and UCL claims (*Gonzalez*), and,

26  instead, follow an out-of-state case that does not construe any of the statutes at issue and whose

27

28  [2]    As for the R-20 sticker, it fails to provide a basis for certification for the reasons discussed above.

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB

1    reasoning is based on the reasoning of a federal securities case (*Binder v. Gillespie*) that was **not**

2    **followed** in *Poulos* and was **rejected** by *Mirkin*.

3        ***Fifth***, Plaintiffs further err in contending that a presumption or inference of reliance requires

4    only that misrepresentations or omissions by Viking be uniform in content (which they were not).

5    (*See* Opp. Mem. at 9-12)  To the contrary, the record also must show that **all the class members**

6    actually heard and relied on such representations or accompanying omissions.

7        Specifically, the California Supreme Court has clearly stated that there can be no

8    presumption of reliance in favor of "persons who never read or heard the alleged

9    misrepresentations." *Mirkin*, 5 Cal. 4th at 1094.[3]  This principle was just reaffirmed in two recent

10   California appellate cases.  *See Cohen*, ___ Cal. App. 4th ___, 2009 WL 3069116; *Kaldenbach v.*

11   *Mutual of Omaha Life Ins. Co.*, ___ Cal. App. 4th ___, 2009 WL 3151813 (Cal. Ct. App. Sept. 30,

12   2009).[4]  In *Cohen*, the appellate court affirmed the denial of class certification of CLRA and UCL

13   claims on commonality grounds where "the class **would include subscribers who never saw**

14   DIRECTV advertisements or representations of any kind before deciding to purchase the company's

15   HD services." 2009 WL 3069116 at *9 (emphasis added).  In *Kaldenbach*, the court affirmed the

16   denial of certification of a UCL claim because there was "no uniformity" in the representations

17   made to class members, and unlike in *Tobacco II* or *Massachusetts Mutual* (Plaintiffs' key case here

18

19

---

20   [3]    Plaintiffs attempt to escape the California Supreme Court's holding in *Mirkin* by citing an intermediate
         appellate decision, *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001), for the proposition that in a fraudulent
21       concealment claim the only reliance required is that the plaintiff would have acted differently had he known of
         the allegedly concealed fact. (Opp. Mem. at 14)  *Lovejoy* is inapposite for the following reasons.  First, the
22       case was not a class action, so the court did not even address the issue of what showing must be made for
         certification of the claims of absent class members, unlike the California Supreme Court in *Mirkin*, which dealt
23       with a putative class action.  *Mirkin*, 5 Cal. 4th at 1094.  Second, the claim in *Lovejoy* was a pure omissions
         claim.  *Lovejoy*, 92 Cal. App. 4th at 96 (allegations of fraudulent concealment were simply that the defendant
24       wrongfully acquired plaintiff's toll-free telephone number from another service provider and charged him
         surreptitiously, without ever making a related representation to the plaintiff).  In contrast, this case involves
25       several alleged misrepresentations on which any omissions claim is predicated.  And third, while the plaintiff in
         *Lovejoy* alleged that the concealed fraud caused him to lose his business and thus he clearly would have acted
26       differently had he known the truth (*id.* at 90), here there is no evidence that absent class members would have
         acted differently had they known the facts Plaintiffs allege Viking concealed, especially subsequent owners
27       whose window purchases were but one small part of the purchase of an entire home.

     [4]    This opinion was originally filed without certification for publication in September 2009, but the court
28       subsequently ordered this opinion to be certified for publication on October 26, 2009.

LAW OFFICES
Ropers, Majeski, Kohn &
  Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-7-
VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB

1  on the presumption of reliance), there were no "identical misrepresentations and/or nondisclosures

2  by the defendants made ***to the entire class***." 2009 WL 3151813 at *12 (emphasis added).[5]

3        Plaintiffs also mischaracterize Viking's argument about how the element of reliance would

4  have to be proved:  Viking never contended that "reliance must be an individual issue because it can

5  only be proven through individual direct testimony."  (Opp. Mem. at 6)  Rather, consistent with

6  California law controlling the issue, Viking contended that a presumption of class-wide reliance

7  would have to be based on evidence showing not merely that the alleged misrepresentations were

8  "uniform," but also that each class member should be presumed actually to have read the alleged

9  misstatements and then acted consistently with reliance on them.  Viking's opening memorandum

10 demonstrates:  (1) why the messages at issue here did not reach all class members, (2) why the

11 record does not support an inference that every class member acted in reliance on those statements,

12 and, therefore, (3) that the issue of reliance will necessarily turn on individualized inquiries.  (Mem.

13 at 9-11)  As stated by the court in *Kaldenbach*, certification is inappropriate when there is "no

14 evidence linking [defendants' alleged representations] to what was actually said or demonstrated in

15 any individual sales transaction."  2009 WL 3151813 at *10.  This is not an argument that "reliance

16 can only be proven through individual direct testimony."  (Opp. Mem. at 6)  Viking is simply

17 arguing that, if reliance is an element of a claim proposed for class certification, individual issues

18 predominate unless the record supports a common inference of reliance, which here the record does

19 not do.  Viking's position is directly in accord with *Vasquez, Mirkin, Cohen*, and *Kaldenbach*.

20       ***Sixth***, while Plaintiffs repeat that, under *Tobacco II*, reliance for UCL claims need only be

21 shown for the named class representative, they ignore that the pending motion addresses reliance,

22 not with respect to the issue of standing, but instead with respect to Rule 23's requirements of

23 commonality and predominance.  Where there is no uniform, widely disseminated representation

---

24  [5]  Plaintiffs are wrong to rely on *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 977 (1997) in

25  arguing that "[r]eliance may be inferred from the materiality of uniformly misrepresented or concealed
    information[.]"  (Opp. Mem. at 9)  The court in *Engalla* relied on *Vasquez v. Superior Court*, 4 Cal. 3d 800,

26  814 (1971) (also cited by Plaintiffs), which makes clear that this inference only arises "when the same material
    misrepresentations have actually been communicated to ***each member of the class***." (emphasis added).  As the

27  court in *Kaldenbach* noted in rejecting the same argument Plaintiffs now make, because the record showed that
    class members heard different representations, "the *Vasquez/Occidental Land* class injury inference does not

28  come into play absent evidence of uniform material misrepresentations having been actually made to each class
    member." 2009 WL 3151813 at *14.

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**

1   made to all class members, commonality does not exist, even if the named plaintiff has standing.

2   Where there is no basis to conclude that the members of the class acted in detrimental reliance on

3   that representation, there can be no predominance.  In *Cohen*, the court stated that "common issues

4   of fact do not predominate over [the] proposed class because the members of the class stand in a

5   myriad of different positions insofar as the essential allegation in the complaint is concerned,

6   namely, that DIRECTV violated the CLRA and the UCL by inducing subscribers to purchase HD

7   services with false advertising."  2009 WL 3069116 at *9.  The court observed that *Tobacco II* held

8   only that, "*for purposes of standing*, as long as a single plaintiff is able to establish that he or she

9   relied on a defendant's false advertising, a multitude of class members will also *have standing*,

10  regardless of whether any of those class members have in any way relied upon the defendant's

11  allegedly improper conduct."  *Id.* at 10.  *Tobacco II*, the court concluded, was irrelevant to its *class*

12  *certification* analysis "because the issue of 'standing' simply is not the same thing as the issue of

13  'commonality.'"  *Id.*   While standing is a matter "addressed to the trial court's jurisdiction,"

14  commonality "is a matter addressed to the practicalities and utilities of litigating a class action in the

15  trial court."  *Id.*  Therefore, with respect to absent class members, "factual questions associated with

16  their reliance on DIRECTV's false representations was a proper criterion for the court's

17  consideration when examining 'commonality' in the context of the subscribers' motion for class

18  certification, even after *Tobacco II*."  *Id.*

19      It is notable that in *Tobacco II* itself, the California Supreme Court distinguished the

20  analysis of standing from the question of class certification.  *After* considering the plaintiff's

21  standing, the California Supreme Court held that a court must then assess whether the prerequisites

22  to class certification, including commonality, are met.  *See* 46 Cal. 4th 298, 319 (the court "must

23  then scrutinize the putative class and its representatives to determine whether the relationship

24  between them is such that under the requirements of Rule 23 the named plaintiffs may represent the

25  class.") (*citing Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420, 428 (N.D. Tex. 1979)).

26      The same distinction applies here, indeed with greater force because *Tobacco II* provides no

27  basis for a *federal* court to relax the commonality and predominance requirements of the *federal*

28  class action rule.  Quite apart from the issue of standing, it is clear that there are individual issues

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

-9-

**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**

1  regarding what, if any, alleged misrepresentation any given class member heard and relied on in

2  deciding to purchase new Viking windows or homes containing them.  The circumstances of the

3  Cartwrights themselves speak to the inherent variability of that inquiry.  (*See* Mem. at 11-12)  As

4  set forth in detail in Viking's opening memorandum (*id.* at 10-11), the record shows that these

5  individual issues concern both (1) what representations reached any given class member (e.g.,

6  advertising of Viking windows varied from dealer to dealer), and (2) how class members responded

7  to such information (e.g., for homeowners who were not aware of the Lifetime Warranty -- and

8  certainly a far fewer number would have been aware, much less would have understood, the R-20

9  sticker -- it cannot be said that those class members purchased homes in reliance on that

10  representation).  These highly variable issues destroy commonality and preclude a presumption of

11  reliance for purposes of class certification.  *See Kaldenbach*, 2009 WL 3151813 at *13 (where "the

12  determination of what business practices were allegedly unfair turns on individual issues" due to the

13  lack of uniformity in representations made to absent class members, the presumption of reliance and

14  certification of a UCL claim are inappropriate).

15       Certification of Plaintiffs' fraudulent concealment claim fails for the same reasons.  As the

16  court in *Kaldenbach* noted, a presumption of reliance supporting certification of fraud or fraudulent

17  concealment classes is only appropriate when the same material misrepresentations or omissions

18  have actually been communicated to each member of a class.  *Id.* at *14.  That is not the case here.

19  Because "there were not common representations and omissions," certification of fraudulent

20  concealment claims is not appropriate.  *Id.*

21  **III.   REGARDING ERROR NO. 3:  ACTUAL FAILURE IS AT THE HEART OF THE**
22  **WARRANTY INQUIRY.**

     Plaintiffs mistakenly argue that fraud and warranty claims can be maintained in California if

23  there is any product defect, no matter its impact.  (Opp. Mem. at 21)  To the contrary, where, as

24  here, all of Plaintiffs' claims are based on the Lifetime Warranty language (and associated

25  representations about the warranty), such claims must rest first on proof that the windows did not

26  perform in accordance *with the warranty*.  In other words, not only must Plaintiffs show that a

27  window is defective, but he or she must connect the dots and prove that the defect "significantly

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1   impairs [the window's] operation and proper usage," as the warranty states.  Because proof of this

2   will turn on the same variable evidence that foreclosed certification of the tort claims in this case,

3   certification of the fraud and warranty claims similarly is precluded by individual issues relating to

4   whether each class member's window operation and usage is actually impaired.

5         Plaintiffs attempt to defend their fraud claims by citing one case, *Khan v. Shiley Inc.*, 217

6   Cal. App. 3d 848 (1990).  (Opp. Mem. at 21)  In *Khan*, which was not a class action, the court

7   simply held that actual malfunction of a defective artificial heart valve need not be shown to state a

8   claim for fraud where the manufacturer misrepresented and concealed material information about

9   the safety and reliability of the device.  *Khan*, 217 Cal. App. 3d at 858.  In that case, there was no

10  question that the plaintiff had heard and relied on the misinformation in agreeing to have the valve

11  implanted.   In this case, by contrast, Plaintiffs' allegations of fraud are entirely predicated on

12  Viking's warranty, such that Plaintiffs' fraud claims are only viable if, in fact, Viking's windows

13  are not "free of defects in material and workmanship that significantly impairs their operation and

14  proper usage" and Viking failed to repair or replace them if they were.   Thus, there must at a

15  minimum be some showing that each allegedly defective window's operation and usage is

16  significantly impaired.

17        With respect to the warranty claims specifically, Plaintiffs again focus on *Hicks v. Kaufman*

18  *& Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001), a case Viking thoroughly distinguished in

19  its opening memorandum.  For the reasons discussed there (Mem. at 15-24), Plaintiffs must prove

20  that the windows at issue have a defect that will inevitably cause a significant impairment of their

21  operation and usage, a demonstration that, on this record, turns upon individual issues that swamp

22  any common issues and render class treatment inappropriate.  This is precisely what the Court

23  recognized in declining to certify Plaintiffs' tort claims.  (Dkt. 145 at 16-18)  Indeed, Plaintiffs'

24  cited authority, *Khan v. Shiley*, states that for breach of warranty and other product liability claims,

25  "where a plaintiff alleges a product is defective, *proof that the product has malfunctioned is*

26  *essential to establish liability for an injury caused by the defect*."   217 Cal. App. 3d at 855

27  (emphasis in original).  Just as the Court here denied certification to Plaintiffs' strict liability and

28  negligence claims because "the individualized determinations of causation with respect to the

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

1   alleged class-wide injuries overwhelm these commonalities," (Dkt. 145 at 17), so too do

2   individualized issues of manifestation of defect overwhelm any common questions.

3   **IV.    IF THE STATUTORY AND COMMON LAW FRAUD CLAIMS ARE NOT**
        **CERTIFIED, THE CLASS IS DUPLICATIVE OF THE *DEIST* CLASS AND THE**

4   **SUPERIORITY REQUIREMENT IS NOT SATISFIED.**

5           Viking set forth its argument on this point in its opening memorandum, and there is no need

6   to review it in detail here.   Plaintiffs primarily argue that resolving both their warranty and fraud

7   claims through a class action in this Court is superior to other means of resolving the dispute.   But

8   Viking simply argued in its reconsideration brief that in the event the Court decides that

9   certification of the UCL, CLRA, and fraudulent concealment claims is not appropriate, the presence

10  of the *Deist* action as a forum for adjudicating substantially the same warranty claims counsels

11  strongly against a finding that another, federal class action is a superior means of resolving

12  Plaintiffs' claims.   Nothing in Plaintiffs' opposition compels a different conclusion.

13                                  **CONCLUSION**

14          For the reasons set forth above and in its opening memorandum, Defendant Viking

15  Industries, Inc. respectfully requests that this Court grant Viking's motion for reconsideration and

16  deny Plaintiffs' motion for class certification.

17

18  Dated: November 5, 2009                  ROPERS, MAJESKI, KOHN & BENTLEY

19

20

                                             By */s/ J. Mark Thacker*

21                                           _____

                                             Attorney for Defendant VIKING INDUSTRIES, INC.

22

23

24

25

26

27

28

LAW OFFICES
Ropers, Majeski, Kohn &
Bentley
A Professional Corporation
1001 Marshall Street
Redwood City, CA
94063
(650) 364-8200

**VIKING'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**
**OF CLASS CERTIFICATION ORDER - CASE NO.  07-02159 FCD/EFB**